**ZENSTEIN KOVALSKY BUCKALEW, LLC**
By: JOSEPH A. ZENSTEIN, ESQUIRE
Identification No.: 62349
Two Logan Square, Suite 300
100 N. 18th Street
Philadelphia, PA 19103
jzenstein@zensteinlaw.com
215-230-0800

MAJOR CASE

Filed and Attested by the
Office of Judicial Records
18 AUG 2020 11:23 am
M. RUSSO

Attorney for Plaintiff

| | |
|---|---|
| MICHAEL MESSINA<br>658 West Rolling Road<br>Springfield, PA 19082 | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS |
| v. | APRIL TERM, 2020<br>NO. 1698 |
| WESTMINSTER AMERICAN INSURANCE COMPANY<br>8890 McDonogh Road, Suite 310<br>Owings Mills, MD 21117 | |

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.

You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association Lawyer Referral
and Information Service
One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-6333
TTY (215) 451-6197

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center Filadelfia, Pennsylvania (215) 238-6333/TTY (215) 451-6197

**ZENSTEIN KOVALSKY BUCKALEW, LLC**
By: JOSEPH A. ZENSTEIN, ESQUIRE
Identification No.: 62349
Two Logan Square, Suite 300
100 N. 18th Street
Philadelphia, PA 19103
jzenstein@zensteinlaw.com
215-230-0800

MAJOR CASE

Attorney for Plaintiff

| | | |
|---|---|---|
| MICHAEL MESSINA<br>658 West Rolling Road<br>Springfield, PA 19082<br><br>v.<br><br>WESTMINSTER AMERICAN INSURANCE COMPANY<br>8890 McDonogh Road, Suite 310<br>Owings Mills, MD 21117 | : | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br><br>APRIL TERM, 2020<br>NO. 1698 |

**CIVIL ACTION COMPLAINT**
**(IC. Contracts; IJ. Bad Faith)**

## I. PARTIES

1. Plaintiff, MICHAEL MESSINA, is an adult individual residing at the address as set forth above.

2. Defendant, WESTMINSTER AMERICAN INSURANCE COMPANY, is a corporation duly organized and existing which is licensed to issue policies of insurance in the Commonwealth of Pennsylvania and maintains its principal place of business at the address set forth above. Defendant regularly conducts business in the City and County of Philadelphia.

3. At all times material hereto, Defendant was acting either individually or through its duly authorized agents, servants, workmen or employees, who were acting within the course and scope of their employment and on the business of said employer.

## II. CAUSES OF ACTION, DAMAGES AND RELIEF REQUESTED

4. Defendant in its regular course of business issued to Plaintiff a policy of insurance, policy number BOP591002303, covering Plaintiff's commercial building located at 62 Sherbrook Blvd, Upper Darby PA 19082 ("the policy"). See copy of policy attached hereto, made part hereof, and marked Exhibit "A".

5. On or about May 25, 2018, while said policy of insurance was in full force and effect, Plaintiff suffered direct physical loss to the insured premises, caused by a collapse of part of the roof, resulting in damage to the insured premises in the amount of $348,894.12 ("the loss"), as set forth in the estimate of Alliance Adjustment Group, a true and correct copy of which is attached hereto, made part hereof, and marked Exhibit "B". Plaintiff also sustained loss of rental income in the amount of $59,500.00, as set forth in the summary attached hereto, made part hereof, and marked Exhibit "C".

6. Notice of Plaintiff's covered loss was given to Defendant in a prompt and timely manner and Plaintiff has done and otherwise performed all things required of Plaintiff under the policy of insurance issued by Defendant, including cooperating with Defendant's investigation; mitigating damages where reasonable, required and/or possible; providing Defendant with all available information and complying with all conditions precedent.

7. Defendant, despite demand for benefits under its policy of insurance has failed and refused to pay to Plaintiff those benefits due and owing under said policy of insurance. Specifically, Defendant paid a fraction of the building damage and refused to pay any money for Plaintiff's loss of rental income.

8. Solely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the aforementioned policy of insurance, as well as the mishandling of Plaintiff's claim, Plaintiff has suffered loss and damage in an amount in excess of

$50,000.00, exclusive of interest and costs.

**A. Breach of Contract**

9. Plaintiff incorporates by reference herein the facts and allegations contained in paragraphs 1 through 8 above as though same were set forth herein at length.

10. Defendant has breached its contractual obligations to pay benefits to Plaintiff for a loss covered under Defendant's policy of insurance.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of $50,000.00, exclusive of interest and costs.

**B. Bad Faith**

11. Plaintiffs incorporate by reference herein the facts and allegations contained in paragraphs 1 through 10 above as though same were set forth herein at length.

12. Defendant has engaged in Bad Faith conduct toward Plaintiffs and has treated Plaintiffs unreasonably and unfairly with respect to its adjustment of Plaintiffs' covered loss, in violation of 42 Pa.C.S.A. §8371.

13. Upon receiving notice of the loss, Defendant retained the services of engineer, Todd L. Gerhart, P.E., S.E. of Barry Isett & Associates, Inc.

14. Mr. Gerhart prepared a report dated June 1, 2018, which stated, inter alia, that "[t]he roof framing of the subject unit has partially collapsed and was found to be unsafe due to failure of the roof joists." See Gerhart report attached as Exhibit "D".

15. The policy specifically covers loss caused by collapse of a covered building or portion of a covered building. See Exhibit "A" at p. 13.

16. Despite the fact that the loss was caused by collapse, as even Defendant's own engineer opined, Defendant denied coverage for Plaintiff's claim on August 22, 2018. See August 22, 2018, denial letter attached hereto, made part hereof, and marked Exhibit

"E".

17. At the time Defendant denied coverage for the loss, Plaintiff was represented by a public adjuster, who after the claim was denied, withdrew his representation.

18. In or about November 2018, Plaintiff then retained the services of a new public adjuster, Alliance Adjustment Group ("AAG"), who requested that Defendant reevaluate its denial, as the Gerhart engineering report supports coverage under the policy's collapse provision.

19. On November 28, 2018, Defendant wrote to AAG and reiterated its denial of coverage. See November 28, 2018, denial letter attached hereto, made part hereof, and marked Exhibit "F".

20. Thereafter, AAG, on behalf of Plaintiff, began to question Defendant's basis for denial and again advised Defendant that the policy's collapse provision supported coverage for the loss. See email from Michael Pacchione of AAG dated March 14, 2019, attached hereto, made part hereof, and marked Exhibit "G".

21. After receiving no response from Defendant to the March 14, 2019, email, Pacchione called Defendant's representative, Kristin Ellis, and emailed her on April 24, 2019. See Exhibit "G".

22. On May 9, 2019, Defendant responded to Pacchione that its attorney was reviewing the matter and that it will contact him following the review. See email from Defendant dated May 9, 2019, attached hereto, made part hereof, and marked Exhibit "H".

23. On June 10, 2019, Defendant advised AAG that its attorney requested that Defendant's engineer reinspect the property "before a final coverage decision can be made." See email from Defendant dated June 10, 2019, attached hereto, made part hereof, and marked Exhibit "I".

24. On behalf of Plaintiff, on June 10, 2019, AAG permitted the second inspection by Defendant's engineer, but advised that significant repairs have already been made by Plaintiff, including replacement of the roof. See Exhibit "I".

25. After several follow up inquiries with Defendant, and not hearing anything further from Defendant nor its engineer regarding the reinspection, AAG threatened to report Defendant's conduct to the Pennsylvania Insurance Department.

26. AAG was then advised that because of the repairs that have been done, another engineering inspection would not be needed and its attorney would be presenting its engineer with some questions so that Defendant could reevaluate its coverage decision.

27. On July 24, 2019, Defendant's counsel wrote to AAG and advised that Defendant was now rescinding its coverage declination and requested that Plaintiff provide Defendant with "all proofs of loss and supporting documentation for claimed property damage…" See letter of Defendant's counsel, attached hereto, made part hereof, and marked Exhibit "J".

28. On August 29, 2019, Plaintiff provided Defendant's counsel with the requested documents.

29. Follow ups to Plaintiffs submission were made to Defendant on September 18, 2019, and September 25, 2019.

30. On September 25, 2019, Defendant advised AAG that payment would be forthcoming.

31. Defendant's original coverage decision was ultimately proven to be wrong and Defendant refused to overturn its denial for fourteen (14) months after the loss, resulting in substantial financial harm to Plaintiff, including but not limited to: having to pay significant amounts of money to make temporary and permanent repairs to the building; and an

exacerbation of loss of rental income due to Defendant's refusal to provide coverage and funding for the covered loss sooner, which would have enabled Plaintiff to make repairs much earlier.

32. Defendant knew or should have known that collapse was a covered loss under the policy, that its own engineer determined the loss to have been caused by collapse, yet Defendant denied coverage and deprived Plaintiff of policy benefits for over a year.

33. Defendant knew or should have known as of June 1, 2018, that Plaintiff's loss was covered by the policy, which is the date its own engineer determined the cause of loss to be collapse, and thus covered by the policy.

34. Defendant's denial letters of August 22, 2018, and November 28, 2018, state that Plaintiff's claim was denied due to the "collection of water" on the roof caused by "improper design of roof drainage and partially blocked roof drains" and also due to "improper design" of other areas of the roof system. See Exhibits "E" and "F".

35. Yet, Defendant's own policy clearly and unambiguously covers collapse caused by rain water that collects on a roof, even if the collection of water results in collapse of a part of the building (e.g. roof) that that was installed with "defective materials or methods of construction…" See Exhibit "A" at page 10 of 67, 2. **Collapse - -** a. 3) e).

36. As drafter of the policy, Defendant is charged with having knowledge of every single word, sentence and paragraph in the policy.

37. To deny a claim and maintain a denial for fourteen (14) months was reckless and without any reasonable basis.

38. The fact that Defendant ultimately changed its coverage decision does not eradicate the months and months that Plaintiff was deprived of policy benefits, which

caused Plaintiff additional loss.

39. Defendant's failure to afford coverage for the loss in June 2018, was without reasonable basis and Defendant knew or recklessly disregarded its lack of reasonable basis when it deprived Plaintiffs of policy benefits.

40. In addition, even after finally admitting coverage for the loss fourteen (14) months later, to date, Defendant continues to fail and refuse to pay for Plaintiff's entire loss. Specifically, Defendant:

a. refused to pay for the entire roof, which required complete replacement according to Plaintiff's roofer;

b. ignored the opinions and facts presented by Plaintiff's roofer as to why the entire roof needed to be replaced, and not only a small section that Defendant agreed to pay for;

c. refused to pay for any loss of rental income, despite Plaintiff paying for such coverage, and despite Plaintiff actually suffering loss of rental income in the amount of $59,500.00 (See Exhibit "C"); and

d. refused to pay for many other items of damage sustained in the covered loss.

41. Defendant's continued failure and refusal to pay for the items referenced above is without any credible support, without a reasonable basis and done with reckless disregard of its lack of reasonable basis.

42. Defendant has treated Plaintiff with reckless indifference and disregard under the circumstances.

43. Solely as a result of Defendant's bad faith misconduct as aforesaid, Plaintiff has been required to obtain counsel to commence the present action to recover benefits

due and owing under the policy of insurance issued by Defendant for Plaintiff's covered loss and has incurred costs and other expenses in connection with said claim.

WHEREFORE, Plaintiff demands judgment against Defendant for punitive damages, counsel fees and costs, together with interest on Plaintiff's claim in an amount equal to the prime rate of interest plus three percent (3%), in an amount in excess of $50,000.00.

**ZENSTEIN, KOVALSKY BUCKALEW, LLC**

BY: ___________________________________
JOSEPH A. ZENSTEIN, ESQUIRE
MICHAEL K. KOVALSKY, ESQUIRE
Attorneys for Plaintiffs

Date: 8/18/20

# EXHIBIT "A"

WESTMINSTER AMERICAN INSURANCE COMPANY

8890 McDonogh Rd., Suite 310
Owings Mills, MD 21117
(443) 291-4040
info@westminsteramerican.com

*Renewal*

**Policy ID: BOP591002303**

# DECLARATIONS, *Businessowners - PA*

| Mail To: | Named Insured(s): | Agency: |
|---|---|---|
| Yoos Agency, Inc.<br>780 Burmont Road<br>Drexel Hill, PA 19026 | Michael Messina | Yoos Agency, Inc.<br>780 Burmont Road<br>Drexel Hill, PA 19026<br>Work: (610) 259-6700 |

**Policy Term Effective Date:**
12/29/2017, 12:01AM *Standard Time*

**Policy Term Expiration Date:**
12/29/2018, 12:01AM *Standard Time*

## Your total policy premium is: $4,493.00

The current Declaration replaces all previously issued policy Declarations, if any. The policy effective date and expiration date stated above constitutes the policy period.

This policy applies only to those coverages indicated below for the limit of coverage as shown and for which a premium has been charged. The limit for each coverage shall not be more than the amount stated for such coverage, subject to all the terms and conditions of this policy.

**In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. There are exclusions, conditions and limitations contained in the policy forms and endorsements.**

***** Contained in the limit field indicates either limits do not apply or is included in another coverage limit.**

**Property 1 - 60-66 Sherbrook Boulevard - Upper Darby PA 19082 - Delaware County** **Property:** 1 of 1

| Section I | COVERAGE LIMIT | PREMIUM |
|---|---|---|
| A. Building - Replacement Cost, Strip Shopping Center | $673,000 | $3,483.00 |
| C. Loss of Income - Actual Loss Sustained - 18 Months | *** | Incl. |
| **Section II** | **COVERAGE LIMIT** | **PREMIUM** |
| L. Bodily Injury & Property Damage (Each Occurrence) | $1,000,000 | $881.00 |
| M. Premises Medical Payments (Each Person) | $5,000 | Incl. |
| N. Products/Completed Operations (Each Occurrence) | $1,000,000 | Incl. |
| O. Fire Legal Liability (Each Occurrence) | $50,000 | Incl. |
| P. Personal Injury/Advertising Injury (Each Occurrence) | $1,000,000 | Incl. |

| SIGNATURE | DATE |
|---|---|
| ✖ [signature] | 11/08/2017 |



Case ID: 200401698

| Section II | COVERAGE LIMIT | PREMIUM |
|---|---|---|
| Aggregate Other Than Products/Completed Work | $2,000,000 | Incl. |
| Aggregate Limit for Products/Completed Work | $2,000,000 | Incl. |
| **Optional Items** | **COVERAGE LIMIT** | **PREMIUM** |
| Business Personal Property - Off Premises | $15,000 | Incl. |
| Employee Dishonesty | $10,000 | Incl. |
| Forgery Coverage | $5,000 | Incl. |
| Outdoor Signs | $10,000 | Incl. |
| Personal Effects | $5,000 | Incl. |
| Spoilage | $10,000 | Incl. |
| Backup Of Sewers And Drains - Direct Physical Loss | $5,000 | $36.00 |
| Final Policyholder Notice | *** | Incl. |
| **Equipment Breakdown** | **COVERAGE LIMIT** | **PREMIUM** |
| Equipment Breakdown | $673,000 | $93.00 |

Coverage Premium: **$4,493.00**

Total: **$4,493.00**

**RATING INFORMATION:**

- **Rating Information, Building:** ***Property 1***

  Class Code: *Tenant*
  Sq Foot Area: *4356*
  Zip Code: *19082*
  Territory: *020*
  Subzone: *13*
  County: *Delaware (045)*
  Business Classification: *Restaurants - NOC*
  Protection Classification: *Protected*
  Construction Classification: *Joisted Masonry*
  All Peril Deductible: *$2,500*
  Windstorm or Hail Deductible: *None*
  Water Damage Deductible: *None*
  Sprinklered: *No*
  Coverage Form: *BP 0200 - Businessowners Special Policy*
  Loss Settlement, Building: *Replacement Cost Value*
  Occupancy: *Lessor*
  Business Personal Property Coverage: *No*
  Age (in Years): *45*
  Builders' Risk: *No*

- **C. Loss of Income - Actual Loss Sustained - 18 Months:** ***Property 1***

  Notice: *BP 0200 is changed from 12 months to 18 months.*

**Policy Subject to the Following Forms and Endorsements:** BP 0200 (06 12) Businessowners , BP 0650 (06 12) Equipment Breakdown, BP 0867 (04 11) Amendatory Endorsement - Defense Costs Reimbursement Pennsylvania, BPRO 0001 (12 12) Removal of Insurance to Value Provision, BP 0351 (01 15) Property Additional Coverage Endorsement - Schedule Of Property Coverages And Limits, BP 0335 (06 12) Amendatory Endorsement - Pennsylvania, BP 0475 (10 08) Amendatory Endorsement, BP 0676 (06 12) Exclusion -- Fungus or Related Perils, BP 0734 (01 04) Lead Liability Exclusion, BP 0750 (01 15) Certified Terrorism Loss, BP 0798 (01 15) Exclusion -- Data Breach Liability, BP 0816 (01 15) Policy Amendatory Endorsement, BP 0838 (10 05) Silica Exclusion, BP 0839 (10 05) Asbestos Exclusion, BP 0850 (10 06) Virus or Bacteria Exclusion, BP 0856 (09 09) Information Distribution and Recording Violations Exclusion, BP 1780 (06 06) Conditional Terrorism Exclusions, BP 2800 (06 04) Nuclear, Biological, and Chemical Terrorism Exclusions, BPCH 00001 (11 17) Businessowners Property and Liability Endorsements and Descriptions of Changes, BP 0330 (06 12) Water Backup and Overflow Coverage


Case ID: 200401698

**THIS IS A LEGAL CONTRACT**
**-- PLEASE READ THIS CAREFULLY --**

# BUSINESSOWNERS SPECIAL POLICY

## TABLE OF CONTENTS


Agreement ....1
Common Policy Definitions ....2
Common Policy Conditions ....3
Property Coverages
- Additional Definitions ....4
- Property Covered ....6
  - Coverage A -- Buildings ....7
  - Coverage B -- Business Personal Property ....7
  - Property Not Covered ....7
  - Additional Property Excluded And Limitations ....8
  - Additional Coverages ....9
  - Extensions Of Coverage ....16
- Coverage C -- Loss Of Income ....19
  - Earnings ....19
  - Extra Expenses ....20
  - Exclusions And Limitations ....20
  - Loss Of Income Coverage Extensions ....21
  - Additional Loss Of Income Coverages ....22
- Perils Covered ....23
- Perils Excluded ....23
- Additional Exclusions ....26
- What Must Be Done In Case Of Loss ....30
- Valuation Of Property Losses ....31
- How Much We Pay ....34
- Loss Payment ....36
- Additional Conditions ....37
- Optional Property Coverages ....39

Commercial Liability Coverages
- Additional Definitions ....42
- Commercial Liability Coverages ....49
  - Coverage L -- Bodily Injury Liability And Property Damage Liability ....49
  - Coverage M -- Medical Payments ....56
  - Coverage O -- Fire Legal Liability ....57
  - Coverage P -- Personal And Advertising Injury Liability ....58
- Supplemental Payments ....61
- What Must Be Done In Case Of Loss ....62
- How Much We Pay ....63
- Additional Conditions ....64
- Nuclear Energy Liability Exclusion ....66


A state specific amendatory endorsement applies to this policy. Other endorsements may also apply. All applicable endorsements are identified on the "declarations". Refer to the Common Policy Definitions and Additional Definitions for words that have special meanings. These words are shown in quotation marks.

## AGREEMENT

Subject to all the "terms" that apply, and in return for "your" payment of the required premium, "we" provide the coverages described in this policy.

Copyright, American Association of Insurance Services, Inc., 2012

# COMMON POLICY DEFINITIONS

The Common Policy Definitions contain definitions that apply to all coverages provided by this policy.

1. The words "you" and "your" mean the person, persons, entity, or organization named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Basic territory" means the United States of America, its territories and possessions, Canada, and Puerto Rico.

4. "Computers" means:

   a. "hardware" owned by "you" or in "your" care, custody, or control; or

   b. "software".

5. "Data records" means files, documents, and information in an electronic format that are stored on "media".

6. "Declarations" means all pages labeled "declarations", supplemental declarations, or schedules, which pertain to this policy.

7. "Fungus or related perils" means:

   a. a fungus, including but not limited to mildew and mold;

   b. a protist, including but not limited to algae and slime mold;

   c. wet rot;

   d. dry rot; or

   e. a chemical, matter, or compound produced or released by a fungus, a protist, wet rot, or dry rot, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

8. "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

   "Hardware" is limited to:

   a. mainframe and mid-range "computers" and servers;

   b. personal "computers" and workstations;

   c. laptops, hand-held "computers", notebook PCs, and other portable computer devices and accessories, such as multimedia projectors; and

   d. peripheral data processing equipment, such as printers, keyboards, monitors, and modems.

9. "Limit" means the amount of coverage that applies.

10. "Media" means instruments that are used with "hardware" and on which "data records", "programs and applications", and "proprietary programs" can be recorded or stored.

    "Media" includes, but is not limited to, films, tapes, cards, discs, drums, cartridges, cells, DVDs, or CD-ROMs.

11. "Pollutants" means:

    a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned; or

    b. electrical, magnetic, or electromagnetic particles or fields, whether visible or invisible, and sound.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

12. "Programs and applications" means operating programs, applications, and data management tools that can be readily purchased on a retail or wholesale basis and that are:

    a. stored on "media"; or

    b. pre-installed and stored in "hardware".

    Applications include, but are not limited to, programs for word processing, spreadsheet calculations, data management tools, and graphic design.

13. "Proprietary programs" means proprietary operating "programs and applications" developed specifically for "your" use or the use of another entity that are:

    a. stored on "media"; or

    b. installed and stored in "hardware".

14. "Software" includes:

    a. "media";

    b. "data records";

    c. "programs and applications"; and

    d. "proprietary programs".

15. "Terms" means provisions, limitations, exclusions, conditions, and definitions that apply.

## COMMON POLICY CONDITIONS

The Common Policy Conditions contain "terms" that apply to all coverages provided by this policy.

1. **Assignment** -- This policy may not be assigned without "our" written consent.

2. **Cancellation** -- See state specific amendatory endorsement.

3. **Change, Modification, Or Waiver Of Policy Terms** -- A change or waiver of "terms" of this policy must be issued by "us" in writing to be valid.

4. **Conformity With Statute** -- If the "terms" of this policy conflict with an applicable law, the "terms" are amended to conform to that law.

5. **Cooperation** -- In case of loss, "you" must cooperate in performing all acts required by this policy.

6. **Examination Of Books And Records** -- "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

7. **Inspections** -- "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with codes, laws, rules, standards, or regulations. Inspections or reports are for "our" benefit only.

8. **Liberalization** -- If "we" adopt a revision of forms during the policy period which broadens the coverage under this policy without additional premium, the broadened coverage will automatically apply to this policy. This also applies if "we" adopt the revision within 60 days before this policy is effective.

9. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other "insured" if, before or after a loss:

    a. "you" have or any other "insured" has willfully concealed or misrepresented:

        1) a material fact or circumstance that relates to this insurance or the subject thereof; or

Copyright, American Association of Insurance Services, Inc., 2012

2) "your" interest or any other "insured's" interest herein; or

b. there has been fraud or false swearing by "you" or any other "insured" with regard to a matter that relates to this insurance or the subject thereof.

# PROPERTY COVERAGES

Property Coverages contain additional definitions, coverage descriptions, perils, exclusions, limitations, and conditions that apply to the Businessowners Property Coverages.

## ADDITIONAL DEFINITIONS

In addition to the Common Policy Definitions, the following definitions apply to the Property Coverages.

1. "Computer hacking" means an unauthorized intrusion by an individual or group of individuals, whether or not employed by "you", into a "computer", a Web site, or a "computer" network that results in, but is not limited to:

   a. deletion, destruction, generation, or modification of "software";

   b. alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";

   c. observation, scanning, or copying of "data records", "programs and applications", and "proprietary programs";

   d. damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media"; or

   e. denial of access to or denial of services from "computers", "computer" networks, or Web sites, including related "software".

2. "Computer virus" means any malicious, self-replicating electronic data processing code or other code that is introduced into a "computer", "computer" network, or Web site server, intended to result in, but is not limited to:

   a. deletion, destruction, generation, or modification of "software";

   b. alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";

   c. damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media"; or

   d. denial of access to or denial of services from "computers", "computer" networks, or Web site servers.

3. "Dependent locations" mean locations within the "basic territory" operated by others that "your" business relies upon as:

   a. contributing locations. Contributing locations are "your" suppliers. However, contributing locations do not include water, communication, or power suppliers;

   b. recipient locations. Recipient locations receive "your" products;

   c. leader locations. Leader locations attract customers to "your" business; or

   d. manufacturing locations. Manufacturing locations make products for delivery to "your" customers under contract of sale.

4. "Earth movement" means:

   a. earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. landslide;

   c. mine subsidence whether or not the non-natural mine is currently in use;

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

d. any other movement of earth, including sinking (other than "sinkhole collapse"), shifting, or rising of earth including, but not limited to, erosion, expansion, shrinking, freezing, thawing, improper soil compaction, and movement of water under the surface of the ground that causes cracking, settling, or shifting of foundations, buildings, or structures; or

e. eruption, explosion, or effusion of a volcano.

5. "Employee" means:

a. any natural person while in "your" service (and 30 days after termination of service) whom "you" compensate directly by salary, wages or commissions and whom "you" have the right to direct and control while performing services for "you";

b. any natural person who is employed by an employment contractor while that person is subject to "your" direction and control and is performing services for "you" on a:

1) long-term basis; or

2) short-term or temporary basis; or

c. any natural person who is a student or an intern in "your" service, whether or not "you" compensate such person directly by salary, wages, or commissions, and whom "you" have the right to direct and control while performing services for "you".

However any short-term or temporary worker is not an "employee" while having care and custody of property away from the described premises.

**Restrictions** -- "Employee" does not mean:

a. any agent, broker, contractor, commission merchant, consignee, independent contractor, or representative of the same general character; or

b. any partner, director, trustee, joint venturer, manager, or member, except while performing acts falling within the scope of the usual duties of an "employee".

6. "Insured" means "you", and any other person, persons, entity, or organization that is insured under the Property Coverages.

7. "Interruption" means:

a. the reduction or complete stoppage of "your" business activities; or

b. all or part of the described premises becomes unfit for rental occupancy.

8. "Money" means currency, coins, bank notes in current use; and register checks, traveler's checks and money orders held for sale.

9. "Restoration period" means the time it should reasonably take to resume "your" normal business activities at the described premises.

**Time Limitations And Restrictions** --

a. The "restoration period" begins:

1) with respect to Earnings, 72 hours after the time of direct physical loss or damage caused by a covered peril; and
2) with respect to Extra Expense, immediately after the time of direct physical loss or damage caused by a covered peril.

b. The "restoration period" ends on the earlier of:

1) the date that the property should be rebuilt, repaired, or replaced with reasonable speed and similar quality; or
2) the date when the business is resumed at a new permanent location.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

The length of the "restoration period" is not limited by the expiration date of the policy.

c. The "restoration period" does not include any increase in time due to the enforcement of any code, ordinance, law, or decree that regulates or requires:

1) the construction, use, repair, or demolition of any property; or
2) that "you" or anyone else test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants" or "fungus or related perils".

10. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property. This includes, but is not limited to, stock certificates; tokens, tickets, revenue, or stamps (whether represented by actual stamps or unused value in a meter) in current use; and evidences of debt used in connection with charge, credit, or debit cards that are not issued by "you".

    However, "securities" does not include "money".

11. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation.

    However, "sinkhole collapse" does not include the value of the land, the cost of filling sinkholes, or sinking or collapse of land into man-made underground cavities.

12. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm, all except as excluded or limited.

    Water damage means the sudden or accidental discharge or leakage of water or steam as the direct result of a breaking or cracking of a part of the system or appliance containing the water or steam.

    However:

    a. falling objects does not include loss or damage to personal property in the open or to the interior of buildings or structures or personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object; and

    b. water damage does not include the discharge or leakage of water from a sump pump, sump pump well, or related equipment.

13. "Valuable papers and records" means written, printed, or otherwise inscribed documents and records. This includes books, maps, films, drawings, abstracts, deeds, mortgages, and manuscripts.

    However, "valuable papers and records" does not include "data records", "money", or "securities".

14. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

    However, "volcanic action" does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss or damage to the covered property.

## PROPERTY COVERED

"We" cover direct physical loss or damage to property covered under Coverage A -- Buildings and Coverage B -- Business Personal Property at the described premises shown on the "declarations" caused by or resulting from a covered peril.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

**COVERAGE A -- BUILDINGS**

This means buildings and structures for which a "limit" is shown on the "declarations". This includes:

1. completed additions;

2. machinery and equipment which are a permanent part of the described building or structure;

3. fixtures, including outdoor fixtures;

4. personal property owned by "you" and used to maintain or service the described premises, including air-conditioning equipment; fire extinguishing apparatus; outdoor furniture; floor coverings; and appliances for refrigerating, ventilating, cooking, dish washing, and laundering;

5. if not covered by other insurance:

   a. additions under construction, alterations, and repairs to the building or structure; and

   b. materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations, or repairs to the building or structure;

6. personal property owned by "you" as a landlord and located in common areas, rooms, or apartments; and

7. building glass.

**COVERAGE B -- BUSINESS PERSONAL PROPERTY**

This means "your" business personal property in the buildings and structures described on the "declarations" or in the open (or in vehicles) on or within 100 feet of the described premises and for which a "limit" is shown on the "declarations". This includes:

1. property owned by "you" and that is used in "your" business;

2. "your" interest in personal property of others in "your" care, custody, or control, to the extent of "your" legal liability, plus the cost of "your" labor, material, and services;

3. leased personal property, to the extent of "your" contractual obligation to insure such property; and

4. if "you" are a tenant:

   a. "your" use interest in improvements to the described building or structure.

      Improvements are fixtures, alterations, installations, or additions:

      1) to a building or structure that "you" occupy, but do not own; and
      2) that are made or acquired at "your" expense and which "you" cannot legally remove; and

   b. exterior building glass that "you" own or that is in "your" care, custody, or control. However, exterior building glass is not covered under Coverage B -- Business Personal Property if a "limit" is shown on the "declarations" for Coverage A -- Buildings.

## PROPERTY NOT COVERED

The property described below is not covered under Coverage A -- Buildings or Coverage B -- Business Personal Property. Limited coverage for some of the property described below is included under Additional Coverages or Extensions of Coverage.

1. **Accounts Receivable** -- "We" do not cover accounts receivable.

2. **Animals** -- "We" do not cover animals.

   However, this does not apply to animals that are:

   a. boarded by "you", but not owned by "you"; or

Copyright, American Association of Insurance Services, Inc., 2012

b. held for sale by "you" and kept inside of a building.

3. **Antennas, Fences, Or Signs** -- "We" do not cover outdoor:

   a. radio, television, satellite, dish-type, or other antennas or their masts, towers, or lead-in wiring;

   b. fences; or

   c. signs not attached to buildings.

4. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

5. **Data Records And Programs** -- "We" do not cover "data records", "programs and applications", or "proprietary programs".

   This does not include pre-packaged "software" that "you" hold for sale.

6. **Land, Water, Growing Crops, Or Lawns** -- "We" do not cover:

   a. land, including land on which the property is located;

   b. underground or surface water; or

   c. growing crops or lawns.

7. **Lottery Tickets** -- "We" do not cover lottery tickets not held for sale.

8. **Money Or Securities** -- "We" do not cover "money", "securities", accounts, bills, or food stamps.

9. **Trees, Shrubs, Or Plants** -- "We" do not cover trees, shrubs, or plants. "We" also do not cover grain, hay, straw, or other crops, when outdoors.

10. **Valuable Papers And Records** -- "We" do not cover "valuable papers and records".

11. **Vehicles Or Aircraft** -- "We" do not cover vehicles or aircraft or self-propelled machines required to be licensed for use on public roads, including "computers" which are permanently installed or designed to be installed in any vehicles or aircraft or self-propelled machines required to be licensed for use on public roads.

12. **Watercraft** -- "We" do not cover watercraft, including their motors, equipment, or accessories while afloat.

## ADDITIONAL PROPERTY EXCLUDED AND LIMITATIONS

The exclusions and limitations described below apply to Coverage A -- Buildings and Coverage B -- Business Personal Property.

1. **Animals** -- "We" do not cover loss or damage to animals unless the animal is killed by or its destruction is made necessary by a "specified peril" or building glass breakage.

2. **Boilers** -- "We" do not cover loss or damage to:

   a. steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment; or

   b. hot water boilers or water heaters caused by any condition or occurrence within such equipment other than explosion.

   However, "we" do cover loss or damage to steam boilers, steam pipes, steam turbines, or steam engines caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

3. **Furs** -- "We" do not pay more than $2,500 total in any one occurrence for loss by theft of furs or fur garments.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

4. **Glassware/Fragile Articles** -- "We" do not cover breakage of fragile articles such as glassware, statuary, porcelains, and bric-a-brac, except as a result of a "specified peril" or building glass breakage.

   However, this does not apply to glass that is a part of a building or structure; bottles or other containers held for sale; or lenses of photographic or scientific instruments.

5. **Interior Of Building Or Structure** -- "We" do not cover loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not.

   However, "we" do cover loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust if:

   a. entering through an opening created by a covered peril; or

   b. the loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

6. **Jewelry, Watches, Jewels, Pearls, Precious Stones, Or Metals** -- "We" do not pay more than $2,500 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious or semi-precious stones; bullion, gold, silver, or other precious alloys or metals; or items consisting primarily of precious metals.

   However, this limitation does not apply to jewelry or watches worth $100 or less per item.

7. **Missing Property** -- "We" do not cover missing property where the only proof of loss is unexplained or mysterious disappearance, shortage discovered upon taking inventory, or any other instance where there is no physical evidence to show what happened to the property.

   However, this limitation does not apply to the extent that coverage is provided under the Optional Property Coverages for Money and Securities or Employee Dishonesty.

8. **Patterns, Dies, Molds, Models, Or Forms** -- "We" do not pay more than $2,500 total in any one occurrence for loss by theft of patterns, dies, molds, models, or forms.

9. **Personal Property In The Open** -- "We" do not cover loss or damage to personal property in the open caused by rain, snow, ice, or sleet.

10. **Unauthorized Transfer Of Property** -- "We" do not cover loss or damage to property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

## ADDITIONAL COVERAGES

"We" provide the following additional property coverages. Unless otherwise stated, each additional coverage provides an additional amount of insurance.

1. **Antennas, Fences, Or Signs** -- "We" pay for loss or damage to "your" outdoor:

   a. radio, television, satellite, dish-type, or other antennas including their masts, towers, and lead-in wiring;

   b. fences; or

   c. signs not attached to buildings;

   caused by a covered peril.

   **Restriction** -- However, loss or damage to fences is covered only for the perils of aircraft, civil commotion, explosion, fire, lightning, and riot.

Copyright, American Association of Insurance Services, Inc., 2012

**Coverage Limits** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $2,500, subject to the sub-limit for outdoor signs not attached to buildings. The most "we" pay for loss or damage to each outdoor sign not attached to a building is $1,000.

2. **Collapse** -- This Additional Coverage does not increase the "limit" for the covered property.

   a. "We" pay for direct physical loss or damage to covered property caused by the sudden and abrupt collapse of a covered building or structure or a portion of a covered building or structure caused only by one or more of the following:

      1) hidden decay of a structural component of the building or structure, unless an "insured" knew of or could reasonably be expected to suspect the presence of such decay prior to the sudden and abrupt collapse;
      2) hidden insect or vermin damage to a structural component of the building or structure, unless an "insured" knew of or could reasonably be expected to suspect the presence of such damage prior to the sudden and abrupt collapse; or
      3) the use of defective materials or methods in construction, remodeling, or renovation if the sudden and abrupt collapse occurs during the course of the construction, remodeling, or renovation.

      However, "we" will pay for direct physical loss or damage caused by the sudden and abrupt collapse of a building or structure or a portion of a building or structure that occurs after construction, remodeling, or renovation is complete if caused by one or more of the following even if the use of defective materials or methods in construction, remodeling, or renovation also contributes to the sudden and abrupt collapse:

      a) hidden decay of a structural component of the building or structure, unless an "insured" knew of or could reasonably be expected to suspect the presence of such decay prior to the sudden and abrupt collapse;
      b) hidden insect or vermin damage to a structural component of the building or structure, unless an "insured" knew of or could reasonably be expected to suspect the presence of such damage prior to the sudden and abrupt collapse;
      c) "specified perils" or breakage of building glass; all as covered under the Property Coverages;
      d) weight of people or personal property; or
      e) weight of rain that collects on a roof.

   b. **Collapse Restrictions** -- With respect to the causes listed in items 2.a.1), 2.a.2), and 2.a.3) above:

      1) sudden and abrupt collapse of a building or structure or any portion of a building or structure means the sudden and abrupt caving in, falling in, falling down, or giving way of the building or structure or the portion thereof so that the building or structure or the portion thereof can not be occupied as intended; and
      2) the following are not considered to be in a state of sudden and abrupt collapse:

         a) a building or structure that is standing or any portion of a building or structure that is standing even if it displays evidence of bending, bulging, cracking, expansion, leaning, sagging, settling, or shrinkage;

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

b) a building or structure or any portion of a building or structure in danger of caving in, falling in, falling down, or giving way; or
c) a portion of a building or structure that is standing even if it has separated from another portion of the building or structure.

c. **Additional Property Restrictions** -- "We" pay for direct physical loss or damage to the following property, if otherwise covered by this policy, that is caused by the sudden and abrupt collapse of a covered building or structure that occurs as a result of one or more of the causes listed under items 2.a.1) through 2.a.3) above:

1) outdoor radio, television, satellite, dish-type, and other antennas including their masts, towers, and lead-in wiring;
2) outdoor awnings and canopies and their supports;
3) gutters and downspouts;
4) fences;
5) yard fixtures;
6) outdoor swimming pools;
7) bulkheads, piers, wharves, and docks;
8) beach and diving platforms and related attachments;
9) retaining walls that are not part of buildings or structures; and
10) bridges, walkways, roadways, and other paved surfaces.

d. **Collapse Of Covered Personal Property** -- "We" also pay for direct physical loss or damage caused by the sudden and abrupt collapse of covered personal property inside a building or structure when the loss or damage does not involve the sudden and abrupt collapse of a building or structure or any portion of a building or structure. The sudden and abrupt collapse must occur as a result of one or more of the causes listed under item 2.a. above.

With respect to the coverage provided under this item 2.d., sudden and abrupt collapse means the sudden and abrupt caving in, falling in, falling down, or giving way of the covered personal property.

However, sudden and abrupt collapse does not mean the bending, bulging, cracking, expansion, leaning, sagging, settling, or shrinkage of personal property if such personal property has not suddenly or abruptly fallen down or caved in.

**Restrictions** -- This coverage does not apply to property that is listed under item 2.c. above; or damage due to marring and scratching, when that is the only damage caused by the sudden and abrupt collapse.

e. Reference to Covered Peril includes this Additional Coverage for Collapse as described and limited in items 2.a through 2.d. above.

3. **Counterfeit Money Or Money Orders** -- "We" pay for loss that results from "your" acceptance of:

a. counterfeit paper currency; or

b. money orders issued by a post office, express company, or bank that are not paid upon presentation.

**Restriction** -- This coverage applies only when "you" accept paper currency or money orders in good faith and in return for "money", products, or services.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay for any one loss is $1,000.

4. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril that occurs during the policy period.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

**Restrictions** -- This coverage does not include costs to:

a. extract "pollutants" from land or water; or

b. remove, restore, or replace polluted land or water.

**Coverage Limits** -- "We" do not pay more under this coverage than 25% of the amount "we" pay for the direct physical loss or damage, plus 25% of the applicable deductible. "We" do not pay more for loss or damage to property and debris removal combined than the "limit" for the damaged property.

However, "we" will pay an additional amount of debris removal expense up to $10,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or damage plus 25% of the deductible or when the loss or damage to property and debris removal combined exceeds the "limit" for the damaged property.

**Time Limitation** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss or damage to covered property.

5. **Fire Department Service Charges** -- When the fire department is called to save or protect covered property from a covered peril, "we" pay fire department service charges for which "you" are liable under any local ordinance, or have assumed by contract or agreement prior to the loss.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage in any one occurrence is $2,500. No deductible applies.

6. **Forgery** -- "We" pay for direct loss due to the:

   a. forgery or alteration of, on, or in any written instrument required in conjunction with any checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum of "money" that are:

      1) made or drawn by or drawn upon "you" or by an individual acting as "your" agent; or
      2) alleged to have been made or drawn by or drawn upon "you" or by an individual acting as "your" agent.

   b. forgery or alteration of, on, or in any written instrument required in conjunction with any credit, debit, or charge card or any written instrument prepared in conjunction with any credit, debit, or charge card used for "your" business issued to:

      1) "you"; or
      2) "your" partner, officer, director, trustee, member, manager, or "employee".

   With respect to the coverage described in item 6.a. above:

   a. a mechanically reproduced facsimile signature will be treated as a handwritten signature; and

   b. a substitute check as defined in the Check Clearing for the 21st Century Act will be considered a legal equivalent of the original check.

   If "you" are sued for refusing to pay for any of the above forgeries or alterations, and "you" have "our" written consent to defend against such a suit, "we" will pay for any reasonable legal expenses incurred for "your" defense.

Copyright, American Association of Insurance Services, Inc., 2012

**Restriction** -- The coverage described under item 6.b. above applies only if "you" are legally liable to the issuer of the credit, debit, or charge card associated with the forged or altered written instrument. In addition, "you" must carry out all of the contract conditions, provisions, and terms of the credit, debit, or charge card that were agreed upon when the card was obtained.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage for any one loss, including legal expenses, is $2,500.

7. **Glass** -- This Additional Coverage does not increase the "limit" for the covered property.

   In the event of loss or damage to building glass, "we" pay the following expenses:

   a. the cost of replacing or repairing the frames which hold the glass, if the frames have been damaged by the loss;

   b. the cost of boarding up openings or installing temporary glass if there is an unavoidable delay in replacement; and

   c. the cost of removing or replacing obstructions which prohibit replacement or repair.

   **Restriction** -- This does not include removing or replacing window displays.

8. **Increased Costs - Ordinance Or Law** -- "We" cover the increased costs of a covered loss resulting from the enforcement of any code, ordinance, law, or decree that regulates the construction, use, or repair of any property.

   Under Perils Excluded, Ordinance or Law does not apply to this Additional Coverage.

   **Restrictions** -- This Additional Coverage is subject to the following.

   a. Coverage applies only to building property insured on a replacement cost basis.

   b. The code, ordinance, law, or decree regulating land use, zoning, or construction and repair of property must be in force at the time of loss.

   c. "We" do not pay for any increased costs that are the result of any code, ordinance, law, or decree requirement "you" failed to comply with prior to the covered loss.

   d. When relocation to another site is required by the code, ordinance, law, or decree, "we" pay only for the increased costs of construction at the new site.

   e. When "you" elect to rebuild at another site, "we" pay only for the increased costs of construction that "you" would have incurred to rebuild at the same site.

   f. "We" do not pay the increased costs of construction until the building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

   g. "We" do not pay for:

      1) any costs associated with the enforcement of any code, ordinance, law, or decree that requires "you" or anyone else to test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants" or "fungus or related perils"; or
      2) loss or increased cost caused by the enforcement of any code, ordinance, law, or decree that regulates or requires the repair, replacement, remodeling, rehabilitation, or razing of property due to the existence of or any activity of "pollutants" or "fungus or related perils".

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

**Coverage Limit** -- "We" pay up to $10,000 for each covered building or structure to cover these increased costs resulting from the enforcement of any such code, ordinance, law, or decree.

9. **Inventory And Appraisal Expenses** -- "We" pay reasonable expenses incurred by "you" for any inventory and appraisal conducted at "our" request to assist "us" in the determination of the amount of a covered loss.

   **Restrictions** -- This Additional Coverage does not include:

   a. expenses incurred under the Appraisal "terms" of the Additional Conditions; or

   b. any public adjusters' fees.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage in any one occurrence is $2,500. No deductible applies.

10. **Limited Fungus And Related Perils** --

    a. Subject to the Limited Fungus and Related Perils Coverage Aggregate Limit, "we" pay for direct physical loss or damage to covered property caused by or consisting of "fungus or related perils" that is the direct result of a "specified peril" that occurs during the policy period.

       The Limited Fungus and Related Perils Coverage Aggregate Limit also applies to any cost or expense to:

       1) clean up, contain, treat, detoxify, or neutralize "fungus or related perils" on covered property or remove "fungus or related perils" from covered property;
       2) remove and replace those parts of covered property if doing so is necessary to gain access to "fungus or related perils"; and
       3) test for the existence or level of "fungus or related perils" following the repair, replacement, restoration, or removal of damaged property if it is reasonable to believe that "fungus or related perils" are present.

       **Restriction** -- This coverage applies only if all reasonable steps were taken to protect the property at and after the time of the occurrence.

    b. **Limited Fungus And Related Perils Coverage Aggregate Limit** --

       The Limited Fungus and Related Perils Coverage Aggregate Limit is $15,000.

       The Limited Fungus and Related Perils Coverage Aggregate Limit is the most that "we" pay for each consecutive annual period and for any remaining period of less than 12 months, beginning with the inception date of this policy as shown on the "declarations". If however, the policy period is extended for an additional period of less than 12 months, this additional period will be considered part of the preceding annual period for the purpose of determining the "limit".

       The Limited Fungus and Related Perils Coverage Aggregate Limit is the most that "we" pay even if "fungus or related perils" that are the direct result of a specific occurrence recur or continue to exist during this or any future policy period.

       The Limited Fungus and Related Perils Coverage Aggregate Limit applies regardless of the number of claims made and regardless of the number of premises or buildings insured under this policy.

       This coverage does not increase the "limit" shown for any property, expense, or assessment covered.

Copyright, American Association of Insurance Services, Inc., 2012

c. **Exceptions** -- The limitations set forth by this coverage do not apply to:

1) "fungus or related perils" that result from fire or lightning;
2) the Additional Coverage provided for Removal;
3) collapse caused by hidden decay, to the extent that such loss is covered under the Additional Coverage provided for Collapse; or
4) coverage provided for accounts receivable, "computers", or outdoor signs.

d. **Application Of Coverage** -- The "terms" of this coverage do not apply to loss or damage to covered property that is not caused, in total or in part, by "fungus or related perils" except to the extent that "fungus or related perils" increase the amount of loss. When "fungus or related perils" increase the amount of loss, that increased amount is subject to the "terms" of this coverage.

11. **Lock And Key Replacement** -- "We" pay for any necessary expense to repair or replace exterior or interior door locks and keys at the described premises when, as the result of a covered theft loss by burglars, "your" property is damaged or "your" door keys are stolen.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage for any one loss is $1,000. No deductible applies.

12. **Pollutant Clean Up And Removal** -- "We" pay "your" expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release, escape, or emission of the "pollutants" is caused by a covered peril that occurs during the policy period.

**Restrictions** --

a. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

b. "We" pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants" only when the expense of extracting the "pollutants" is covered by this Additional Coverage.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay for each described premises is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

13. **Recharge Of Fire Extinguishing Equipment** -- "We" pay expenses "you" incur to recharge "your" manual fire extinguishing equipment or installed fire extinguishing system, including any necessary hydrostatic testing, when the equipment or system is discharged on or within 100 feet of the described premises:

a. to fight a fire;

b. as a result of a covered peril; or

c. as a result of an accidental discharge.

This coverage also applies to loss or damage to covered property that is caused by the accidental discharge of a chemical from fire extinguishing equipment or fire extinguishing system.

**Restriction** -- This coverage does not apply if the equipment or system is discharged during installation or testing.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage in any one occurrence is $5,000. No deductible applies. When the cost to replace "your" automatic fire extinguishing equipment or system is less than the cost of recharging, "we" pay "your" cost to replace such automatic fire extinguishing equipment or system, rather than the cost to recharge the equipment or system.

Copyright, American Association of Insurance Services, Inc., 2012

14. **Removal** -- "We" pay for direct physical loss or damage to covered property while it is moved or being moved from the described premises to prevent a loss caused by a covered peril. This does not increase the "limit" for the covered property.

    **Time Limitation** -- This coverage applies for up to 30 days after the property is first moved, but does not extend past the date on which this policy expires.

15. **Tearing Out And Replacing** -- This Additional Coverage does not increase the "limit" for the covered property.

    When loss or damage caused by:

    a. water;

    b. other liquids;

    c. powder; or

    d. molten material;

    is covered, "we" also pay the cost of tearing out and replacing any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

    **Restriction** -- "We" do not pay for damage to the system or appliance from which the water or other substance escapes.

    However, "we" do pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

## EXTENSIONS OF COVERAGE

Unless otherwise stated, each extension of coverage is an additional amount of insurance which applies to losses at the described premises caused by a covered peril.

"We" provide the following extensions of Coverage A -- Buildings.

1. **Building Property - Off Premises** -- "We" pay for loss or damage to covered property while temporarily at locations that "you" do not own, control, rent, or lease. This coverage includes property while in transit.

   **Restrictions** --

   a. "We" only cover loss at such locations within the "basic territory".

   b. "We" do not cover theft loss from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $5,000.

2. **Newly Acquired Buildings** -- "We" pay for loss or damage to each building or structure being built on the described premises, or that "you" acquire at premises other than the described premises, during the policy period.

   **Restriction** -- "We" only cover loss at such locations within the "basic territory".

   **Time Limitation and Premium Requirement** -- This coverage applies for 30 days after construction is started, or for 30 days from the date "you" acquire the building or structure, or until "you" report the newly acquired property to "us", whichever occurs first. This coverage does not extend past the date on which this policy expires. "You" must pay any additional premium due from the date construction is started or the date "you" acquire the property.

   **Coverage Limit** -- The most "we" pay under this coverage is $250,000 for each newly acquired building or structure.

Copyright, American Association of Insurance Services, Inc., 2012

3. **Trees, Shrubs, And Plants** -- "We" pay for loss or damage to "your" outdoor trees, shrubs, and plants.

   **Restriction** -- "We" only cover loss caused by aircraft, civil commotion, explosion, fire, lightning, or riot.

   **Coverage Limits** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $2,500, subject to a $1,000 limit for any one tree, shrub, or plant, including the cost of debris removal.

"We" provide the following extensions of Coverage B -- Business Personal Property.

1. **Accounts Receivable** --

   a. "We" pay for loss to "your" accounts receivable records caused by a covered peril. "We" pay:

      1) the sums that are due and that "you" cannot collect from "your" customers because of the loss;
      2) the interest charged on a loan if that loan is used to offset those sums that cannot be collected pending "our" payment of those sums;
      3) collection costs that result from the loss which are above "your" normal collection costs; and
      4) the reasonable costs to reconstruct "your" accounts receivable records.

   b. **Exclusions** --

      1) Under Perils Excluded, only the following exclusions apply to this coverage:

         a) Civil Authority;
         b) Nuclear Hazard; and
         c) War and Military Action.

      2) Under Additional Exclusions, only the following Additional Exclusions apply to this coverage:

         a) Criminal, Fraudulent, Dishonest, or Illegal Acts;
         b) Electrical Damage;
         c) Indirect Losses; and
         d) Voluntary Parting.

      3) The following additional exclusions also apply to this coverage.

         a) "We" do not pay for loss caused by the destruction, alteration, falsification, or concealment of "your" accounts receivable records that is done to conceal the criminal, fraudulent, dishonest, or illegal giving, taking, or withholding of "money", "securities", or other property;
         b) "We" do not pay for loss that results from a discrepancy that is discovered in "your" books or records if this is the only means to prove that a loss has occurred. If there is other evidence to prove that a loss has occurred, "you" may use the discrepancy to support "your" claim; and
         c) "We" do not pay for loss caused by bookkeeping, accounting, or billing errors or omissions.

   c. **Coverage Limits** -- Unless higher "limits" for this coverage are shown on the "declarations", the most "we" pay is:

      1) $10,000 in any one occurrence for loss to accounts receivable records at the described premises; and
      2) $5,000 in any one occurrence for loss to "your" accounts receivable records away from the described premises.

2. **Business Personal Property** -- "We" pay for loss or damage to Business Personal Property:

   a. at each location "you" acquire;

   b. "you" newly acquire located at the described premises; or

   c. located at each building being built or that "you" acquire on the described premises.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

**Restriction** -- "We" only cover loss at such locations within the "basic territory".

**Time Limitation and Premium Requirement** -- This coverage applies for 30 days from the date "you" acquire a location or business personal property, or until "you" report the acquired location or business personal property values to "us", whichever occurs first. This coverage does not extend past the date on which this policy expires. "You" must pay any additional premium due from the date "you" acquire the location or the business personal property.

**Coverage Limit** -- The most "we" pay under this coverage is $100,000 at each building.

3. **Business Personal Property - Off Premises** -- "We" pay for loss or damage to covered Business Personal Property while temporarily at locations that "you" do not own, control, rent, or lease. This coverage includes property while in transit.

   **Restrictions** --

   a. "We" only cover loss at such locations within the "basic territory".

   b. "We" do not cover loss to accounts receivable or "valuable papers and records".

   c. "We" do not cover theft loss from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $10,000.

4. **Data Records And Programs** -- "We" pay for loss or damage to "data records", "programs and applications", and "proprietary programs" caused by a covered peril, "computer virus", or "computer hacking".

   **Restrictions** --

   a. "We" do not pay for loss or damage caused by or resulting from the manipulation of the computer system by any "employee", temporary "employee", leased "employee", volunteer, or person or entity retained by "you" to perform computer systems related services.

   b. "We" do not pay for loss or damage to accounts receivable.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $10,000 on an annual aggregate basis in any one policy period, regardless of the number of occurrences, premises, locations, or "computers".

5. **Personal Effects** -- "We" pay for loss or damage at each described premises, to personal effects owned by "you", "your" partners, officers, directors, trustees, joint venturers, members, managers, or "employees".

   **Restriction** -- Personal effects do not include "your" business equipment and tools.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $2,500.

6. **Valuable Papers And Records** --

   a. "We" pay for loss or damage to "valuable papers and records" that "you" own or that are in "your" care, custody or control, caused by a covered peril.

   b. **Exclusions** --

      1) "We" do not pay for loss or damage to:

         a) property held for delivery after it is sold;
         b) property that is in storage at locations other than the described premises; or

Copyright, American Association of Insurance Services, Inc., 2012

c) property held as samples for sale.

2) Under Perils Excluded, only the following exclusions apply to this coverage:

a) Civil Authority;
b) Nuclear Hazard; and
c) War and Military Action.

3) Under Additional Exclusions, only the following Additional Exclusions apply to this coverage:

a) Criminal, Fraudulent, Dishonest, Or Illegal Acts;
b) Voluntary Parting; and
c) Item c. under Defects, Errors, Or Omissions.

c. **Coverage Limits** -- Unless higher "limits" for this coverage are shown on the "declarations", the most "we" pay is:

1) $10,000 in any one occurrence for loss to "valuable papers and records" at the described premises; and
2) $5,000 in any one occurrence for loss to "your" "valuable papers and records" away from the described premises.

## COVERAGE C -- LOSS OF INCOME

"We" provide the Loss of Income coverages described below during the "restoration period" when "your" business sustains a necessary "interruption" resulting from direct physical loss or damage to real or personal property as a result of a covered peril.

**Restrictions** --

a. With respect to the Loss of Income coverages, a covered peril does not include a peril that applies only to "computers".

b. The Loss of Income coverages apply only when the loss or damage to real or personal property occurs at the described premises or in the open (or in vehicles) within 100 feet of the described premises. When "you" occupy only a portion of a building or site, "your" premises is the portion of the building or site "you" rent, lease, or occupy and any area of the building or site that provides services or access to "your" premises.

c. Except as provided under Additional Loss Of Income Coverages for Destruction Of Data Records And Programs, "we" will not pay for "your" loss of Earnings or Extra Expenses resulting from damage, loss, corruption, or destruction of "data records", "programs and applications", or "proprietary programs".

d. "We" pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the date of direct physical loss or damage to property.

**Coverage Limit** -- When a "limit" of insurance for Coverage C -- Loss Of Income is shown on the "declarations", "we" do not pay more for earnings and extra expenses combined than the Coverage C -- Loss Of Income "limit".

### EARNINGS

"We" pay for "your" actual loss of net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses normally incurred and earned by "your" business.

In determining a loss, "we" consider the experience of "your" business before the loss, and the probable experience had no loss occurred.

**Additional Restrictions** -- The following additional restrictions apply to this coverage.

a. "We" pay only the expenses that are necessary during the "restoration period". Consideration is given to continuation of payroll and other expenses to the extent necessary to resume "your" normal business activities with the same quality of service that existed before the loss.

Copyright, American Association of Insurance Services, Inc., 2012

b. "We" do not pay for any increase in loss due to "your" failure to use reasonable efforts to resume all or part of "your" normal business activities. This includes making use of other locations and property to reduce the loss.

c. If "your" normal business activities are not resumed as soon as possible, or if they are not resumed at all, the value of loss payment is based on the period of time it would have otherwise taken to resume "your" normal business activities as soon as possible.

d. "We" do not pay for any increase in net income that might have been earned by "your" business as the result of conditions created by the effect of the covered peril.

**EXTRA EXPENSES**

"We" pay the necessary extra expenses that "you" incur to resume or continue "your" normal business activities as nearly as practicable.

"We" pay extra expenses to repair, replace, or restore any property, but only to the extent that they reduce the loss otherwise payable under this coverage.

"We" pay extra expenses to research, replace, or restore information on damaged "valuable papers and records", but only to the extent that they reduce the loss otherwise payable under this coverage.

The salvage value of any property bought for temporary use will be deducted from the amount of loss determined for extra expense.

**Additional Restrictions** -- The following additional restrictions apply to this coverage.

a. "We" do not pay for any increase in loss due to "your" failure to use reasonable efforts to resume all or part of "your" normal business activities. This includes making use of other locations and property to reduce the loss.

b. "We" pay only the extra expenses that are necessary during the "restoration period".

c. If "your" normal business activities are not resumed as soon as possible, or if they are not resumed at all, the value of loss payment is based on the period of time it would have otherwise taken to resume "your" normal business activities as soon as possible.

**EXCLUSIONS AND LIMITATIONS**

The exclusions and limitations described below apply to Coverage C -- Loss Of Income.

1. **Fire Extinguishing** -- "We" do not pay expenses incurred to put out a fire.

2. **Leases, Licenses, Contracts, Or Orders** -- "We" do not cover any increase in loss due to the suspension, lapse, or cancellation of leases, licenses, contracts, or orders.

   However, "we" do cover loss during the "restoration period", and any period of loss extension as provided for by the "terms" of item 4. under Loss Of Income Coverage Extensions, if the suspension, lapse, or cancellation results directly from the "interruption" of "your" normal business activities.

   "We" do not pay for any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

3. **Strikes, Protests, And Other Interference** -- "We" do not cover any increase in loss due to interference by strikers or other persons at the described premises. This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" normal business activities.

4. **Unnecessary Expenses** -- "We" do not pay for any expenses that are not necessary during the "restoration period".

Copyright, American Association of Insurance Services, Inc., 2012

**LOSS OF INCOME COVERAGE EXTENSIONS**

"We" provide the following Loss of Income Coverage Extensions. These Loss of Income Coverage Extensions are part of and not in addition to the applicable Loss of Income coverage "limit".

1. **Alterations And New Buildings** -- "We" extend "your" coverage to include loss caused by damage to:

   a. additions or alterations;

   b. new buildings or structures, completed or under construction; and

   c. machinery, equipment, supplies, or building materials located on or within 100 feet of the described premises used in the construction of additions or alterations, or incidental to the occupancy of new buildings or structures;

   at the described premises caused by a covered peril.

   If such loss or damage delays the start of "your" normal business activities, the "restoration period" starts from the time "your" normal business activities would have begun had no loss occurred.

2. **Fungus And Related Perils** -- "We" extend "your" coverage to apply to loss caused by the existence of or any activity of "fungus or related perils" when the existence of or any activity of the "fungus or related perils" is the direct result of a covered peril other than fire or lightning.

   **Time Limitation** -- This extension of coverage is provided for a cumulative period of time not exceeding 30 days.

3. **Interruption By Civil Authority** -- "We" extend "your" coverage to include loss while access to the described premises is specifically denied by an order of civil authority.

   This order must be a result of damage to property other than at the described premises that is caused by a covered peril, subject to the following:

   a. the described premises is:

      1) within one mile of the damaged property; and
      2) within the area where access is denied by civil authority; and

   b. the order is initiated:

      1) to allow civil authority to have access to the damaged property without interference; or
      2) due to dangerous conditions as a result of the damage or continuation of the covered peril that caused the damage.

   **Waiting Period And Time Limitation** -- This coverage for Earnings will begin 72 hours after the time of the initial order of civil authority that denies access to the described premises and will apply for a period of up to four consecutive weeks from the date this coverage began.

   This coverage for necessary Extra Expenses begins at the time of the initial order of civil authority that denies access to the described premises and will end:

   a. four consecutive weeks after the date of the initial order; or

   b. when this coverage for Earnings expires;

   whichever is later.

4. **Period Of Loss Extension** -- "We" extend "your" coverage to cover loss from the date the property that incurred the loss or damage is rebuilt, repaired, or replaced until:

   a. the end of 30 consecutive days (unless otherwise shown on the "declarations"); or

Copyright, American Association of Insurance Services, Inc., 2012

b. the date "you" could reasonably resume "your" normal business activities to the level that would have existed had no loss occurred;

whichever is earlier.

**Restrictions** --

a. This coverage does not apply to loss resulting from unfavorable business conditions caused by the impact of the covered peril in the area where the described premises are located.

b. Property that incurred the loss or damage does not include finished stock.

## ADDITIONAL LOSS OF INCOME COVERAGES

"We" provide the following Additional Loss of Income Coverages. Earnings and Extra Expenses Coverages, as described under the Loss of Income section of this policy, also apply to these Additional Loss of Income Coverages. These Additional Loss of Income Coverages provide additional insurance.

1. **Destruction Of Data Records And Programs** -- "We" pay for "your" loss of Earnings and Extra Expenses resulting from damage, loss, corruption, or destruction of "data records", "programs and applications", and "proprietary programs" caused by a covered peril.

   **Restrictions --**

   a. Covered perils are limited to the "specified perils", "computer virus", "computer hacking", and the Additional Coverage for Collapse.

   b. "We" will not pay for loss or damage caused by or resulting from the manipulation of the computer system by any "employee", temporary "employee", leased "employee", volunteer, or person or entity retained by "you" to perform computer systems related services.

   c. If an additional covered peril is added by endorsement to this policy, such additional covered peril does not apply to this additional loss of income coverage.

   **Time Limitation** -- Destruction Of Data Records And Programs does not apply to a loss that occurs or to expenses incurred after the "restoration period" ends, even if the coverage limit for this additional loss of income coverage has not been exhausted.

   **Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage for earnings and extra expenses is $10,000 on an annual aggregate basis in any one policy period, regardless of the number of "interruptions", premises, locations, or "computers".

2. **Earnings From Dependent Locations** -- "We" pay "your" loss of Earnings and Extra Expenses due to direct physical loss or damage to real or personal property at a "dependent location" caused by a covered peril.

   **Restrictions** -- "We" do not pay for "your" loss of earnings and extra expenses when the only loss to property at the "dependent location" is loss or damage to "software". If the "dependent location" sustains loss or damage to "software" and other property, loss of earnings and extra expenses coverage will not continue once the other property is repaired, rebuilt, or replaced.

   "We" will reduce the amount of "your" loss, other than extra expenses, to the extent "you" can resume "your" business by using other available sources or materials or outlets for "your" products.

   If "you" do not resume "your" business, or do not resume "your" business as soon as possible, "we" will pay based on the length of time it would have taken to resume "your" business as soon as possible.

Copyright, American Association of Insurance Services, Inc., 2012

**Coverage Period** --

a. This additional loss of income coverage:

1) begins 72 hours after the time of direct physical loss or damage caused by a covered peril at the "dependent location"; and
2) ends on the date that the property at the "dependent location" should be rebuilt, repaired, or replaced using reasonable speed and materials of similar quality.

b. The coverage period does not include any increase in time due to the enforcement of any code, ordinance, law, or decree that regulates or requires:

1) the construction, use, repair, or demolition of any property; or
2) that "you" or anyone else to test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants" or "fungus or related perils".

The coverage period is not limited by the expiration date of the policy.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage for any one loss is $5,000.

3. **Newly Acquired Locations** -- "We" pay for "your" loss of Earnings and Extra Expenses resulting from damage that is caused by a covered peril to property at locations "you" acquire.

   **Restrictions** -- In addition to the restrictions in this policy that apply to Earnings and Extra Expenses, "we" only cover loss at such locations within the "basic territory".

   **Time Limitation** -- This coverage applies for 30 days after "you" acquire the location or until "you" report the newly acquired location to "us", whichever occurs first. This coverage does not extend past the date on which this policy expires.

   **Coverage Limit** -- The most "we" pay under this coverage for earnings and extra expenses is $100,000.

## PERILS COVERED

Unless otherwise stated, the Perils Covered apply to Coverage A -- Buildings, Coverage B -- Business Personal Property, and Coverage C -- Loss Of Income.

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

"We" do not pay for loss or damage if one or more of the following exclusions apply to the loss or damage, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

1. **Civil Authority** -- "We" do not pay for loss or damage caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   However, "we" do pay for loss or damage resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

2. **Earth Movement** -- "We" do not pay for loss or damage caused by any "earth movement".

Copyright, American Association of Insurance Services, Inc., 2012

However, if eruption, explosion, or effusion of a volcano results in "volcanic action" or building glass breakage, "we" will pay for the loss or damage caused by that "volcanic action" or building glass breakage.

If "earth movement" results in fire, "we" will pay for the loss or damage caused by that fire. If "earth movement" (other than eruption, explosion, or effusion of a volcano) results in explosion, "we" will pay for the loss or damage caused by that explosion.

All volcanic eruptions that occur within a 168 hour period will be considered a single loss.

This exclusion does not apply to "computers".

3. **Fungus Or Related Perils** -- Except as provided under Limited Fungus and Related Perils Coverage, "we" do not pay for loss, cost, or expense caused by or relating to the existence of or any activity of "fungus or related perils".

   However, "we" do pay for loss or damage that is caused by a "specified peril" that results from "fungus or related perils".

   This exclusion does not apply to:

   a. loss or damage that results from fire or lightning; or

   b. collapse caused by hidden decay, to the extent that such loss is covered under the Additional Coverage provided for Collapse.

   This exclusion does not apply to "computers".

4. **Nuclear Hazard** -- "We" do not pay for loss or damage caused by a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to, or aggravated by a covered peril; and whether caused by natural, accidental, or artificial means).

   Loss or damage caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke.

   However, direct physical loss or damage caused by fire resulting from the nuclear hazard is covered.

5. **Ordinance Or Law** -- Except as provided under Increased Costs -- Ordinance or Law Coverage, "we" do not pay for loss or increased costs caused by enforcement of any code, ordinance, law, or decree that regulates the construction, use, or repair of any building or structure; or that requires the demolition of any property, including the removal of debris.

   This exclusion applies whether the loss results from:

   a. a code, ordinance, law, or decree that is enforced, even if the property has not been damaged; or

   b. the increased costs incurred to comply with a code, ordinance, law, or decree in the course of the construction, repair, renovation, remodeling or demolition of property, or debris removal following a physical loss to that property.

6. **Utility Failure** -- "We" do not pay for loss or damage caused by failure or disruption of power, water, communication, or other utility services supplied to the described premises resulting from any cause, if the failure or disruption originates:

   a. away from the described premises; or

   b. at the described premises, if such failure or disruption involves equipment used to furnish the utility service to the described premises from a source away from the described premises.

   Failure or disruption includes reduced or increased voltage, power surge, low or high pressure, reduction in supply, or other disruptions of normal services.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

However, if the failure, disruption, or surge of power, or the failure or disruption of water, communication, or other utility service results in a covered peril, "we" do pay for the direct physical loss or damage caused by that covered peril.

Communication utilities include but are not limited to services relating to telephone, cable, internet access, or the connectivity to satellite, cellular, or other electronic network or service.

This exclusion does not apply to "computers".

7. **Virus Or Bacteria** -- "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

   This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

   a. any contamination by any virus, bacterium, or other microorganism; or

   b. any denial of access to property because of any virus, bacterium, or other microorganism.

   This exclusion does not apply to loss, cost, or expense resulting from "fungus or related perils".

   This exclusion supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

8. **War And Military Action** -- "We" do not pay for loss or damage caused directly or indirectly by the following:

   a. war, including undeclared or civil war;

   b. warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

   c. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

   With respect to any action that comes within the "terms" of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

9. **Water** --

   a. "We" do not pay for loss or damage caused by:

      1) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;
      2) mudslide or mudflow;
      3) water that backs up through, overflows from, or is otherwise discharged from:

         a) a sewer or drain;
         b) a sump, sump pump, or related equipment; or
         c) any other type of system designed to remove subsurface water which is drained from the foundation area;

      4) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

         a) basements, whether paved or not;

Copyright, American Association of Insurance Services, Inc., 2012

b) doors, windows, or other openings;
c) foundations, floors, walls, or paved surfaces; or
d) swimming pools, septic tanks, or other structures; or

5) material present in or carried or otherwise moved by water described in items 1) through 4) above.

However, if fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

b. This exclusion:

1) applies regardless of the cause of the water or the material carried or moved by water described under items a.1) through a.5) above, whether or not such cause is an act of nature; and
2) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

a) overtops;
b) escapes from;
c) is released from; or
d) is otherwise discharged from;

a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

This exclusion does not apply to "computers".

10. **Weather** -- "We" do not pay for loss or damage caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in items 1. through 9. above.

However, "we" do pay for any resulting loss or damage caused by a covered peril unless the resulting loss itself is excluded.

## ADDITIONAL EXCLUSIONS

"We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

1. **Animals** -- "We" do not pay for loss or damage caused by nesting or infestation, discharge or release of waste products or secretions of animals, including birds or insects.

   However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

   This exclusion does not apply to "hardware".

2. **Collapse** -- Except as provided under Additional Coverages for Collapse, "we" do not pay for loss or damage involving collapse, caving in, or impairment of structural integrity, including but not limited to sagging, bowing, bending, leaning, separation of parts of the property, or inadequacy of load bearing capacity.

   However, if collapse as described above results in a covered peril, "we" cover the loss or damage caused by that covered peril.

   This exclusion does not apply to direct physical loss that results from collapse of a covered building or structure or any part of a covered building or structure caused only by one or more of the following:

   a. "specified perils" or breakage of building glass; all as covered under the Property Coverages;

   b. weight of people or personal property; or

   c. weight of rain that collects on a roof.

   This exclusion does not apply to "computers".

Copyright, American Association of Insurance Services, Inc., 2012

3. **Computer Virus or Computer Hacking** -- Except as provided for under Extensions Of Coverage for Data Records And Programs, and under Additional Loss Of Income Coverages for Destruction Of Data Records And Programs, "we" do not pay for:

   a. any direct or indirect loss or damage; or

   b. loss of access, loss of use, or loss of functionality;

   caused by a "computer virus" or by "computer hacking".

   This includes, but is not limited to loss or damage to "computers", "your" computer network, or "your" web site caused by or resulting from a "computer virus" or "computer hacking".

4. **Contamination Or Deterioration** -- "We" do not pay for loss or damage caused by contamination or deterioration, including corrosion, rust, or any quality, fault, or weakness in property that causes it to damage or destroy itself.

   However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

   This exclusion does not apply to loss or damage caused by contamination or deterioration of "hardware" that results from direct physical damage by a covered peril to the air-conditioning system that services "your" "hardware".

5. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss or damage caused by criminal, fraudulent, dishonest, or illegal acts, whether committed alone or in collusion with another, by:

   a. "you";

   b. others who have an interest in the property;

   c. others to whom "you" entrust the property;

   d. "your" partners, officers, directors, trustees, joint venturers, members, or managers; or

   e. the "employees" or agents of a., b., c., or d. above;

   whether or not such acts occur during work hours .

   However, this exclusion does not apply to acts of destruction of property by "your" "employees", or to accounts receivable and "valuable papers and records" in the custody of carriers for hire. Theft by "employees" is not covered.

6. **Data And Computer Errors** -- "We" do not pay for loss or damage caused by an error or omission in:

   a. the programming, storing, or processing of "data records"; or

   b. the design, specification, installation, repair, modification, or testing of "your" "computers".

   However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

   This exclusion does not apply to loss caused by a "computer virus" or "computer hacking" under the Extensions Of Coverage for Data Records And Programs, and under Additional Loss Of Income Coverages for Destruction Of Data Records And Programs.

7. **Defects, Errors, Or Omissions** -- "We" do not pay for loss or damage which results from one or more of the following:

   a. an act, error, or omission (negligent or not) relating to:

      1) land use;
      2) the design, specification, construction, repair, modification, workmanship, installation, or testing of property;
      3) planning, zoning, development, siting, surveying, grading, or compaction; or

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

4) maintenance of property (including land, structures, or improvements);

whether on or off the described premises;

b. a defect, weakness, inadequacy, fault, or unsoundness in materials used in construction, modification, or repair, whether on or off the described premises;

c. an error or omission in copying or processing "valuable papers and records";

d. the cost to make good an error in design; or

e. an error or omission by any person, organization, group, or other entity that adversely affects the quality, nature, form, or function of any product, goods, or merchandise or any part thereof.

This exclusion applies:

1) to any error or omission that occurs at any time during the:

a) research, planning, or development;
b) processing, production, manufacturing, or testing;
c) marketing, sale, packaging, or shipping;
d) installation or use; or
e) maintenance or repair; of such product, goods, or merchandise or any part thereof; and

2) regardless of the person, organization, group, or other entity responsible for the error or omission, including a party with possession of the property under an arrangement in which work or a portion of the work has been subcontracted or outsourced.

This exclusion does not apply to collapse caused by the use of defective materials or methods during the course of construction, remodeling, or renovation or after construction, remodeling, or renovation is complete, to the extent coverage is provided by the additional coverage for Collapse.

However, if a defect, error, or omission as described above results in a covered peril, "we" cover the loss or damage caused by that covered peril.

8. **Electrical Currents** -- "We" do not pay for loss or damage caused by manmade or mechanically produced electrical, electromagnetic, or magnetic currents or energy; or by their arcing, that results in damage or disruption to:

a. electrical or electronic wiring, networks, systems, appliances, or devices; or

b. networks, systems, appliances and devices which utilize wireless, microwave, satellite, or cellular technologies.

However, if a fire results, "we" do pay for the loss caused by fire.

In this exclusion, electrical, electromagnetic, or magnetic currents or energy includes, but is not limited to:

1) the flow of electricity and its' arcing;
2) electromagnetic energy pulses;
3) electromagnetic waves (microwaves); or
4) the electrical charge generated by or conducted through a magnetic or electromagnetic field.

This exclusion does not apply to "computers".

Copyright, American Association of Insurance Services, Inc., 2012

9. **Electrical Damage** -- Except as provided for under Extensions Of Coverage for Data Records And Programs, "we" do not pay for loss or damage to "data records", "programs and applications", and "proprietary programs" caused by electrical or magnetic damage, erasure, or disturbance.

   However, "we" do pay for electrical or magnetic damage, erasure, or disturbance of "data records", "programs and applications", and "proprietary programs" caused by lightning.

10. **Explosion** -- "We" do not pay for loss or damage caused by explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control.

    However, if a fire or combustion explosion results, "we" do pay for the resulting loss. "We" also pay for loss caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

11. **Freezing** -- "We" do not pay for loss or damage caused by water, other liquids, powder, or molten material that leaks or flows from plumbing, heating, air-conditioning systems, appliances, or other equipment (other than fire protective systems) as a result of freezing.

    However, this exclusion does not apply if "you" use reasonable care to maintain heat in the building or structure; or "you" drain the equipment and turn off the supply if the heat is not maintained.

    This exclusion does not apply to "computers".

12. **Indirect Losses** -- "We" do not pay for loss or damage caused by loss of use, delay, or loss of market.

    This exclusion does not apply to Coverage C -- Loss Of Income.

13. **Mechanical Breakdown** -- "We" do not pay for loss or damage caused by mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force.

    However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

    This exclusion does not apply to "hardware".

14. **Neglect** -- "We" do not cover loss or damage caused by "your" neglect to use all reasonable means to save covered property at and after the time of loss, or when endangered by a covered peril.

15. **Pollutants** -- "We" do not pay for loss or damage caused by the release, discharge, seepage, migration, dispersal, escape, or emission of "pollutants" unless the release, discharge, seepage, migration, dispersal, escape, or emission is caused by a "specified peril".

    However, "we" do pay for any resulting loss caused by a "specified peril".

16. **Seepage** -- "We" do not pay for loss or damage caused by, or resulting from, continuous or repeated seepage or leakage of water, or the presence or condensation of moisture, humidity, or vapor, that occurs over a period of 14 days or more.

17. **Settling, Cracking, Shrinking, Bulging, or Expanding** -- "We" do not pay for loss or damage caused by the settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs.

    However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

    This exclusion does not apply to "hardware".

Copyright, American Association of Insurance Services, Inc., 2012

18. **Smog** -- "We" do not pay for loss or damage caused by smog.

    However, this exclusion does not apply to "computers".

19. **Smoke, Vapor, or Gas** -- "We" do not pay for loss or damage caused by smoke, vapor, or gas from agricultural smudging or industrial operations.

    However, this exclusion does not apply to "computers".

20. **Temperature/Humidity** -- "We" do not pay for loss or damage to personal property caused by dampness, dryness, or changes in or extremes of temperature.

    However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

    This exclusion does not apply to loss or damage to "hardware" that results from direct physical damage by a covered peril to the air-conditioning system that services "your" "hardware".

21. **Voluntary Parting** -- "We" do not pay for loss caused by voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

22. **Wear And Tear** -- "We" do not pay for loss or damage caused by wear and tear, marring, or scratching.

    However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

    This exclusion does not apply to loss to "hardware" resulting from mechanical breakdown.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss may have been a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a covered peril if a covered peril has already caused a loss to covered property. This does not increase the "limit" for the covered property.

   **Restriction** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a covered peril.

3. **Proof Of Loss** -- Within 60 days after "our" request, "you" must send "us" a signed, sworn proof of loss.

   The proof of loss must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

Copyright, American Association of Insurance Services, Inc., 2012

d. changes in title or occupancy of the covered property during the policy period;

e. detailed estimates for repair or replacement of covered property;

f. available plans and specifications of buildings or structures;

g. detailed estimates of any covered loss of income and expenses; and

h. an inventory of damaged and undamaged covered personal property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. "You" must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory.

An inventory of undamaged personal property is not required if the total claim for a loss is less than $10,000 and less than 5% of the total "limit" that applies to the covered property.

4. **Examination Under Oath** -- An "insured" must submit to examination under oath in matters connected with the loss or relating to this insurance as often as "we" reasonably request and give "us" signed sworn statements of the answers. If more than one "insured" is examined, "we" have the right to examine and receive statements from each "insured" separately and not in the presence of the other "insureds".

5. **Cooperation** -- "You" must cooperate with "us" in the investigation and settlement of the claim.

6. **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense; and permit copies and extracts to be made of these records as often as "we" reasonably request.

7. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

8. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except with respect to protecting property from further damage by a covered peril.

9. **Abandonment** -- "We" do not have to accept any abandonment of property.

10. **Intent To Continue Business** -- If "you" intend to continue "your" business, "you" must resume all or part of "your" business as soon as possible.

## VALUATION OF PROPERTY LOSSES

The valuation of property losses will be based on the following provisions.

1. **Replacement Cost** -- Subject to items 3. through 12. under Valuation of Property Losses, the value of covered property is based on its replacement cost without a deduction for depreciation, unless Actual Cash Value is shown on the "declarations".

**Limitations** --

a. If the "limit" on the lost or damaged property at the time of loss is 80% or more of the property's full replacement cost immediately prior to the loss, "we" pay the cost to repair or replace the property, but not more than the least of the following:

1) the "limit" that applies to the lost or damaged property;

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

2) the cost to replace, on the same premises, the lost or damaged property with property of comparable materials and quality, that is to be used for the same purpose; or
3) the amount that "you" actually spend that is necessary to repair or replace the lost or damaged property.

If a building is not rebuilt on the same premises, the cost to replace is limited to the cost that would have been incurred had the building been rebuilt on the same premises.

b. If the "limit" on the lost or damaged property at the time of loss is less than 80% of the property's full replacement cost immediately prior to the loss, "we" pay the greater of the following amounts, but not more than the "limit" that applies to the property:

1) the actual cash value of the lost or damaged property; or
2) that part of the replacement cost of the lost or damaged property which the applicable "limit" bears to 80% of the full current replacement cost of the covered property.

c. Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. The repairs or replacement must be made as soon as reasonably possible after the loss or damage. Subject to items 1.a. and 1.b. above, if the cost to repair or replace is $2,500 or less, "we" will settle the loss whether or not the damaged or destroyed property is repaired or replaced.

"You" may make a claim for the actual cash value of the damaged property before the repair or the replacement takes place, and then make a follow-up claim later for the replacement cost provided "you" notify "us" of "your" intent within 180 days after the loss or damage.

d. The cost to repair, rebuild, or replace lost or damaged property does not include the increased cost attributable to enforcement of any code, ordinance, law, or decree regulating the construction, use, or repair of any property.

2. **Actual Cash Value** -- When Actual Cash Value is shown on the "declarations" for Coverage A -- Buildings or Coverage B -- Business Personal Property, Replacement Cost does not apply. The value of such property is based on its actual cash value at the time of the loss with a deduction for depreciation.

3. **Property Not Eligible For Replacement Cost** -- The value of the following property is based on its actual cash value at the time of the loss:

a. household contents, except personal property in apartments or rooms furnished by "you" as landlord;

b. manuscripts;

c. objects of art, rarity, or antiquity;

d. used or second-hand merchandise held for sale or in storage; and

e. personal property of others.

However, if personal property of others in "your" care, custody, or control is subject to a written agreement that specifies the extent of "your" liability for such property, the value of that property is based on the lesser of the following, unless Actual Cash Value is shown on the "declarations":

1) the extent of "your" liability as specified in the written agreement to which the property is subject;
2) the Replacement Cost "terms" set forth under item 1. of Valuation of Property Losses; or
3) the "limit" that applies to the lost or damaged property.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

If Actual Cash Value is shown on the "declarations", the value of personal property of others is based on its actual cash value at the time of the loss or the extent of "your" liability as specified in the written agreement to which the property is subject, whichever is less.

Actual cash value includes a deduction for depreciation.

4. **Glass** -- The value of glass is based on the cost of safety glazing material where required by code, ordinance, law, or decree.

5. **Hardware** -- The value of "hardware" is based on the following:

   a. **Hardware That Is Replaced** -- The value of "hardware" that is replaced is based on the cost of replacing the "hardware" with new equipment that is functionally comparable to the "hardware" that is being replaced.

   b. **Hardware That Is Not Replaced** -- The value of "hardware" that is not repaired or replaced is based on the actual cash value at the time of loss, with a deduction for depreciation.

   c. **Partial Loss** -- "We" do not pay more than the reasonable cost of restoring partially damaged "hardware" to its condition directly prior to the damage.

6. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

7. **Money** -- The value of "money" is based on its face value.

8. **Pair Or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set.

   The loss is not considered a total loss of the pair or set.

9. **Securities** -- The value of "securities" is based on their actual cash value at the close of business on the day the loss was discovered.

10. **Software** -- The value of "software" is based on the following.

   a. **Data Records** -- The value of "data records" is based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe the information from duplicate copies.

      However, if duplicate copies do not exist, the value of "data records" is based on the cost of research or other expenses necessary to reproduce, replace, or restore lost files, documents, and information.

      The value of "data records" not restored or replaced is based on the cost to replace the "media" on which the "data records" were stored with blank "media" of similar kind or quality.

   b. **Media** -- The value of "media" is based on the cost to repair or replace the "media" with material of the same kind or quality.

   c. **Programs And Applications** -- The value of "programs and applications" is based on the cost to reinstall the "programs and applications" from the licensed discs that were originally used to install the "programs and applications".

      However, if the original licensed discs are lost, damaged, or can no longer be obtained, the value of "programs and applications" is based on the cost of the most current version of the "programs and applications".

Copyright, American Association of Insurance Services, Inc., 2012

The value of "programs and applications" not restored or replaced is based on the cost to replace the "media" on which the "programs and applications" were stored with blank "media" of similar kind or quality.

d. **Proprietary Programs** -- The value of "proprietary programs" is based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe the information from duplicate copies.

However, if duplicate copies do not exist, the value of "proprietary programs" is based on the cost of research or other expenses necessary to reproduce, replace, or restore lost "proprietary programs".

The value of "proprietary programs" not restored or replaced is based on the cost to replace the "media" on which the "proprietary programs" were stored with blank "media" of similar kind or quality.

11. **Tenant's Improvements** -- The value of tenant's improvements losses will be based on replacement cost, without a deduction for depreciation, if repaired or replaced at "your" expense within a reasonable time.

The value of tenant's improvements losses will be based on a portion of "your" original cost if not repaired or replaced within a reasonable time. This portion is determined as follows:

a. divide the number of days from the date of the loss to the expiration date of the lease by the number of days from the date of installation to the expiration date of the lease; and

b. multiply the figure determined in 11.a. above by the original cost.

However, if "your" lease contains a renewal option, the expiration date of the lease in this calculation is replaced by the expiration of the renewal option period.

Tenant's improvements losses are not covered if repaired or replaced at another's expense.

12. **Valuable Papers And Records** -- The value of "valuable papers and records" is based on the cost of blank materials and the labor to transcribe or copy the records when there is a duplicate. When a duplicate does not exist, the value is based on the cost of research or other expenses necessary to reproduce, replace, or restore lost information on such lost or damaged "valuable papers and records".

However, if "valuable papers and records" are not reproduced, replaced, or restored, the value of "valuable papers and records" is based on the cost of blank materials of similar kind or quality.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not pay more than "your" insurable interest in any property.

2. **Deductible** -- Except as provided under items 2.a., 2.b., and 2.c. below, "we" pay only that part of "your" loss in excess of the deductible amount stated on the "declarations" in any one occurrence.

   a. When loss is limited to an Optional Property Coverage that is included under the "terms" of this form, the most "we" will deduct from "your" loss in any one occurrence is the Optional Property Coverages deductible amount shown on the "declarations".

Copyright, American Association of Insurance Services, Inc., 2012

b. If a single occurrence results in loss to property that is subject to different deductible amounts, the total amount deducted from "your" loss will not exceed the largest deductible applicable.

c. No deductible applies to Fire Department Service Charges, Lock and Key Replacement, Inventory and Appraisal Expenses, Recharge of Fire Extinguishing Equipment, or Coverage C - Loss of Income.

3. **Loss Settlement Terms** -- Subject to items 1., 2., 4., 5., 6., 7., and 8. under How Much We Pay, "we" pay the lesser of:

a. the amount determined under Valuation Of Property Losses;

b. the cost to repair, replace, or rebuild the property with materials of like kind and quality to the extent practicable; or

c. the "limit" that applies to covered property.

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim or loss sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same plan, "terms", conditions, and provisions as this policy. If "you" do, "we" pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

6. **Accounts Receivable** -- Subject to items 1., 2., 4., and 5. under How Much We Pay, "we" pay the lesser of:

a. the total sum of accounts receivable due. From this total "we" will deduct:

1) all amounts due from the accounts receivable records that are not lost;
2) all amounts due that can be established by other means;
3) all amounts due that "you" have collected from the records that are lost;
4) all unearned interest and service charges; and
5) an amount to allow for bad debts;

b. the reasonable cost to reconstruct "your" accounts receivable records; or

c. the applicable "limit".

If a loss occurs and "you" cannot establish the actual accounts receivable amounts due, they will be determined as follows.

"We" will determine the total of the average monthly accounts receivable amounts for the 12 month period that immediately precedes the month in which the loss occurred. "We" will adjust the total for any verifiable variance in the accounts receivable amount for the month in which the loss occurred.

7. **Automatic Increase** -- When a percentage increase is shown on the "declarations" for a Coverage A -- Buildings or Coverage B -- Business Personal Property entry, the corresponding "limit" is increased annually by the percentage shown. The increase applies proportionally from the date of the most recent "limit".

The increase applies only to the "limit" shown on the "declarations" for the corresponding Coverage A -- Buildings or Coverage B -- Business Personal Property entry.

Copyright, American Association of Insurance Services, Inc., 2012

8. **Seasonal Increase** -- The Coverage B -- Business Personal Property "limits" shown on the "declarations" will automatically increase by 25% to provide for seasonal increase.

   **Condition** -- This increase applies only if "your" Business Personal Property "limit" is at least 100% of "your" average monthly values for the 12 months immediately preceding the date of the loss or damage.

   If "you" have been in business less than 12 months, the "limit" of insurance must be 100% of "your" average monthly values for the time "you" have been in business.

## LOSS PAYMENT

1. **Our Options** -- In the event of loss covered by this policy, "we" have the following options:

   a. pay the value of the lost or damaged property;

   b. pay the cost of repairing or replacing the lost or damaged property;

   c. rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

   d. take all or any part of the property at the agreed or appraised value.

   "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" adjust all losses with "you". Payment is made to "you" unless another loss payee is named in the policy. A covered loss is payable 30 days after a satisfactory proof of loss is received, and:

   a. the amount of the loss has been agreed to in writing;

   b. an appraisal award has been filed with "us"; or

   c. a final judgment has been entered.

3. **Property Of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner, subject to the owner's interest.

   If "we" pay the owner, "we" do not pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

4. **Common Wall** -- In the event of loss or damage to a common wall or party wall and subject to all other applicable policy provisions and "limits":

   a. "We" will pay the share of the loss to the common wall equal to "your" ownership interest in the common wall in proportion to the adjoining owner's interest in the common wall.

   b. If "you" choose to repair or replace damage to the common wall caused by a covered peril, but the adjoining owner chooses not to, "we" will pay the full value of the loss to the common wall.

   c. "We" retain "our" rights to subrogation against the owner or insurer of the adjoining property or any other person or entity. The Subrogation Condition of this policy is not altered by this provision.

   With respect to this Loss Payment provision, a common wall or party wall is a shared wall dividing two adjoining properties that have different ownership.

Copyright, American Association of Insurance Services, Inc., 2012

## ADDITIONAL CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss, either party may make a written demand that the amount be determined by appraisal.

   If either party makes a written demand for appraisal, each selects a competent, independent appraiser and notifies the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers then determine and state separately the amount of each loss.

   The appraisers also determine the actual cash value of covered property items at the time of the loss, if requested.

   A written agreement is binding on all parties. If the appraisers fail to agree within a reasonable time, they submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three is binding on all parties.

   Each appraiser is paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire is paid equally by "you" and "us".

   Under no circumstance will an appraisal be used to interpret policy "terms", determine causation, or determine whether or not a loss is covered under this policy. If there is an appraisal, "we" retain "our" right to deny the claim.

2. **Benefit To Others** -- Insurance under the Property Coverages will not directly or indirectly benefit anyone having custody of "your" property.

3. **Control Of Property** -- The Property Coverages are not affected by any act or neglect beyond "your" control.

   A violation of any condition in this policy by an "insured" will only affect coverage at the location where the violation took place.

4. **Death of An Individual Named Insured** -- If "you" die, "your" rights and duties under the Property Coverages pass to "your" legal representative or other person having proper temporary custody of "your" property.

5. **Mortgage Provisions** -- If a mortgagee (mortgagee includes trustee) is named in this policy, covered loss to buildings or structures will be paid to the mortgagee and "you" as the interests of each appear. If more than one mortgagee is named, they will be paid in order of precedence.

   The insurance for the mortgagee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". However, the insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify "us".

   If "you" fail to do so, "we" may request from the mortgagee:

   a. payment of the premium; and

   b. a signed, sworn proof of loss within 60 days after "our" request.

   If "we" pay the mortgagee for a loss where "your" insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from "you" then belongs to "us". This does not affect the mortgagee's right to collect the remainder of the mortgage debt from "you". As an alternative, "we" may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

Copyright, American Association of Insurance Services, Inc., 2012

If "we" cancel this policy, "we" will notify the mortgagee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason. If "we" choose not to renew this policy, "we" will give written notice to the mortgagee at least ten days before the expiration date of this policy.

6. **Policy Period** -- "We" cover loss or damage that begins within the policy period shown on the "declarations".

7. **Recoveries** -- If "we" pay "you" for a loss, and the lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "You" must notify "us" promptly if "you" recover property or receive payment.

   b. "We" must notify "you" promptly if "we" recover property or receive payment.

   c. "We" pay any recovery expenses incurred, and the expense to repair the recovered property, subject to the "limit" of insurance.

   d. "You" may keep the recovered property, but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree.

   e. If the claim paid is less than the agreed loss due to a deductible or other limiting "term" of this policy, any recovery is pro rated between "you" and "us" based on our respective interests in the loss.

8. **Subrogation** -- If "we" pay for a loss under the Property Coverages, "we" may require that "you" assign to "us" any right of recovery against others, up to the amount "we" have paid.

   "You" may waive "your" right to recover, in writing, before a loss takes place without voiding coverage.

   **Restriction** -- "You" must do nothing to impair "our" right of recovery after a loss.

   However, "you" may waive "your" right to recover, in writing, after a loss only with respect to the following parties:

   a. a person, persons, entity, or organization that is insured under the Property Coverages;

   b. "your" tenant;

   c. a business firm owned or controlled by "you"; or

   d. a business firm which owns or controls "your" business.

9. **Suit Against Us** -- No lawsuit can be brought against "us" unless:

   a. the "terms" of the Property Coverages have been fully complied with; and

   b. the lawsuit is commenced within two years after the date on which direct physical loss or damage occurred.

   If any applicable law makes this limitation invalid, then the lawsuit must begin within the shortest period permitted by the law.

10. **Vacancy Restriction** -- "We" do not pay for loss or damage caused by attempted theft, breakage of building glass, sprinkler leakage (unless "you" have protected the system against freezing), theft, vandalism, or water damage, if prior to the loss or damage, the building or structure has been vacant for more than 60 consecutive days.

    The amount "we" pay for any loss that is not otherwise excluded is reduced by 15%.

    Property is vacant when the occupants of a building or structure have moved, leaving the building or structure empty or containing limited business personal property.

    If "you" are the owner or general lessee, the building or structure is considered vacant when 30% or less of the total square footage is occupied as intended.

Copyright, American Association of Insurance Services, Inc., 2012

If "you" are the tenant, the building or structure is considered vacant when the area rented to "you" does not contain enough business personal property to conduct "your" customary activities or operations.

Buildings or structures that are under construction or being renovated are not considered vacant.

## OPTIONAL PROPERTY COVERAGES

If indicated as applicable on the "declarations", the following Optional Property Coverages also apply. The Optional Property Coverages are subject to the "terms" applying to the Common Policy Conditions, the Common Policy Definitions, and Property Coverages of this policy, except as provided below.

1. **Employee Dishonesty** --

   a. "We" pay for direct loss or damage to Business Personal Property and "money" and "securities" that "you" own, hold, or for which "you" are legally liable.

      "We" pay only for those losses resulting from dishonest acts that occur within the policy period and that are committed by any of "your" "employees", acting alone, or in collusion with other persons.

      All loss or damage caused by one or more persons or involving a single act or series of related acts is considered one occurrence.

      Dishonest acts as used in this coverage means dishonest or fraudulent acts committed with the apparent intent to cause "you" to sustain loss or damage and to obtain financial benefit, other than earned salaries, commissions, bonuses, fees, profit sharing, or other "employee" benefit, for any "employee", other person, or organization.

      **Coverage Limit** -- The most "we" pay in any one occurrence for Employee Dishonesty is the "limit" for this coverage shown on the "declarations", even though the occurrence may extend over a number of policy periods.

   b. **Perils Covered** -- Perils Covered do not apply to this Optional Property Coverage.

   c. **Exclusions** -- Additional Exclusions do not apply to this Optional Property Coverage.

      1) Under Perils Excluded, only the following exclusions apply to this coverage:

         a) Civil Authority;
         b) Nuclear Hazard; and
         c) War and Military Action.

      2) In addition to the above exclusions, "we" also do not pay for loss or damage:

         a) resulting from an act that "you" or any of "your" partners, directors, trustees, joint venturers, members, or managers commit, whether acting alone, or in collusion with any "employees", or other persons;
         b) where the only proof of the loss, or amount of the loss, is dependent upon an inventory or a profit and loss computation;
         c) caused by any "employee" of "yours" or any predecessor in interest of "yours" for whom similar prior insurance has been cancelled and not reinstated;
         d) that is not discovered within one year of the end of this policy period;
         e) occurring outside the "basic territory", except as provided in the Supplemental Coverages for Employee Dishonesty; or
         f) consisting of legal expense or any indirect loss.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

d. **Additional Conditions** --

1) "You" must keep records of property covered so that "we" can verify the amount of loss.
2) This coverage is cancelled immediately for any "employee" upon discovery by "you" or any of "your" partners, officers, directors, trustees, joint venturers, members, or managers not acting in collusion with such "employee", of any dishonest act committed by that "employee", whether before or after becoming employed by "you".
3) As used in this coverage:

   a) Member means a person, who may also serve as a manager, with a position of ownership represented by his or her membership interest in a limited liability company; and
   b) Manager means a person serving in a position to provide direction to "your" limited liability company.

e. **Supplemental Coverages** -- The following Supplemental Coverages apply only if this Employee Dishonesty coverage replaces prior Employee Dishonesty coverage, and became effective on the expiration or termination date of the prior coverage.

Item 6. Policy Period under Additional Conditions does not apply to paragraph e.2) below.

The Supplemental Coverages are part of and not in addition to the applicable Employee Dishonesty "limit".

1) "We" pay for direct loss or damage to Business Personal Property and "money" and "securities" that results from dishonest or fraudulent acts committed by any of "your" "employees" while the "employee" is temporarily outside of the "basic territory" for not more than 90 days.
2) "We" will pay for loss "you" sustained prior to the policy period of this insurance that "you" could have recovered under prior insurance except that the time within which to discover the loss under the prior insurance had expired, provided:

   a) the effective date of this insurance corresponds with the date of cancellation or termination of the prior insurance; and
   b) this insurance would have covered "your" loss had it been in force at the time when the act or event causing the loss took place or was performed.

   The most "we" will pay under this Supplemental Coverage is the lesser of the applicable "limit" for:

   a) insurance under this Employee Dishonesty coverage as of its effective date; or
   b) the prior insurance.

3) "We" pay for direct loss or damage to Business Personal Property, and "money" and "securities", when a covered loss is covered in part by this Employee Dishonesty coverage and in part by prior insurance that "we" issued or any of "our" affiliates issued.

   The most "we" pay is the greater of the amount recoverable under:

   a) this Employee Dishonesty coverage; or
   b) any prior coverage that was cancelled or terminated and that "we", or any of "our" affiliates had issued to "you".

Copyright, American Association of Insurance Services, Inc., 2012

2. **Money And Securities** --

a. "We" pay for loss to "money", "securities", and lottery tickets not held for sale, that "you" own, hold, or for which "you" are legally liable, for direct loss or damage resulting from:

1) theft, meaning any act of stealing, including burglary and robbery;
2) disappearance; or
3) destruction.

b. **Condition** -- "You" must keep records of property covered so that "we" can verify the amount of loss.

c. **Perils Covered** -- Perils Covered do not apply to this Optional Property Coverage.

d. **Exclusions** --

1) Under Perils Excluded, only the following exclusions apply to this coverage:

a) Civil Authority;
b) Earth Movement;
c) Nuclear Hazard; and
d) War and Military Action.

2) Under Additional Exclusions, only the following Additional Exclusions apply to this coverage:

a) Criminal, Fraudulent, Dishonest, or Illegal Acts; or
b) Voluntary Parting.

3) In addition to the above exclusions, "we" do not pay for loss or damage:

a) resulting from accounting or arithmetical errors or omissions;
b) from a "money" operated device unless the "money" deposited is recorded by a continuous recording instrument in the device; or
c) from an unattended vehicle, unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

e. **Exceptions** -- Under How Much We Pay, item 7. Automatic Increase, and item 8. Seasonal Increase do not apply to this coverage.

f. **Coverage Limits** -- The most "we" pay for any one occurrence is:

1) the Inside Premises "limit" for this coverage shown on the "declarations" for loss occurring inside of the premises or within a bank or savings institution; or
2) the Outside Premises "limit" for this coverage shown on the "declarations" for a loss at any other location.

These "limits" apply to an act or a series of related acts involving one or more persons.

3. **Outdoor Signs** --

a. "We" pay for direct loss or damage to outdoor signs (whether attached or not attached to buildings), owned by "you" or in "your" care, custody, or control at the premises described on the "declarations", unless the loss is caused by a peril that is excluded.

b. **Perils Covered** -- Perils Covered do not apply to this Optional Property Coverage.

c. **Exclusions** --

1) Under Perils Excluded, only the following exclusions apply to this coverage:

a) Civil Authority;
b) Nuclear Hazard; and
c) War and Military Action.

Copyright, American Association of Insurance Services, Inc., 2012

2) Under Additional Exclusions, only the following Additional Exclusions apply to this coverage:

   a) Electrical Currents;
   b) Mechanical Breakdown; and
   c) Wear and Tear.

3) The following additional exclusion also applies to this coverage:

   "We" do not pay for loss or damage caused by contamination or deterioration, including corrosion, rust, decay, fungus, mildew, mold, rot, or any quality, fault, or weakness in property that causes it to damage or destroy itself.

   However, "we" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

d. **Coverage Limit** -- This optional coverage supersedes all limitations in this policy that apply to outdoor signs. The most "we" pay for loss in any one occurrence is the "limit" shown on the "declarations" for Outdoor Signs.

## COMMERCIAL LIABILITY COVERAGES

Commercial Liability Coverages contain additional definitions, coverage descriptions, exclusions, limitations, and conditions that apply to the liability coverages provided by the Businessowners Policy.

## ADDITIONAL DEFINITIONS

In addition to the Common Policy Definitions, the following definitions apply to the Commercial Liability Coverage.

1. "Advertisement" means a public notice or announcement, including but not limited to one found in electronic communication or on the Internet, offering "your" goods, products, or services:

   a. for sale, rent, lease, or other purpose to potential buyers, clients, customers, or patrons; or

   b. for promotion to and consideration by potential supporters.

   With respect to "advertisements" that appear on websites, only that part of a website that offers "your" goods, products, or services:

   a. for sale, rent, lease, or other purpose to potential buyers, clients, customers, or patrons; or

   b. for promotion to and consideration by potential supporters;

   is considered an "advertisement".

2. "Auto" means:

   a. a land motor vehicle, a trailer, or a semi-trailer which is designed for travel on public roads, including attached machinery and equipment; or

   b. any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily harm, sickness, or disease sustained by a person. "Bodily injury" includes death that results at any time from bodily harm, sickness, or disease.

   However, "bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from a physical injury.

Copyright, American Association of Insurance Services, Inc., 2012

4. "Coverage territory" means:

   a. the "basic territory";

   b. international waters or airspace, but only with respect to "bodily injury", "property damage", or "personal and advertising injury" that occurs in the course of transit between any places included in the "basic territory"; and

   c. other parts of the world, but only with respect to "bodily injury", "property damage", or "personal and advertising injury" that arises out of:

      1) products "you" have made or sold in the "basic territory";
      2) the activities of a person who normally resides in the "basic territory", but is away for a short time on "your" business; or
      3) "personal and advertising injury" arising out of offenses that occur through electronic communication or the Internet;

      provided that the "insured's" liability to pay "damages" has been determined in a "suit" on the merits in the "basic territory", or in a settlement that "we" have agreed to.

5. "Covered contract":

   a. means:

      1) a lease of premises;
      2) an easement or license agreement,

         (however, this does not include an agreement in connection with any construction or demolition operation within 50 feet of a railroad);

      3) a responsibility to indemnify a municipality if required by an ordinance,

         (however, this does not apply in connection with work done for the municipality);

      4) a sidetrack agreement;
      5) an elevator maintenance agreement; or
      6) any part of any other contract or agreement relating to the conduct of "your" business (including an indemnification of a municipality in connection with work done for the municipality) under which "you" assume the tort liability of another person or organization to pay "damages" because of "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   b. however, does not include that part of any contract or agreement:

      1) that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass, or crossing;
      2) that indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

         a) preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or
         b) giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

      3) under which the "insured", if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the "insured's" rendering or failing to render professional services, including those listed in b.2) above, and supervisory, inspection, or engineering services; or

Copyright, American Association of Insurance Services, Inc., 2012

4) that indemnifies any person or organization for damage by fire to premises rented or loaned to "you".

6. "Damages" means compensation in the form of money for a person or organization who claims to have suffered an injury.

7. "Designated insured" means:

   a. all individuals listed in a.1), a.2), a.3), a.4), and a.5) of the definition of "insured"; and

   b. any "employee" who is authorized to give or receive notice of an "occurrence" or a claim.

8. "Employee" includes a "leased worker".

   However, "employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by "your" charter, constitution, by-laws or any other similar governing document.

10. "Impaired property" means tangible property (other than "products" or "your work"):

    a. that is less useful or no longer useable because:

       1) it includes "products" or "your work" that is, or is believed to be, deficient or dangerous; or
       2) "you" failed to carry out the terms of a contract or agreement; and

    b. which can be restored by:

       1) the repair, replacement, adjustment, or removal of "products" or "your work"; or
       2) "your" fulfillment of the terms of the contract or agreement.

11. "Indemnitee" means a person or organization for whom an "insured" has assumed liability for "damages" due to "bodily injury" or "property damage" under a "covered contract".

12. "Insured":

    a. means:

       1) "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;
       2) "you" and all of "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or a joint venture;
       3) "you" and all of "your" members, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a limited liability company. "Your" managers are also "insureds" but only with respect to their duties as managers;
       4) "you" and all of "your" trustees, but only while acting within the scope of their duties as trustees, if "you" are shown on the "declarations" as a trust; or
       5) "you" and all of "your" "executive officers" and directors, but only while acting within the scope of their duties as "executive officers" and directors, if "you" are shown on the "declarations" as an organization other than a partnership, joint venture, or limited liability company. "Insured" also includes "your" stockholders, but only for their liability as stockholders.

    b. also includes:

       1) any person or organization, except "your" "employee" or "volunteer worker", while acting as "your" real estate manager;

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

2) if "you" die during the policy period, "your" legal representative while acting within the scope of such duties, or a person or organization who has temporary custody of "your" property with respect to liability arising out of the maintenance or use of that property until "your" legal representative is appointed. "Your" legal representative has all of "your" rights and duties under this coverage;

3) "your" "employees" for acts within the scope of their employment by "you", and "your" "employees" and "volunteer workers" while in the course of performing duties related to the conduct of "your" business.

However, this does not include "your" managers if "you" are a limited liability company or "your" "executive officers" if "you" are an organization other than a partnership, joint venture, or limited liability company.

None of these "employees" or "volunteer workers" are "insureds" for:

a) "bodily injury" or "personal and advertising injury" :

(1) to "you", "your" partners or members (if "you" are a partnership or joint venture), "your" members (if "you" are a limited liability company), or fellow "employees" while in the course of employment or while performing duties related to the conduct of "your" business, or "your" other "volunteer workers" while performing duties related to the conduct of "your" business;

(2) for which there is an obligation to fully or partially reimburse a third party for "damages" arising out of injury described in 3)a)(1) above or 3)b) below; or

(3) arising out of his or her rendering or failure to render professional health care services.

b) consequential injury to a spouse, child, parent, brother, or sister of that injured fellow "employee" or "volunteer worker" as described in 3)a)(1)above.

c) "property damage" to property owned by; occupied by; used by; rented to; loaned to; in the care, custody, or control of; or over which physical control is being applied by "you", "your" "employees", "your" "volunteer workers", or any of "your" partners or members (if "you" are a joint venture or a partnership), or any of "your" members (if "you" are a limited liability company).

However, no person or organization is an "insured" with respect to the conduct of a current or past partnership, joint venture, or limited liability company that is not named on the "declarations" as an "insured".

13. "Leased worker" means a person who "you" lease from a labor leasing firm under a contract or agreement to perform duties related to the conduct of "your" business.

However, "leased worker" does not include a "temporary worker".

14. "Loading or unloading":

a. means the handling of property:

1) starting after it is removed from the point where it has been accepted for transit by "auto", aircraft, or watercraft;

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

2) continuing while it is in or on such vehicle; and
3) ending when it has been removed from the vehicle to the point of final delivery.

b. includes the movement of property by a mechanical device, but only if the mechanical device is:

1) a hand truck; or
2) attached to the "auto", aircraft, or watercraft.

15. "Mobile equipment":

a. means land vehicles (including any attached machinery or equipment) that meet one or more of the following criteria:

1) those which are used only on premises owned by or rented to "you" (premises includes adjoining ways);
2) those which are designed primarily for use off public roads, including bulldozers, farm machinery, and forklifts;
3) those which travel on crawler treads;
4) those, whether self-propelled or not, designed or used primarily to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

a) power cranes, shovels, loaders, diggers, drills; and
b) graders, scrapers, rollers, and other road construction or repair equipment;

5) those not described in a.1), a.2), a.3), or a.4) above which are not self-propelled, but are used primarily to afford mobility to the following types of permanently attached equipment:

a) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment);
b) geophysical exploration, lighting, and well servicing equipment; and
c) cherry pickers and similar devices used to raise or lower workers; or

6) vehicles not described in a.1), a.2), a.3), or a.4) above which are primarily maintained for other than the purpose of transporting persons or cargo.

b. however, does not include self-propelled vehicles with the following types of permanently attached equipment:

1) equipment designed primarily for snow removal, street cleaning, or road maintenance other than road construction or resurfacing;
2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;
3) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); or
4) geophysical exploration, lighting, and well servicing equipment.

The vehicles described in b. above are considered "autos".

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

16. "Occurrence" means an accident and includes continuous or repeated exposure to similar conditions.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

17. "Personal and advertising injury" means injury, including "bodily injury" that is a consequence thereof, arising out of one or more of the following offenses:

    a. oral or written publication, including electronic publication, of material that:

        1) slanders or libels a person or organization;
        2) disparages a person's or an organization's goods, products, or services; or
        3) violates a person's right of privacy;

    b. false arrest, detention, or imprisonment;

    c. malicious prosecution;

    d. misappropriation of advertising ideas of another in "your" "advertisement";

    e. infringement of the copyright, slogan, or trade-dress of another in "your" "advertisement"; or

    f. wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

18. "Products/completed work hazard" --

    a. "Products hazard" means "bodily injury" or "property damage" arising out of "products" after physical possession of the products has been relinquished to others.

    The "bodily injury" or "property damage" must occur away from premises "you" own or rent unless "your" business includes selling, handling, or distributing "products" for consumption on premises owned by or rented to "you"; and

    b. "Completed work hazard" means "bodily injury" or "property damage" occurring away from premises "you" own or rent and arising out of "your work".

    However, it does not include work that has not been completed or that has not been abandoned.

    "Your work" is deemed completed at the earliest of the following times:

    1) when all work specified in "your" contract has been completed;
    2) when all the work to be done at a job site has been completed if "your" contract includes work at more than one job site; or
    3) when that part of the work at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work which requires further service, maintenance, correction, repair, or replacement because of defect or deficiency, but which is otherwise complete, will be deemed completed.

    c. Neither the "products hazard" nor the "completed work hazard" includes "bodily injury" or "property damage" arising out of:

        1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by "you" and that was created by any "insured's" "loading or unloading" of the vehicle; or
        2) the presence of tools, uninstalled equipment, or abandoned or unused materials.

19. "Products":

    a. means goods or products manufactured, sold, handled, distributed, or disposed of by "you", others trading under "your" name, or a person or organization whose business or assets "you" have acquired.

Copyright, American Association of Insurance Services, Inc., 2012

b. includes:

1) warranties or representations made at any time regarding the quality, fitness, durability, performance, or use of "products";
2) containers (other than vehicles), materials, parts, or equipment furnished in connection with such "products"; and
3) providing or failure to provide warnings or instructions.

c. does not include:

1) vending machines or other property that is rented to or placed for the use of others, but not sold; or
2) real property.

20. "Property damage" means:

a. physical injury or destruction of tangible property, including loss of use of that property. Loss of use is deemed to occur at the time of the physical injury that caused it; or

b. the loss of use of tangible property that has not been physically damaged. Loss of use is deemed to occur at the time of the "occurrence" that caused it.

With respect to the Commercial Liability Coverages, "data records" are not tangible property.

21. "Short-term rented premises" means premises which are rented to an "insured" for a period of seven successive days or fewer, and the contents of such premises.

22. "Suit" means a civil proceeding or an administrative proceeding alleging "damages" for "bodily injury", "property damage", or "personal and advertising injury" to which this policy applies. "Suit" includes any alternative dispute resolution proceeding or arbitration proceeding to which:

a. any "insured" must submit in compliance with a law or regulation; or

b. any "insured" submits with "our" consent.

23. "Temporary worker" means a person who is furnished to "you":

a. as a temporary substitute for a permanent "employee" who is on a leave of absence; or

b. to meet seasonal or short-term workloads.

24. "Volunteer worker" means a person who gives his or her time or services and who:

a. acts at "your" direction and within the scope of duties "you" determine; and

b. is not paid a fee, salary, or other compensation for his or her time or services that are donated to "you", other than reimbursement of out-of-pocket expenses.

However, "volunteer worker" does not include an "employee", a "leased worker", or a "temporary worker".

25. "Your work":

a. means:

1) work or operations performed by "you" or on "your" behalf; and
2) materials, parts, and equipment supplied for such work or operations; and

b. includes:

1) warranties or representations made at any time regarding quality, fitness, durability, performance, or use of "your work"; and
2) providing or failing to provide warnings or instructions.

Copyright, American Association of Insurance Services, Inc., 2012

## COMMERCIAL LIABILITY COVERAGES

### COVERAGE L -- BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. "We" pay those sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" to which this insurance applies. "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under the Commercial Liability Coverage.

      However, "we" have no duty to defend the "insured" against a "suit" seeking "damages" arising out of "bodily injury" or "property damage" to which this policy does not apply. "We" may investigate "occurrences" and settle claims or "suits" that "we" decide are appropriate.

   b. The amount "we" will pay for "damages" is limited as described under How Much We Pay.

   c. "We" do not have to provide a defense after "we" have paid an amount equal to the "limit" as the result of:

      1) a judgment;
      2) a written settlement agreed to by "us"; or
      3) medical expenses.

      "We" have no other liability or obligation to pay sums or to provide assistance or support unless specifically provided for under Supplemental Payments.

   d. If "we" defend the "insured" against a "suit" or "we" pay for an "insured's" defense, and "we" later determine that the "suit" is not covered, "we" have the right to be reimbursed for the defense costs "we" have incurred.

      However, "our" right to be reimbursed for defense costs applies only to such costs that "we" incur after "we" give "you" written notice that the "suit" may not be covered and that "we" are reserving "our" rights to end the defense coverage and to seek reimbursement for defense costs.

   e. This insurance applies only to "bodily injury" or "property damage":

      1) caused by an "occurrence" which takes place in the "coverage territory";
      2) which occurs during the policy period; and
      3) which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" that was known by a "designated insured" prior to the inception date of the policy period. If a "designated insured" knew, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period, that "bodily injury" or "property damage" had occurred, any continuation of, resumption of, or change in such "bodily injury" or "property damage" will be deemed to have been known by the "designated insured" prior to the inception date of the policy period.

   f. "Bodily injury" or "property damage" that occurs during the policy period and which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of, resumption of, or change in such "bodily injury" or "property damage" after the end of this policy period.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

g. "Damages" due to "bodily injury" include "damages" claimed by any person or organization for care, loss of services, and death that result at any time from such "bodily injury".

2. Exclusions

a. "We" do not pay for "bodily injury" or "property damage" arising out of:

1) the rendering or the failure to render a professional service; or
2) the "insured's" negligence or other wrongdoing in the supervision, hiring, or training of another person, if the "bodily injury" or "property damage" arose out of the rendering or the failure to render a professional service.

b. "We" do not pay for "bodily injury":

1) to a person arising out of any:

a) refusal to employ that person;
b) termination of the employment of that person; or
c) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, malicious prosecution, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions directed towards that person; or

2) to a spouse, child, parent, brother, or sister of that person as a consequence of "bodily injury" to that person as a result of employment-related practices described in 1)a), 1)b), or 1)c) above.

This exclusion applies whether the injury as a result of 1)a), 1)b), or 1)c) above occurs before, during, or after employment of that person.

This exclusion applies where the "insured" is liable either as an employer or in any other capacity or there is an obligation to fully or partially reimburse a third party for "damages" arising out of 1)a), 1)b), 1)c), or 2) above.

c. "We" do not pay for "bodily injury" or "property damage" caused directly or indirectly by the following:

1) war, including undeclared or civil war;
2) warlike action by a military force, including action that is hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

d. "We" do not pay for "bodily injury" or "property damage":

1) which is expected by, directed by, or intended by the "insured"; or
2) that is the result of intentional and malicious acts of the "insured".

However, this exclusion does not apply to "bodily injury" arising out of the use of reasonable force to protect people or property.

e. "We" do not pay for "bodily injury" or "property damage" liability which is assumed by the "insured" under a contract or an agreement.

However, this exclusion does not apply to:

1) liability for "damages" that an "insured" would have had in the absence of the contract or agreement; or

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

2) liability for "damages" assumed in a "covered contract", but only if such "bodily injury" or "property damage" occurs after the contract or agreement has been executed.

Only with respect to liability assumed in a "covered contract", "damages" due to "bodily injury" or "property damage" include reasonable attorney fees and necessary litigation costs incurred by or for an "indemnitee", if:

a) liability to that "indemnitee" for, or for the cost of, that "indemnitee's" defense has also been assumed under the same "covered contract"; and
b) such attorney fees and litigation costs are for the defense of that "indemnitee" against a civil or administrative proceeding, alternative dispute resolution, or arbitration proceeding alleging "damages" to which this insurance applies.

However, "damages" due to "bodily injury" or "property damage" do not include reasonable attorney fees and necessary litigation costs incurred by or for an "indemnitee" when all the requirements set forth under item 3.b. of Supplemental Payments are met.

f. "We" do not pay for "bodily injury" or "property damage" arising out of the use of "mobile equipment" in, or in the practice or preparation for, racing, speed, pulling or pushing, demolition, or stunt activities or contests.

g. "We" do not pay for "bodily injury" or "property damage" arising out of transporting of "mobile equipment" by an "auto" owned by, operated by, rented to, or loaned to any "insured".

h. "We" do not pay for "bodily injury" or "property damage" arising out of:

1) the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, or "loading or unloading" of an "auto", aircraft, or watercraft, owned by, operated by, rented to, or loaned to any "insured"; or
2) the negligent supervision, hiring, or training of another person by an "insured" if the "bodily injury" or "property damage" arose out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, or "loading or unloading" of an "auto", aircraft, or watercraft, owned by, operated by, rented to, or loaned to any "insured".

However, this exclusion does not apply to:

1) "bodily injury" or "property damage" arising out of:

a) the operation of equipment described in b.2), b.3), and b.4) of the definition of "mobile equipment"; or
b) the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle law in the state where it is licensed or principally garaged;

2) parking an "auto" on premises owned by, rented to, or controlled by "you" or on the ways immediately adjoining such premises if the "auto" is not owned by, rented to, or loaned to "you" or the "insured";
3) liability assumed under a "covered contract" for the ownership, maintenance, or use of an aircraft or a watercraft;
4) watercraft, if it is on shore on premises owned by, rented to, or controlled by "you"; or

Copyright, American Association of Insurance Services, Inc., 2012

5) watercraft, if it is not owned by "you" and is:

   a) less than 51 feet in length; and
   b) not being used to carry persons or property for a charge.

i. "We" do not pay for "bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

   1) causing or contributing to the intoxication of a person;
   2) the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age; or
   3) a law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

   This exclusion applies only if "you" are in the business of manufacturing, distributing, furnishing, selling, or serving alcoholic beverages.

j. "We" do not pay for:

   1) "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, or emission of "pollutants":

      a) at or from any premises, site, or location which is, or was at any time, owned by, occupied by, rented to, or loaned to any "insured".

         However, this exclusion does not apply to:

         (1) "bodily injury" or "property damage" arising from the heat, smoke, or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be located;
         (2) "bodily injury" arising from the smoke, fumes, soot, or vapor from equipment used to heat, cool, or dehumidify a building, or used to heat water for the building's occupants, if the "bodily injury" was suffered in that building; or
         (3) "bodily injury" or "property damage" for which "you" may be held liable as the contractor at the premises, site, or location and the owner or lessee of that premises, site, or location has been added to "your" policy as an additional insured for "your" ongoing operations conducted for that additional insured at that premises, site, or location. This exception to the exclusion applies only if the premises, site, or location is not currently or was not previously owned by, occupied by, rented to, or loaned to any "insured" other than the additional insured;

      b) at or from any premises, site, or location which is or was at any time used by or for any "insured" or others, for the handling, storage, disposal, processing, or treatment of waste;
      c) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or by or for any person or organization for whom "you" may be legally responsible; or

Copyright, American Association of Insurance Services, Inc., 2012

d) at or from any premises, site, or location where any "insured" or any contractor or subcontractor working directly or indirectly on any "insured's" behalf is performing operations if the "pollutants" are brought on or to the premises, site, or location in connection with such work by such "insured", contractor, or subcontractor.

However, this exclusion does not apply to:

(1) "bodily injury" or "property damage" arising from the heat, smoke, or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be located;

(2) "bodily injury" or "property damage" arising out of the escape of any fuels, lubricants, or other fluids needed for the normal operation and function of "mobile equipment" or its parts, if such fuels, lubricants, or other fluids escape from a vehicle part designed to contain, store, or receive them.

However, this exception does not apply if the "bodily injury" or "property damage" arises out of fuels, lubricants, or other fluids that are intentionally discharged, dispersed, or released, or if such fuels, lubricants, or other fluids are brought on or to the premises, site, or location to be discharged, dispersed, or released as part of the operations being performed by such "insured", contractor, or subcontractor; or

(3) "bodily injury" or "property damage" caused by the release of gases, vapors, or fumes from materials brought into a building because of the operations being performed by "you" or on "your" behalf by a contractor or subcontractor, if the "bodily injury" or "property damage" was suffered within that building; or

e) at or from any premises, site, or location where any "insured" is working or where any contractor or subcontractor is working directly or indirectly on any "insured's" behalf, if the work is to test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants".

2) any loss, cost, or expense arising out of any:

a) request, demand, order, statute, or regulation requiring that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or

b) claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

Copyright, American Association of Insurance Services, Inc., 2012

However, this exclusion does not apply to liability for "property damage" that the "insured" would have had in the absence of such request, demand, order, statute, or regulation, or claim or "suit" by or on behalf of any governmental authority.

k. "We" do not pay for "bodily injury":

1) to an "employee" of the "insured" if it arises out of and occurs in the course of employment by the "insured" or while performing duties related to the conduct of the "insured's" business; or
2) to a spouse, child, parent, brother, or sister as a consequence of "bodily injury" to such injured "employee".

This exclusion applies where the "insured" is liable either as an employer or in any other capacity or there is an obligation to fully or partially reimburse a third party for "damages" arising out of k.1) or k.2) above.

However, this exclusion does not apply to liability assumed by the "insured" under a "covered contract".

l. "We" do not pay for "bodily injury" if benefits are provided or are required to be provided by the "insured" under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

m. "We" do not pay for "property damage" to property owned by, occupied by, or rented to "you", including any cost or expense incurred by "you" or another person or organization to repair, retrofit, replace, or maintain such property for any reason, including for the purpose of avoiding injury to a person or damage to another's property.

However, this exclusion does not apply to sums the "insured" is legally obligated to pay as "damages" due to "property damage" to "short-term rented premises". A separate "limit" applies to coverage for "property damage" to "short-term rented premises".

n. "We" do not pay for "property damage" to premises "you" sell, give away, or abandon, if the "property damage" arises out of any part of those premises.

However, this exclusion does not apply if the premises are "your work" and were not occupied, rented, or held for rental by "you".

o. "We" do not pay for "property damage" to property loaned to "you".

However, this exclusion does not apply:

1) with respect to liability assumed under a sidetrack agreement; or
2) to sums the "insured" is legally obligated to pay as "damages" due to "property damage" to "short-term rented premises". A separate "limit" applies to coverage for "property damage" to "short-term rented premises".

p. "We" do not pay for "property damage" to either business or non-business personal property in the care, custody, or control of the "insured".

However, this exclusion does not apply:

1) with respect to liability assumed under a sidetrack agreement; or
2) to sums the "insured" is legally obligated to pay as "damages" due to "property damage" to "short-term rented premises". A separate "limit" applies to coverage for "property damage" to "short-term rented premises".

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

q. "We" do not pay for "property damage" to that specific part of real property on which work is being performed by:

1) "you"; or
2) a contractor or subcontractor working directly or indirectly on "your" behalf;

if the "property damage" arises out of such work.

However, this exclusion does not apply with respect to liability assumed under a sidetrack agreement.

r. "We" do not pay for "property damage" to that specific part of any property that must be restored, repaired, or replaced because "your work" that was performed on the property was faulty.

However, this exclusion does not apply to:

1) "property damage" covered under the "products/completed work hazard"; or
2) liability assumed under a sidetrack agreement.

s. "We" do not pay for "property damage" to "products" if the damage arises out of the "products" or their parts.

t. "We" do not pay for "property damage" to "your work" if the "property damage" arises out of "your work" or any part of it and is included in the "products/completed work hazard".

However, this exclusion does not apply if damage to the work or the part of the work out of which the damage arises was performed by a subcontractor on "your" behalf.

u. "We" do not pay for "property damage" to property that has not been physically injured or destroyed, or to "impaired property", arising out of:

1) a delay or failure to perform a contract or agreement as specified in its terms by "you" or one acting on "your" behalf; or
2) a defect, deficiency, inadequacy, or unsafe condition in "your work" or "products".

However, this exclusion does not apply to the loss of use of other property resulting from sudden and accidental physical injury to or destruction of "your work" or "products" after having been put to its intended use.

v. "We" do not pay for any loss, cost, or expense incurred by "you" or any other person or organization arising out of the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal of "your work", "products", or "impaired property". This applies if "your work", "products", or "impaired property" is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, or unsafe condition in such work, "products", or "impaired property".

w. "We" do not pay for "bodily injury" arising out of "personal and advertising injury".

x. "We" do not pay for any loss, cost, expense, or "damages" arising out of damage to, corruption of, loss of use or function of, or inability to access, change, or manipulate "data records".

y. "We" do not pay for "bodily injury" or "property damage" arising directly or indirectly out of violations of or alleged violations of:

1) the Telephone Consumer Protection Act of 1991 (TCPA), including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;

Copyright, American Association of Insurance Services, Inc., 2012

2) the CAN-SPAM Act of 2003, including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
3) the Fair Credit Reporting Act (FCRA), including any amendments thereto, such as the Fair and Accurate Credit Transaction Act (FACTA), and any similar federal, state, or local laws, ordinances, statutes, or regulations; or
4) any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.

**COVERAGE M -- MEDICAL PAYMENTS**

1. Insuring Agreement

a. "We" pay the medical expenses described below for "bodily injury" caused by an accident:

1) on premises "you" own or rent;
2) on ways adjacent or next to premises "you" own or rent; or
3) because of "your" operations.

b. "We" pay these medical expenses regardless of fault but only if:

1) they arise out of an accident that occurred in the "coverage territory" and during the policy period;
2) they are incurred and reported to "us" within one year of the accident; and
3) the injured person submits to medical exams by doctors chosen by "us" when and as often as "we" may reasonably require.

c. The amount "we" will pay for medical expenses is limited as described under How Much We Pay.

d. Medical expenses mean the reasonable and necessary expenses for:

1) medical, surgical, x-ray, and dental services, including prosthetic devices and eye glasses;
2) ambulance, hospital, professional nursing, and funeral services; and
3) first aid provided at the time of an accident.

2. Exclusions

a. "We" do not pay for medical expenses for "bodily injury" excluded under Coverage L.

b. "We" do not pay for medical expenses for "bodily injury" to an "insured", except "volunteer workers".

c. "We" do not pay for medical expenses for "bodily injury" to a person hired by or on behalf of any "insured" to do work for:

1) an "insured"; or
2) a tenant of an "insured".

d. "We" do not pay for medical expenses for "bodily injury" to a person injured on that part of the premises owned by or rented to "you" that the person normally occupies.

e. "We" do not pay for medical expenses for "bodily injury" to any person participating in, instructing, or practicing for any athletic or sports activity that "you" sponsor.

f. "We" do not pay for medical expenses for "bodily injury" included in the "products/completed work hazard".

g. "We" do not pay for medical expenses for "bodily injury" to "your" members if "you" are a club.

h. "We" do not pay for medical expenses for "bodily injury" to a guest of a hotel, motel, or tourist court owned or operated by "you" or on "your" behalf.

Copyright, American Association of Insurance Services, Inc., 2012

i. "We" do not pay for medical expenses for "bodily injury" to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease, or like law.

j. "We" do not pay for medical expenses for "bodily injury" to a:

1) student or camper enrolled in a program of any facility owned or operated by "you" or on "your" behalf; or
2) patient or inmate being treated or detained in a facility owned or operated by "you" or on "your" behalf.

**COVERAGE O -- FIRE LEGAL LIABILITY**

1. Insuring Agreement

a. "We" pay those sums which an "insured" becomes legally obligated to pay as "damages" due to "property damage" to buildings, or parts thereof, which "you" rent from another, or which are loaned to "you", if the "property damage" is caused by fire or explosion. Buildings include permanently attached fixtures. "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under the Commercial Liability Coverage.

However, "we" have no duty to defend the "insured" against a "suit" seeking "damages" arising out of "property damage" to which this policy does not apply. "We" may investigate "occurrences" and settle claims or "suits" that "we" decide are appropriate.

b. The amount "we" will pay for "damages" is limited as described under How Much We Pay.

c. "We" do not have to provide a defense after "we" have paid an amount equal to the "limit" as the result of:

1) a judgment;
2) a written settlement agreed to by "us"; or
3) medical expenses.

"We" have no other liability or obligation to pay sums or to perform acts or services unless specifically provided for under Supplemental Payments.

d. If "we" defend the "insured" against a "suit" or "we" pay for an "insured's" defense, and "we" later determine that the "suit" is not covered, "we" have the right to be reimbursed for the defense costs "we" have incurred.

However, "our" right to be reimbursed for defense costs applies only to such costs that "we" incur after "we" give "you" written notice that the "suit" may not be covered and that "we" are reserving "our" rights to end the defense coverage and to seek reimbursement for defense costs.

e. This insurance applies only to "property damage":

1) caused by an "occurrence" which takes place in the "coverage territory"; and
2) which occurs during the policy period.

2. Exclusions

a. "We" do not pay for "property damage" liability which is assumed by the "insured" under a contract or an agreement to indemnify any person or organization for damage to the premises by fire.

b. "We" do not pay for "property damage" arising out of:

1) the rendering or failure to render a professional service; or

Copyright, American Association of Insurance Services, Inc., 2012

2) the "insured's" negligence or other wrongdoing in the supervision, hiring, or training of another person, if the "property damage" arose out of the rendering or the failure to render a professional service.

c. "We" do not pay for "property damage":

1) which is expected by, directed by, or intended by the "insured"; or
2) that is the result of intentional and malicious acts of the "insured".

**COVERAGE P -- PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement

a. "We" pay those sums which an "insured" becomes legally obligated to pay as "damages" due to "personal and advertising injury" to which this insurance applies. "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under the Commercial Liability Coverage.

However, "we" have no duty to defend the "insured" against a "suit" seeking "damages" arising out of "personal and advertising injury" to which this policy does not apply. "We" may investigate offenses and settle claims or "suits" that "we" decide are appropriate.

b. The amount "we" will pay for "damages" is limited as described under How Much We Pay.

c. "We" do not have to provide a defense after "we" have paid an amount equal to the "limit" as the result of:

1) a judgment;
2) a written settlement agreed to by "us"; or
3) medical expenses.

"We" have no other liability or obligation to pay sums or to performs acts or services unless specifically provided for under Supplemental Payments.

d. If "we" defend the "insured" against a "suit" or "we" pay for an "insured's" defense, and "we" later determine that the "suit" is not covered, "we" have the right to be reimbursed for the defense costs "we" have incurred.

However, "our" right to be reimbursed for defense costs applies only to such costs that "we" incur after "we" give "you" written notice that the "suit" may not be covered and that "we" are reserving "our" rights to end the defense coverage and to seek reimbursement for defense costs.

e. "We" cover "personal and advertising injury" arising out of an offense committed in the course of "your" business, if the offense was committed:

1) within the "coverage territory"; and
2) during the policy period.

2. Exclusions

a. "We" do not pay for "personal and advertising injury" arising out of:

1) the rendering or the failure to render a professional service; or
2) the "insured's" negligence or other wrongdoing in the supervision, hiring, or training of another person, if the "personal and advertising injury" arose out of the rendering or the failure to render a professional service.

b. "We" do not pay for "personal and advertising injury":

1) to a person arising out of any:

a) refusal to employ that person;
b) termination of the employment of that person;

Copyright, American Association of Insurance Services, Inc., 2012

c) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, malicious prosecution, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions directed towards that person; or

2) to a spouse, child, parent, brother, or sister of that person as a consequence of "personal and advertising injury" to that person as a result of employment-related practices described in 1)a), 1)b), or 1)c) above.

This exclusion applies whether the injury as a result of 1)a), 1)b), or 1)c) above occurs before, during, or after employment of that person.

This exclusion applies where the "insured" is liable either as an employer or in any other capacity or there is an obligation to fully or partially reimburse a third party for "damages" arising out of 1)a), 1)b), 1)c), or 2) above.

c. "We" do not pay for "personal and advertising injury" caused directly or indirectly by the following:

1) war, including undeclared or civil war;
2) warlike action by a military force, including action that is hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

d. "We" do not pay for "personal and advertising injury" arising out of an act committed by or directed by the "insured" who knew that "personal and advertising injury" would occur as a result of the act.

e. "We" do not pay for "personal and advertising injury" arising out of a criminal act committed by or directed by the "insured".

f. "We" do not pay for "personal and advertising injury" liability which is assumed by the "insured" under a contract or an agreement.

However, this exclusion does not apply to liability that an "insured" would have had in the absence of the contract or agreement.

g. "We" do not pay for "personal and advertising injury" arising out of:

1) oral or written publication of material done by or at the direction of the "insured" who knew that it was false; or
2) oral or written publication of material that took place prior to the policy period.

h. "We" do not pay for "personal and advertising injury" arising out of breach of contract, other than using the advertising ideas of another in "your" "advertisement" under an implied contract.

i. "We" do not pay for "personal and advertising injury" arising out of the failure of goods, products, or services to conform with quality or performance as stated in "your" "advertisement".

j. "We" do not pay for "personal and advertising injury" arising from an offense committed by an "insured" whose business is:

1) advertising, broadcasting, publishing, or telecasting;
2) designing, developing, or coordinating the content of web sites for others; or
3) providing Internet access, search, service, or content capabilities.

Copyright, American Association of Insurance Services, Inc., 2012

However, this exclusion does not apply to false arrest, detention, imprisonment; malicious prosecution; and wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies and which is committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

The placement of advertising, including frames, borders, or links, on the Internet is not in and of itself considered being in the business of advertising, broadcasting, publishing, or telecasting.

k. "We" do not pay for "personal and advertising injury" arising out of wrong descriptions of the price of an "insured's" goods, products, or services as stated in "your" "advertisement".

l. "We" do not pay for:

1) "personal and advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, or emission of "pollutants" at any time; or
2) any loss, cost, or expense arising out of any:

a) request, demand, order, statute, or regulation that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or
b) claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

m. "We" do not pay for "personal and advertising injury" arising out of any violation of intellectual property rights, including infringement of trademark, trade-secret, or patent rights or copyright. With respect to this exclusion, intellectual property rights do not include using the advertising ideas of others in "your" "advertisement".

However, this exclusion does not apply to a violation or infringement of copyright, slogan, or trade-dress rights that occur in your "advertisement".

n. "We" do not pay for "personal and advertising injury" arising out of electronic chat rooms, gripe sites, social networking sites, blogs, bulletin boards, or other forums which the "insured" hosts, owns, or has the control or authority to manage or update.

o. "We" do not pay for "personal and advertising injury" arising out of using, without permission, the name or product of others on "your" web site, in "your" e-mail address, domain name, or metatags for the purpose of misleading the potential customers of another.

p. "We" do not pay for "personal and advertising injury" arising directly or indirectly out of violations of or alleged violations of:

1) the Telephone Consumer Protection Act of 1991 (TCPA), including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
2) the CAN-SPAM Act of 2003, including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
3) the Fair Credit Reporting Act (FCRA), including any amendments thereto, such as the Fair and Accurate Credit Transaction Act (FACTA), and any similar federal, state, or local laws, ordinances, statutes, or regulations; or

Copyright, American Association of Insurance Services, Inc., 2012

4) any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.

## SUPPLEMENTAL PAYMENTS

1. If "we" investigate or settle a claim or defend a "suit" against an "insured", "we" will pay:

   a. the court costs taxed against the "insured" in the "suit". These costs do not include attorneys' fees or attorneys' expenses;

   b. the expenses incurred by "us";

   c. the actual loss of earnings by the "insured" for the time spent away from work at "our" request. "We" pay up to $250 per day;

   d. the necessary and reasonable expenses incurred by the "insured" at "our" request to assist "us" in the defense or investigation of the claim or "suit";

   e. pre-judgment interest awarded against the "insured" on that part of the judgment "we" pay. If "we" offer to pay the "limit", "we" will not pay any pre-judgment interest based on that period of time after the offer;

   f. the interest which accrues on the entire amount of a judgment beginning with entry of a judgment and ending when "we" tender, deposit in court, or pay the portion of the judgment that is up to, but does not exceed, "our" "limit";

   g. the cost of appeal bonds or bonds for the release of attachments up to "our" "limit".

      However, "we" are not required to apply for or furnish such bonds; and

   h. the cost, up to $500, for bail bonds required of an "insured" because of an accident or traffic violation arising out of the use of a vehicle for which "bodily injury" coverage is provided under Coverage L.

      However, "we" are not required to apply for or furnish such bonds.

2. Payments under this coverage are in addition to the "limits" for the Commercial Liability Coverages.

3. If "we" defend an "insured" against a "suit" and an "indemnitee" of the "insured" is also named as a party to the "suit":

   a. "we" will:

      1) defend that "indemnitee";
      2) pay attorneys' fees incurred by "us" in the defense of that "indemnitee";
      3) pay necessary litigation expenses incurred by "us"; and
      4) pay necessary litigation expenses incurred by the "indemnitee" at "our" request.

   b. all of the following conditions must be met:

      1) the "suit" seeks "damages" against the "indemnitee" for which the "insured" has assumed the liability of the "indemnitee" in a "covered contract";
      2) this insurance applies to such liability assumed by the "insured";
      3) the obligation to defend, or the cost of the defense of, that "indemnitee", has also been assumed by the "insured" in the same "covered contract";
      4) no conflict appears to exist between the interests of the "insured" and the interests of the "indemnitee" in the allegations in the "suit" and in the information "we" know about the "occurrence";

Copyright, American Association of Insurance Services, Inc., 2012

5) the "indemnitee" and the "insured" ask "us" to conduct and control the defense of that "indemnitee" against such "suit" and agree that "we" can assign the same counsel to defend the "insured" and the "indemnitee"; and
6) the "indemnitee" agrees to:

   a) cooperate with "us" in the investigation, settlement, or defense of the "suit";
   b) immediately send "us" copies of any demands, notices, summonses, or legal papers received in connection with the "suit";
   c) notify any other insurer whose coverage is available to the "indemnitee";
   d) cooperate with "us" with respect to coordinating other applicable insurance available to the "indemnitee";
   e) provide "us" with written authorization to obtain records regarding the "suit";
   f) provide "us" other information related to the "suit"; and
   g) provide "us" with written authorization to conduct and control the defense of the "indemnitee" in such "suit".

If the above conditions are met, such payments will not be deemed to be "damages" for "bodily injury" or "property damage" and will not reduce the "limits", regardless of the provisions of exclusion 2.e.2) of Coverage **L**.

"Our" obligation to provide a defense for an "insured's" "indemnitee" and to pay for the "indemnitee's" defense and litigation costs as Supplemental Payments ceases when "we" have paid an amount equal to the applicable "limit" as the result of a judgment or settlement or when a requirement set forth under 3.b.1), 2), 3), 4), 5), and 6) above is no longer met.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** --

   a. In the case of an "occurrence" or offense, or if an "insured" becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverages, "you" must see to it that "we" or "our" agent receive notice as soon as practicable. Notice to "our" agent is notice to "us".

   b. The notice to "us" must state:

      1) the "insured's" name;
      2) the policy number;
      3) the time, the place, and the circumstances of the "occurrence" or offense, or the situation that indicates that there might be a claim; and
      4) the names and addresses of all known and potential claimants and witnesses.

2. **Cooperation** -- All "insureds" involved with an "occurrence" or an offense must cooperate with "us" in investigating or settling a claim or defending a "suit".

3. **Volunteer Payments** -- Any payment or expense made or assumed by an "insured" without "our" written consent will be paid or assumed by the "insured".

   However, this does not apply to first aid to others at the time of "bodily injury".

4. **Other Duties** --

   If a claim is made or a "suit" is brought against any "insured", "you" and any other "insured" involved in the claim or "suit" must:

   a. promptly send to "us" copies of all legal papers, demands, and notices received in connection with such claim or "suit";

Copyright, American Association of Insurance Services, Inc., 2012

b. at "our" request, provide written authorization to obtain records and other information permitted to be obtained by applicable law; and

c. at "our" request, cooperate and assist "us" in:

1) settling the claim;
2) investigating claims and conducting "suits" or administrative hearings or proceedings. This includes attending trials, hearings, and proceedings;
3) enforcing rights against all parties who may be liable to any "insured" for injury or damage that may be covered by this insurance;
4) securing and giving evidence; and
5) obtaining the attendance of all witnesses.

## HOW MUCH WE PAY

1. The "limits", shown on the "declarations" and subject to the following conditions, are the most "we" pay regardless of the number of:

   a. "insureds" under the Commercial Liability Coverages;

   b. persons or organizations who sustain injury or damage; or

   c. claims made or "suits" brought.

   However, the payment of a claim under Coverage M does not mean that "we" admit "we" are liable under other coverages.

2. The General Aggregate Limit is the most "we" will pay for the sum of:

   a. all "damages" under Coverage L, except "damages" due to "bodily injury" or "property damage" included in the "products/completed work hazard";

   b. all medical expenses under Coverage M; and

   c. all "damages" under Coverage P.

3. The Products/Completed Work Hazard Aggregate Limit is the most "we" will pay for "damages" due to "bodily injury" or "property damage" included in the "products/completed work hazard".

4. The Each Occurrence Limit, subject to the General Aggregate Limit and the Products/Completed Work Hazard Aggregate Limit, is the most "we" will pay for the total of:

   a. "damages" under Coverages L and P; and

   b. medical expenses under Coverage M;

   due to all "bodily injury" and "property damage" arising out of a single "occurrence" or due to all "personal and advertising injury" sustained by one person or organization.

5. Subject to the Each Occurrence Limit, the most "we" pay for "property damage" to "short-term rented premises" is $50,000 for each "occurrence" unless otherwise shown on the "declarations".

   However, the "limit" that applies to "property damage" to "short-term rented premises" does not apply to "damages" covered under Coverage O.

6. Subject to the Each Occurrence Limit, the most "we" pay for "property damage" covered under Coverage O is $50,000 for each "occurrence" unless otherwise shown on the "declarations".

   However, the Coverage O "limit" is not subject to the General Aggregate Limit or the Products/Completed Work Hazard Aggregate Limit.

7. The Coverage M Limit is the most that "we" will pay under Coverage M for all medical expenses because of "bodily injury" sustained by any one person.

Copyright, American Association of Insurance Services, Inc., 2012

8. The General Aggregate Limit and the Products/Completed Work Hazard Aggregate Limit apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the "declarations". They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining "limits".

## ADDITIONAL CONDITIONS

1. **Bankruptcy** -- Bankruptcy or insolvency of an "insured" does not relieve "us" of "our" obligations under Commercial Liability Coverage.

2. **Insurance Under More Than One Policy** -- (Applies to all coverages except Coverage M -- Medical Payments.)

   a. Insurance under this Commercial Liability Coverage is primary except as provided under 2.c. below, or unless otherwise stated. The amount of "our" liability is not reduced because of other insurance which applies to the loss on other than a primary basis.

   b. If the other insurance is also primary, "we" will share in the loss as follows:

      1) If the other insurance provides for contribution by equal shares, "we" will pay equal amounts with other insurers until:

         a) the lowest applicable "limit" under any one policy is reached; or
         b) the full amount of the loss is paid.

      If part of the loss remains unpaid, "we" will pay an equal share with the other insurers until the full amount of the loss is paid, or until "we" have paid "our" "limit" in full.

      2) If the other insurance does not provide for contribution by equal shares, "we" will pay, up to "our" "limit", no more than that proportion of the loss to which the applicable "limit" under this policy for such loss bears to the total applicable "limit" for all insurance against the loss.

   c. Insurance under this Commercial Liability Coverage is excess over any other insurance:

      1) if the other insurance, whether primary, excess, contingent, or on any other basis, provides:

         a) fire, extended coverage, builders' risk, installation risk, or similar coverage for "your work";
         b) fire insurance for "property damage" caused by fire or explosion to buildings, or parts thereof, which "you" rent from another or which are loaned to "you"; or
         c) insurance "you" purchase for "your" liability for "property damage" to "short-term rented premises";

      2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, "autos", or watercraft which may be covered by this Commercial Liability Coverage; or
      3) if the other insurance is primary insurance and is available to "you" to cover liability arising out of premises or operations, or products and completed operations, for which "you" have been added as an additional insured by endorsement to the policy.

Copyright, American Association of Insurance Services, Inc., 2012

d. When this insurance is excess over any other insurance:

1) "we" will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, "we" will do so.

However, "we" will be entitled to the "insured's" rights against all those other insurers.

2) "we" will pay "our" share of the amount of loss, if any, that exceeds the sum of:

a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and
b) the total of all deductibles and self-insured amounts required by such other insurance.

e. "We" will share the remaining loss with any other insurance that is not described in 2.c. above and was not bought specifically to apply in excess of the "limits" shown on the "declarations" of this Commercial Liability Coverage.

3. **Knowledge Of Bodily Injury Or Property Damage** -- Knowledge of "bodily injury" or "property damage" will be deemed to have occurred at the earliest of the following times:

a. when a "suit", claim, or demand for "damages" alleging "bodily injury" or "property damage" is received by any "designated insured";

b. when any "designated insured" reports the "bodily injury" or "property damage" to "us" or any other insurer; or

c. when any "designated insured" becomes aware of anything that indicates that "bodily injury" or "property damage" may have occurred or is occurring.

4. **Premium** -- If the premium is shown on the "declarations" as a deposit premium, "we" will compute the final earned premium at the end of each audit period shown on the "declarations". If it is more than the deposit premium paid by "you", "we" will bill "you" for the difference. If the final earned premium is less than the deposit premium paid by "you", "we" will return the difference to "you". "You" must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to "us" at the end of the audit period or when requested by "us".

If the premium for coverage provided by this policy is based upon an audit of exposures and the final premium is determined after the expiration of the policy, any additional premium owed to "us" is due on the due date that appears on the billing notice.

5. **Separate Insureds** -- Coverage provided under the Commercial Liability Coverage applies separately to each "insured" against whom claim is made or "suit" is brought.

However, this does not affect the "limits" stated under How Much We Pay.

6. **Subrogation** -- If "we" pay under the Commercial Liability Coverage, "we" may require from an "insured" an assignment of any right of recovery. The "insured" must do nothing to impair "our" right of recovery after a loss.

This condition does not apply to Coverage M.

7. **Suit Against Us** -- No lawsuit can be brought against "us" unless:

a. all the "terms" of the Commercial Liability Coverage have been complied with; and

b. the amount of the "insured's" liability has been determined by:

1) a final judgment against an "insured" as a result of a trial; or

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

2) a written agreement by the "insured", the claimant, and "us";

however, "we" will not pay for injury or damage that is not covered by this Commercial Liability Coverage or that exceeds the applicable "limit".

No person has a right under the Commercial Liability Coverage to join "us" or implead "us" in actions that are brought to determine an "insured's" liability.

## NUCLEAR ENERGY LIABILITY EXCLUSION

1. Exclusion

a. This insurance does not apply under any liability coverage, to "bodily injury" or "property damage":

1) with respect to which an "insured" under the policy is also an "insured" under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its "limit" of liability; or
2) resulting from the "hazardous properties" of "nuclear material" and with respect to which:

a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. This insurance does not apply under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. This insurance does not apply under any liability coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

1) the "nuclear material":

a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured"; or
b) has been discharged or dispersed therefrom;

2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, stored, processed, transported, or disposed of by or on behalf of an "insured"; or
3) the "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (c.) applies only to "property damage" to such "nuclear facility" and any property thereat.

Copyright, American Association of Insurance Services, Inc., 2012

2. With respect to only the Nuclear Energy Liability Exclusion, the following definitions are added:

   a. "Hazardous Properties" -- These include radioactive, toxic, or explosive properties.

   b. "Nuclear Material" -- This means "source material", "special nuclear material", or "by-product material".

   c. "Source Material", "Special Nuclear Material", "By-product Material" -- These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

   d. "Spent Fuel" -- This means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   e. "Waste" -- This means any "waste" material:

      1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and
      2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

   f. "Nuclear Facility" -- This means:

      1) any "nuclear reactor";
      2) any equipment or device designed or used for:

         a) separating the isotopes of uranium or plutonium;
         b) processing or utilizing "spent fuel"; or
         c) handling, processing, or packaging "waste";

      3) any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-233 or any combination thereof, or more than 250 grams of uranium-235; and
      4) any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste";

      and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

   g. "Nuclear Reactor" -- This means any apparatus designed or used:

      1) to sustain nuclear fission in a self-supporting chain reaction; or
      2) to contain a critical mass of fissionable material.

   h. "Property Damage" -- This includes all forms of radioactive contamination of property.



Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

## Removal of Insurance to Value Provision

*This endorsement modifies insurance provided under the following:*
***Businessowners Coverage Form***

Paragraph 1.b. in the **VALUATION OF PROPERTY LOSSES** section on page 30 of 65 is hereby deleted.

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# POLICY AMENDATORY ENDORSEMENT

The policy is amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

## PROPERTY COVERAGES

### ADDITIONAL DEFINITIONS

1. Definition 3. is deleted and replaced by the following:

   3. "Dependent locations" mean locations within the "basic territory" operated by others that "your" business relies upon as:

      a. contributing locations. Contributing locations deliver materials or services to "your" business. However, contributing locations do not include water suppliers, communication suppliers, power suppliers, or wastewater removal services;

      b. recipient locations. Recipient locations receive "your" products;
      c. leader locations. Leader locations attract customers to "your" business; or

      d. manufacturing locations. Manufacturing locations make products for delivery to "your" customers under contract of sale.

2. Definition 4. is deleted and replaced by the following:

   4. "Earth movement" --

      a. For the purposes of this definition, earth includes but is not limited to ground, soil, sediments, substrates, and strata.

      b. "Earth movement" means the movement of earth, including the following:

         1) earthquake, earth tremor, or earth temblor, including any aftershocks, whether manifested in shaking, ground displacement, or otherwise;
         2) soil liquefaction, whether or not caused by earthquake, earth tremor, or earth temblor;
         3) eruption, explosion, or effusion of a volcano, including shaking or ground rupture before, during, or after a volcanic eruption, explosion, or effusion;
         4) landslide, including the movement of material present in or carried or otherwise moved by landslide;
         5) mine subsidence, whether or not the man-made mine is currently in use; or
         6) any other movement of earth, including its sinking (other than "sinkhole collapse"), shifting, contracting, or rising, including, but not limited to:

            a) erosion, expansion, or shrinking;
            b) freezing or thawing;
            c) soil compaction; and
            d) movement caused by water under the surface of the ground;

         that causes cracking, settling, or shifting of covered property.

Copyright, American Association of Insurance Services, Inc., 2015

c. "Earth movement" also means the movement of earth resulting from any act, error, or omission, whether or not on the covered property. This includes, but is not limited to:

1) construction or excavation;
2) blasting or vibration from any source;
3) hydraulic fracturing, mining, drilling, geothermal energy extraction, or any other process for extracting gas, heat, minerals, oil, steam, water, or any other natural resource, substance, or material from under the surface of the ground;
4) injecting any natural resource, substance, or material, including but not limited to water and wastewater, under the surface of the ground;
5) storing any natural resource, substance, or material, including but not limited to carbon dioxide, under the surface of the ground; or
6) any combination of the activities described in items 1) through 5) above.

3. In the BP 0200 only, definition 12. is deleted and replaced by the following:

12. "Specified perils" means:

a. aircraft;

b. civil commotion;

c. explosion;

d. falling objects. However, falling objects does not include loss or damage to personal property in the open or to the interior of buildings or structures or personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object;

e. fire;

f. hail;

g. leakage from fire extinguishing equipment;

h. lightning;

i. riot;

j. "sinkhole collapse";

k. smoke;

l. sonic boom;

m. vandalism;

n. vehicles;

o. "volcanic action";

p. water damage. Water damage means:

1) the sudden or accidental discharge or leakage of water or steam as the direct result of a breaking or cracking of a part of the system or appliance containing the water or steam; or
2) the sudden or accidental discharge or leakage of water or waterborne materials as the direct result of a breaking or cracking of a water or sewer pipe that is part of a municipal sanitary sewer system that is located off the described premises and is caused only by wear and tear.

To the extent that water damage is caused by the breaking or cracking described in p.1) or p.2) above, the exclusions for:

a) surface water; and
b) water below the surface of the ground;

set forth in the Water exclusion under Perils Excluded do not apply.

Copyright, American Association of Insurance Services, Inc., 2015

Case ID: 200401698

q. weight of ice, snow, or sleet; or

r. windstorm;

all except as excluded or limited.

4. The following definition is added:

"Secondary dependent locations" mean locations within the "basic territory" that are not owned or operated by a "dependent location" and that:

a. supply services or materials to a "dependent location" that are used by the "dependent location" in supplying services or materials to "you"; or

b. receive products from a "dependent location" that receives "your" products.

An airfield, bridge, pipeline, road, tunnel, waterway, or any other similar location is not a "secondary dependent location".

Any location that supplies any of the following services is not a "secondary dependent location" with respect to such services:

1) water supply;
2) wastewater removal;
3) communication supply; or
4) power supply.

## PROPERTY COVERED

The first paragraph under Coverage B -- Business Personal Property is deleted and replaced by the following:

This means "your" business personal property in or on the buildings and structures described on the "declarations" or in the open (or in vehicles) on or within 100 feet of the described premises and for which a "limit" is shown on the "declarations".

When the premises described on the "declarations" is only a portion of a building or structure, this also means "your" business personal property that is in the open (or in vehicles) within 100 feet of such building or structure and for which a "limit" is shown on the "declarations". This includes:

## PROPERTY NOT COVERED

1. Item 5. is deleted and replaced by the following:

    5. **Data Records And Programs** -- "We" do not cover "data records", "programs and applications", or "proprietary programs".

        This does not include:

        a. pre-packaged "software" that "you" hold for sale; or

        b. "data records", "programs and applications", or "proprietary programs" that are integrated in to operate or control the building's HVAC, lighting, elevator, or security system.

2. Item 6.c. is amended to include the following:

    This does not include lawns that are part of a vegetated roof.

3. Item 9. is amended to include the following:

    This does not include trees, shrubs, or plants that are part of a vegetated roof.

Copyright, American Association of Insurance Services, Inc., 2015

## ADDITIONAL PROPERTY EXCLUDED AND LIMITATIONS

1. In the BP 0200 only, item 5. is deleted and replaced by the following:

    5. **Interior Of Building Or Structure** -- "We" do not cover loss or damage to the interior of any building or structure, or to personal property located in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not.

        However, "we" do cover loss or damage to the interior of any building or structure, and to personal property located in the building or structure:

        a. caused by or resulting from:

            1) rain;
            2) snow;
            3) sleet;
            4) ice;
            5) sand; or
            6) dust;

            that enters through a roof or wall that has been damaged by a covered peril; or

        b. if the loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

2. In the BP 0200 only, item 6. is deleted and replaced by the following:

    6. Jewelry, Watches, Jewels, Pearls, Precious Stones, Or Metals -- Unless a higher "limit" for this coverage is shown on the "declarations", "we" do not pay more than $2,500 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious or semi-precious stones; bullion, gold, silver, or other precious alloys or metals; or items consisting primarily of precious metals.

        However, this limitation does not apply to jewelry or watches worth $100 or less per item.

3. In the BP 0200 only, the following is added:

    **Lawns, Trees, Shrubs, Or Plants That Are Part Of A Vegetated Roof** -- "We" do not cover loss or damage to lawns, trees, shrubs, or plants that are part of a vegetated roof caused by or resulting from:

    a. changes in or extremes of temperature;

    b. disease;

    c. dryness or dampness of atmosphere or vegetation soil; or

    d. rain, snow, sleet, ice, frost, or hail.

## ADDITIONAL COVERAGES

1. Debris Removal is deleted and replaced by the following:

    **Debris Removal** -- "We" pay the cost to remove the debris of covered property and other debris located on the described premises if the debris is caused by a covered peril that occurs during the policy period.

    a. **Restrictions** -- This coverage does not include costs to:

        1) extract "pollutants" from land or water;
        2) remove any property that is listed under Property Not Covered;
        3) remove any property addressed in item 3. Trees, Shrubs, And Plants under Extensions Of Coverage;
        4) remove property of others that would not be considered covered property under this policy;
        5) remove mud or earth deposits from the grounds located on the described premises; or
        6) remove, restore, or replace polluted land or water.

Copyright, American Association of Insurance Services, Inc., 2015

b. **Coverage Limits** --

1) When there is direct physical loss or damage to "your" covered property, "we" do not pay more under this coverage than 25% of the amount "we" pay for the direct physical loss or damage, plus 25% of the applicable deductible. "We" do not pay more for loss or damage to property and debris removal combined than the "limit" for the damaged property.

Unless a higher "limit" for this coverage is shown on the "declarations", "we" pay an additional amount of debris removal expense up to $25,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or damage plus 25% of the deductible or when the loss or damage to property and debris removal combined exceeds the "limit" for the damaged property.

2) When there is no direct physical loss or damage to "your" covered property, the most "we" pay to remove the debris of other property is $5,000 per premises.

c. **Time Limitation** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss or damage.

2. Fire Department Service Charges is deleted and replaced by the following:

**Fire Department Service Charges** -- When the fire department is called to save or protect covered property from a covered peril, "we" pay fire department service charges for which "you" are liable under any local ordinance, or have assumed by contract or agreement prior to the loss.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage for charges incurred at each described premises per occurrence is $2,500. The number of responding fire departments or the types of services performed does not increase the "limit" above. No deductible applies.

3. Under Limited Fungus And Related Perils, item a., Restriction is deleted and replaced by the following:

**Restrictions** --

a. This additional coverage applies only if all reasonable steps were taken to protect the property at and after the time of the occurrence.

b. This additional coverage does not apply to lawns, trees, shrubs, or plants that are part of a vegetated roof.

## EXTENSIONS OF COVERAGE

1. Under extensions of Coverage A -- Buildings, item 3. Trees, Shrubs, and Plants is deleted and replaced by the following:

3. **Trees, Shrubs, And Plants** -- "We" pay for direct physical loss or damage to "your" outdoor trees, shrubs, and plants, including the cost of debris removal. This includes the cost to remove outdoor trees, shrubs, and plants belonging to others from the described premises.

**Restrictions** --

a. "We" only cover loss caused by aircraft, civil commotion, explosion, fire, lightning, or riot.

b. This coverage does not apply to trees, shrubs, and plants that are part of a vegetated roof.

Copyright, American Association of Insurance Services, Inc., 2015

Case ID: 200401698

c. If "you" are a tenant, this coverage does not include the expense of removing the debris of trees, shrubs, and plants that are owned by "your" landlord located on the described premises.

**Coverage Limits** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage is $2,500, subject to a $1,000 "limit" for any one tree, shrub, or plant.

2. Under extensions of Coverage B -- Business Personal Property, item 4., Restrictions, the following is added:

"We" do not pay for loss or damage to:

1) pre-packaged "software" that "you" hold for sale; or
2) "data records", "programs and applications", or "proprietary programs" that are integrated in to operate or control the building's HVAC, lighting, elevator, or security system.

3. Under extensions of Coverage B -- Business Personal Property, the following is added:

**Business Personal Property - Portable Storage Units** -- "We" pay for direct physical loss or damage to covered Business Personal Property stored temporarily in a portable storage unit or detached trailer located on or within 100 feet of the described premises or on or within 100 feet of the building or structure in which the described premises is located.

**Restrictions** -- "We" do not pay for loss or damage:

a. that occurs more than 90 days after the business personal property is first stored in the portable storage unit or detached trailer;

b. if the portable storage unit or detached trailer itself has been in use for more than 90 consecutive days on the described premises;

c. to business personal property stored temporarily in a portable storage unit or detached trailer caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not.

However, "we" do cover direct physical loss or damage to personal property stored temporarily in a portable storage unit or detached trailer:

1) caused by or resulting from:

a) rain;
b) snow;
c) sleet;
d) ice;
e) sand; or
f) dust;

that enters through a roof or wall that has been damaged by a covered peril; or

2) caused by or resulting from thawing of snow, sleet, or ice on the portable storage unit or detached trailer;

d. otherwise covered under this policy or endorsement to this policy; or

e. to the portable storage unit or detached trailer itself.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage per occurrence is $10,000, regardless of the number of portable storage units or detached trailers.

Copyright, American Association of Insurance Services, Inc., 2015

Case ID: 200401698

## COVERAGE C -- LOSS OF INCOME

1. Under Restrictions, item a. in the BP 0100 and item b. in the BP 0200 is deleted and replaced by the following:

   The Loss of Income coverages apply only when the loss or damage to real or personal property occurs at the described premises or in the open (or in vehicles) within 100 feet of the described premises.

   When "you" occupy only a portion of a building, "your" described premises is the portion of the building "you" rent, lease, or occupy and any area of the building or described premises that provides services or access to "your" described premises. With respect to personal property in the open (or in vehicles), "your" described premises also includes the area within 100 feet of the building.

2. Under Loss Of Income Coverage Extensions, item 4.a. is deleted and replaced by the following:

   a. the end of 60 consecutive days (unless otherwise shown on the "declarations"); or

3. Under Additional Loss Of Income Coverages, item 2. is deleted and replaced by the following:

   2. **Earnings From Dependent Locations** -- "We" pay "your" loss of Earnings and Extra Expenses due to direct physical loss or damage to real or personal property at a "dependent location" or "secondary dependent location" caused by a covered peril.

      **Restrictions** -- "We" do not pay for "your" loss of earnings and extra expenses when the only loss to property at the "dependent location" or "secondary dependent location" is loss or damage to "software". If the "dependent location" or "secondary dependent location" sustains loss or damage to "software" and other property, loss of earnings and extra expenses coverage will not continue once the other property is repaired, rebuilt, or replaced.

      "We" will reduce the amount of "your" loss, other than extra expenses, to the extent "you" can resume "your" business by using other available sources or materials or outlets for "your" products.

      If "you" do not resume "your" business, or do not resume "your" business as soon as possible, "we" will pay based on the length of time it would have taken to resume "your" business as soon as possible.

      **Coverage Period** --

      a. This additional loss of income coverage:

         1) begins 72 hours after the time of direct physical loss or damage caused by a covered peril at the "dependent location" or "secondary dependent location"; and
         2) ends on the date that the property at the "dependent location" or "secondary dependent location" should be rebuilt, repaired, or replaced using reasonable speed and materials of similar quality.

      b. The coverage period does not include any increase in time due to the enforcement of any code, ordinance, law, or decree that regulates or requires:

         1) the construction, use, repair, or demolition of any property; or
         2) that "you" or anyone else test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants" or "fungus or related perils".

Copyright, American Association of Insurance Services, Inc., 2015

Case ID: 200401698

The coverage period is not limited by the expiration date of the policy.

**Coverage Limit** -- Unless a higher "limit" for this coverage is shown on the "declarations", the most "we" pay under this coverage for any one loss is $5,000.

## PERILS COVERED

1. In the BP 0100 only, the second paragraph is deleted and replaced by the following:

   "We" cover direct physical loss or damage caused by a peril that is shown below.

2. In the BP 0200 only, the second paragraph is deleted and replaced by the following:

   "We" cover direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

3. In the BP 0100 only, the following restriction is added to item 12.:

   "We" do not pay for loss or damage caused directly or indirectly by hail to lawns, trees, shrubs, or plants that are part of a vegetated roof.

## PERILS EXCLUDED

1. The following is added to exclusion 2.:

   This exclusion applies whether or not:

   a. the "earth movement" results from manmade or natural causes;

   b. the cause of the "earth movement" originates on or under covered property; or

   c. the "earth movement" results from activities being performed at "your" request or for "your" benefit.

2. Exclusion 9.b.1) is deleted and replaced by the following:

   1) applies whether the water or the material carried or moved by water described under items a.1) through a.5) above results from manmade or natural causes; and

## ADDITIONAL EXCLUSIONS

The last paragraph of exclusion 4. in the BP 0100 and the last paragraph of exclusion 5. in the BP 0200 is deleted and replaced by the following:

However, this exclusion does not apply to acts of destruction of property by "your" "employees" or authorized representatives, or to accounts receivable and "valuable papers and records" in the custody of carriers for hire. Theft by "employees" or authorized representatives is not covered.

## OPTIONAL PROPERTY COVERAGES

Under Employee Dishonesty, item c.2), the following is added:

g) resulting from theft or any other dishonest act by an "employee", if "you" or any of "your" partners, directors, trustees, joint venturers, members, or managers, not in collusion with the "employee", discovered prior to the effective date of this policy that the "employee" had committed theft or any other dishonest act prior to the effective date of this policy.

Copyright, American Association of Insurance Services, Inc., 2015

## COMMERCIAL LIABILITY COVERAGES

Under Coverage L -- Bodily Injury Liability And Property Damage Liability, the following exclusions are revised:

1. Exclusion i. is deleted and replaced by the following:

   i. "We" do not pay for "bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

      1) causing or contributing to the intoxication of a person;
      2) the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age;
      3) a law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages;
      4) negligence or other wrongdoing in the supervision, hiring, retention, or training of another person, if the "bodily injury" or "property damage" is attributed, in whole or in part, to a reason set forth under 1), 2), or 3) above; or
      5) any act or omission in furnishing or failing to furnish transportation for, detaining or failing to detain, or providing or failing to provide for the well-being of any person who is or who may be under the influence of alcohol, if the "bodily injury" or "property damage" is attributed, in whole or in part, to a reason set forth under 1), 2), or 3) above.

   This exclusion applies only if "you" are in the business of manufacturing, distributing, furnishing, selling, or serving alcoholic beverages. The practice of allowing a person to bring alcoholic beverages onto "your" premises for consumption there, in and of itself, does not mean that "you" are in the business of furnishing, selling, or serving alcoholic beverages, even if such practice involves charging a fee or requires obtaining a license.

2. Exclusion x. is deleted and replaced by the following:

   x. "We" do not pay for any loss, cost, expense, or "damages" arising out of damage to, corruption of, loss of use or function of, or inability to access, change, or manipulate "data records".

   However, this exclusion does not apply to any loss, cost, expense, or "damages" due to "bodily injury".



Copyright, American Association of Insurance Services, Inc., 2015

Case ID: 200401698

This endorsement changes the
Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## DEFENSE COSTS REIMBURSEMENT
## PENNSYLVANIA

The Commercial Liability Coverages are amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

---

## COMMERCIAL LIABILITY COVERAGES

---

The following is added to the Insuring Agreements under Coverage L -- Bodily Injury Liability and Property Damage Liability, Coverage O -- Fire Legal Liability, and Coverage P -- Personal and Advertising Injury Liability:

If "we" defend the "insured" against a "suit" or "we" pay for an "insured's" defense, and "we" later determine that the "suit" is not covered, "we" have the right to be reimbursed for the defense costs "we" have incurred.

However, under this provision, "our" right to be reimbursed for defense costs applies only to such costs that "we" incur after "we" give "you" written notice that the "suit" may not be covered and that "we" are reserving "our" rights to end the defense coverage and to seek reimbursement for defense costs.



Copyright, American Association of Insurance Services, Inc., 2011

This endorsement changes the policy
-- PLEASE READ THIS CAREFULLY --

# CONDITIONAL TERRORISM EXCLUSIONS

## NOTICE

**The Terrorism Risk Insurance Program (the Program), as established under federal law, is scheduled to terminate while your policy is in effect.**

**The Terrorism Exclusions found in this endorsement will apply only if the federal government does not renew, extend, or otherwise replace the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.**

1. The Terrorism Exclusions set forth by this endorsement become effective on the earliest of the following:

   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act has terminated with respect to the type of insurance provided by the policy to which this endorsement applies; or

   b. the effective date of a renewal, extension, or replacement of the Program, if federal law no longer requires that "we" make terrorism coverage available to "you" and the Program has been renewed, extended, or replaced subject to changes that:

      1) redefine terrorism; or
      2) increase "our" financial exposure under the Program; or
      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the "terms" of the policy to which this endorsement applies.

   If a condition described above under items 1.a. and 1.b. occurs prior to the effective date of the policy period to which this endorsement applies, the Terrorism Exclusions set forth by this endorsement apply as of the effective date of that policy period.

2. If the Terrorism Exclusions set forth by this endorsement become effective, these Terrorism Exclusions:

   a. supersede any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the policy to which this endorsement applies, but only with respect to:

      1) under the Property Coverages, loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of these Terrorism Exclusions; and
      2) under the Commercial Liability Coverages, one or more incidents of terrorism which result in injury or damage that occurs on or after the effective date of these Terrorism Exclusions; and

Copyright, American Association of Insurance Services, Inc., 2006

Case ID: 200401698

b. remain in effect unless "we" notify "you" of changes to these Terrorism Exclusions.

3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the policy to which this endorsement applies continue to apply until "we" notify "you" of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

"Terrorism" means activities against persons, organizations, or property of any nature:

a. that involve the following or preparation for the following:

1) use or threat of force or violence; or
2) commission or threat of a dangerous act; or
3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. when one or both of the following applies:

1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

5. The following exclusion is added under the Property Coverages:

**TERRORISM EXCLUSION**

"We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

Copyright, American Association of Insurance Services, Inc., 2006

Case ID: 200401698

e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

Item 5.e. above describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident. When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Property Coverages of the policy to which this endorsement applies.

6. When the Terrorism Exclusion set forth under item 5. of this endorsement applies due to an incident of "terrorism" described above under items 5.a. or 5.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the policy to which this endorsement applies.

7. The following exclusion is added under the Commercial Liability Coverages:

**TERRORISM EXCLUSION**

"We" will not pay for injury or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

Copyright, American Association of Insurance Services, Inc., 2006

e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

f. fifty or more persons sustain death or serious physical injury. For the purpose of this provision, serious physical injury means:

1) physical injury that involves a substantial risk of death; or
2) protracted and obvious physical disfigurement; or
3) protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds described above under items 7.e. or 7.f. are exceeded.

Items 7.e. and 7.f. above describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident.

When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Commercial Liability Coverages of the policy to which this endorsement applies.

8. The following provisions are added.

a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the policy to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that policy under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the policy to which this endorsement applies under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.



Copyright, American Association of Insurance Services, Inc., 2006

Case ID: 200401698

This endorsement changes the Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# EXCLUSION -- DATA BREACH LIABILITY

The Commercial Liability Coverages are amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

## COMMERCIAL LIABILITY COVERAGES

1. Under Coverage L -- Bodily Injury Liability and Property Damage Liability, exclusion x. is deleted and replaced by the following:

   x. "We" do not pay for:

      1) "bodily injury" or "property damage" arising out of disclosure of or access to private or confidential information belonging to any person or organization; or
      2) any loss, cost, expense, or "damages" arising out of damage to, corruption of, loss of use or function of, or inability to access, change, or manipulate "data records".

      This exclusion also applies to "damages" for any expenses incurred by "you" or others arising out of 1) or 2) above, including expenses for credit monitoring, notification, forensic investigation, and legal research.

2. Under Coverage P -- Personal and Advertising Injury Liability, the following exclusion is added:

   "We" do not pay for "personal and advertising injury" arising out of disclosure of or access to private or confidential information belonging to any person or organization.

   This exclusion also applies to "damages" for any expenses incurred by "you" or others arising out of disclosure of or access to private or confidential information belonging to any person or organization, including expenses for credit monitoring, notification, forensic investigation, and legal research.



Copyright, American Association of Insurance Services, Inc., 2014

This endorsement changes the Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# INFORMATION DISTRIBUTION AND RECORDING VIOLATIONS EXCLUSION

The Commercial Liability Coverages are amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

## COMMERCIAL LIABILITY COVERAGES

The following is added to the exclusions under Coverage L -- Bodily Injury Liability and Property Damage Liability and Coverage P -- Personal and Advertising Injury Liability:

"We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of violations of or alleged violations of:

a. the Telephone Consumer Protection Act of 1991 (TCPA), including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;

b. the CAN-SPAM Act of 2003, including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;

c. the Fair Credit Reporting Act (FCRA), including any amendments thereto, such as the Fair and Accurate Credit Transaction Act (FACTA), and any similar federal, state, or local laws, ordinances, statutes, or regulations; or

d. any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.



Copyright, American Association of Insurance Services, Inc., 2009

# BPCH00001 (11 17) WAIC'S BUSINESSOWNERS PROPERTY AND LIABILITY ENDORSEMENTS AND DESCRIPTIONS OF CHANGES

The new and revised multi-state endorsements shown below have been filed for use with the revised Businessowners Program bearing 01 15 edition dates. The following describes the changes to the current endorsements, and provides a description of the content of any new endorsements.

Your new Businessowners policy also includes a number of coverage changes that expand, restrict, and/or clarify the coverage provided by your policy. The most significant of these changes are summarized in this policyholder notice. However, this notice is not your policy, nor is it a complete explanation of the terms of your policy. No coverage is provided by this notice, nor does it replace any provisions of your policy. You should read your policy and review your declarations page for complete information regarding the coverages you are provided. *If there are any discrepancies between the policy and this notice, THE PROVISIONS OF THE POLICY GOVERN.*

Any clarifications shown in this document are intended to clarify policy language and preserve the intent of your previous policy. At times, a policy is interpreted by courts or others as providing coverage or terms that differ from what the company intends or envisions. Depending upon the interpretation of your previous policy, some or all of the clarifications shown in this document may result in a reduction or elimination of coverage.

The most significant expansions, restrictions, and clarifications of coverage are summarized below. Please review the changes carefully and contact (us/your agent) if you have any questions.

Your new policy reflects a format change that shows the Common Policy Definitions before the Common Policy Conditions

**BP 0200 06 12 - Businessowners Special Policy (replaces form BP 0200 01 04)**

**PROPERTY COVERAGES**

### A. *CHANGES THAT EXPAND COVERAGE*

1. Your new policy includes the following expansion of coverage:
   a. Business personal property is expanded to apply to loss or damage to business personal property: at each location you acquire; you newly acquire located at the described premises; or located at each building being built or that you acquire on the described premises. The limit is $100,000 at each building. (This coverage applies only when a limit is shown on your policy declarations page for Coverage B - Business Personal Property)
   b. The definition of employee is expanded to include a student or intern, whether or not compensated directly by salary, wages, or commissions.
2. As described below, some of the internal limits in your new policy have been increased.
   a. Fire Department Service Charges limit increased from $1,000 to $2,500
   b. Special limit for any one tree, shrub, or plant has been increased from $500 to $1,000. (This coverage applies only when a limit is shown on your policy declarations page for Coverage A - Buildings.)
   c. Newly acquired buildings is no longer subject to the limit shown on your declarations page for Building Property. The limit does not exceed $250,000 for each newly acquired building. (This coverage applies only when a limit is shown on your policy declarations page for Coverage A - Buildings.)

Case ID: 200401698

3. Coverage is no longer restricted in your new policy when the building or structure is unoccupied for more than 60 consecutive days.

## B. *CHANGES THAT BOTH EXPAND AND RESTRICT OR CLARIFY COVERAGE*

1. Under your new policy:

   a. Coverage is extended for loss or damage to data records and programs caused by a covered peril, computer virus, or computer hacking, up to a $10,000 limit on an annual aggregate basis. However, manipulation of a computer system by any employee, volunteer, or other person retained by you to perform computer services is not covered. (This coverage applies only when a limit is shown on your policy declarations page for Coverage B - Business Personal Property)

   b. The exclusion that applies to Water now excludes mudslide or mudflow. However, the exclusion does not apply to computers.

   c. Loss of income coverage is now provided for destruction of data records and programs caused by a specified peril, computer virus, computer hacking, or Collapse, up to a $10,000 limit on an annual aggregate basis. However, manipulation of a computer system by any employee, volunteer, or other person retained by you to perform computer services is not covered.

   d. Coverage for animals is provided, if they are boarded by you, but owned by someone other than you, or are held for sale by you. However, they are covered only if they are destroyed or their destruction is made necessary caused by a specified peril or building glass breakage.

   e. The time period for the Loss of Income extension of coverage that applies while access to the described premises is denied by an order of civil authority has been increased from three weeks to four weeks. However, the described premises must be within one mile of the damaged property and within the area where access is denied by civil authority.

   f. Your policy now excludes continuous or repeated seepage or leakage of water, or the presence or condensation of moisture, humidity, or vapor, but only if it occurs over a period of 14 days or more.

   g. Except as provided for under Extensions Of Coverage for Data Records And Programs, your policy now excludes loss or damage to data records and programs caused by electrical or magnetic damage, erasure, or disturbance. However, damage caused by lightning is covered.

   h. Your policy now excludes loss or damage caused by an error or omission in the programming, storing, or processing data records, or the design, repair, installation, or testing of your computers. However, loss caused by a specified peril is covered.

   i. With respect to loss or damage to a common wall or party wall, your new policy now provides loss settlement terms. However, the subrogation condition of the policy is not altered by this provision.

2. With respect to the coverage for collapse under your new policy:

   a. Your policy now explains that sudden and abrupt collapse of a building or structure means the sudden and abrupt caving in, falling in, falling down, or giving way of the building or structure so that the building or structure cannot be occupied as intended. The terms of your new policy also explain what does not constitute sudden and abrupt collapse of a building or structure.

   b. With respect to loss or damage involving collapse caused by hidden decay or hidden insect or vermin damage, your policy now specifies that coverage does not apply if an insured knew of or could reasonably be expected to suspect the presence of such decay or insect or vermin damage prior to the sudden and abrupt collapse.

   c. Collapse of covered personal property is now covered if caused by the sudden and abrupt collapse of covered personal property

## C. CHANGES THAT CLARIFY OR RESTRICT COVERAGE

1. A new definition of earth movement was added.
2. A new definition of interruption was added to clarify its meaning with respect to loss of income coverage.
3. The definition of computer virus was clarified that a computer virus means any malicious or self-replicating code that is introduced into a computer, computer network, or web site server.
4. The definition of dependent location now means locations within the basic territory consisting of the United States of America, its territories and possessions, Canada, and Puerto Rico.
5. The definition of valuable papers and records now does not include software, including data records.
6. Coverage for forgery is clarified to include a substitute check as defined in the Check Clearing for the 21st Century Act.
7. Coverage for recharge of fire extinguishing equipment is now restricted to equipment or systems that are discharged on or within 100 feet of the described premises.
8. Under Loss of Income, the period of loss extension does not include finished stock that incurred loss or damage.
9. The utility failure exclusion now excludes loss or damage caused by failure or disruption of power, water, communication, or other utility services supplied to the described premises resulting from any cause, if the failure or disruption originates away from the described premises, or at the described premises if the failure or disruption involves equipment used to furnish the utility service to the described premises from a source away from the described premises.
10. Your policy now excludes loss, cost, or expense caused by a virus or bacteria. This exclusion was previously contained in a mandatory endorsement attached to your policy.
11. The exclusion that applies to electrical currents now specifies what is included in the meaning of electrical, electromagnetic, or magnetic currents or energy, as well as specifies the systems or devices that can be damaged by such electrical currents.
12. Your policy now excludes loss or damage caused by loss of use, delay, or loss of market. This does not apply to Coverage C -- Loss Of Income.
13. The exclusion that applies to criminal or illegal acts does not apply to accounts receivable and valuable papers and records in the custody of carriers for hire.
14. The exclusion that addresses defects, errors, or omissions now also excludes an error or omission in copying or processing valuable papers and records, as well as errors or omissions that occur during the production process.
15. Your new policy now requires that any insured must submit to examination under oath in connection with a loss or relating to this insurance, and give signed sworn statements.
16. When replacement cost coverage applies, if a building is not rebuilt on the same premises, the cost to replace is limited to the cost that would have been incurred had the building been rebuilt on the same premises.
17. When replacement cost coverage applies, if the cost to repair or replace damaged or destroyed property is $2,500 or less, the loss will be settled whether or not the damaged or destroyed property is repaired or replaced.
18. Your new policy clarifies that if data records, programs and applications, or proprietary programs are not restored or replaced after a property loss, the value of data records, programs and applications, or proprietary programs is based on the cost to replace the media on they were stored with blank media of similar kind or quality.
19. Your new policy clarifies that if valuable papers and records are not reproduced, replaced, or restored after a property loss, the value of valuable papers and records is based on the cost of blank materials of similar kind or quality.

20. Under your new policy, if there is a covered glass loss, the deductible applicable will be the policy deductible.

21. The Appraisal condition is clarified that if you and the company do not agree on the amount of the loss, either party may make a written demand for an appraisal. Such appraisal will not be used to interpret policy terms, determine causation, or determine whether or not a loss is covered under the policy.

22. The Suit Against Us condition now requires that a lawsuit be commenced within two years after the date on which direct physical loss or damage occurred.

## LIABILITY COVERAGES

### A. *CHANGES THAT EXPAND COVERAGE*

Your new policy includes the following expansions of coverage:

1. The definition of advertisement expanded to include a public notice or announcement offering your goods, products, or services for sale, rent, lease, or other purpose to potential buyers, clients, customers, or patrons.

2. The definition of auto has been expanded to include any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

3. The exclusion for liability for damages assumed by the insured under a contract or an agreement has been revised to provide coverage for reasonable attorney fees and necessary litigation costs incurred by or for an indemnitee whose defense has been assumed under the contract.

4. The exclusion for bodily injury or property damage arising out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, or loading or unloading of an auto has been revised to provide coverage for the operation of machinery or equipment that is attached to a land vehicle that would qualify under the definition of mobile equipment if it were not subject to a compulsory or financial responsibility law.

5. The exclusion for bodily injury or property damage due to the release or escape of pollutants has been revised to provide coverage for bodily injury caused by smoke, fumes, soot, or vapor from the equipment used to heat, cool, or dehumidify a building, or used to heat water, if the bodily injury was suffered in that building.

6. If you have been added as an additional insured by endorsement to other insurance that provides primary insurance, and it is available to you to cover liability arising out of products and completed operations, liability coverage under your policy will be excess over that primary insurance.

### B. *CHANGES THAT RESTRICT COVERAGE*

Under your new policy:

1. If defense expenses are incurred to provide a defense to an insured against a suit, and the company later determines that the suit is not covered by the policy, the company has the right to be reimbursed for the defense costs incurred if you are given written notice that the suit may not be covered, and the company reserves its rights to end defense coverage and seek reimbursement.

2. The definition of mobile equipment has been revised to not include land vehicles that are subject to

a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

3. Damage to, corruption of, or inability to access, change, or manipulate data records is excluded.

4. Bodily injury, property damage, or personal and advertising injury arising out of the negligent supervision, hiring, or training of a person by an insured is excluded if the injury or damage involved the rendering or the failure to render a professional service.

5. The exclusion for employment-related practices now also excludes bodily injury or personal and advertising injury due to malicious prosecution. Also, the employment- related practices exclusion now applies whether injury to a person occurs before, during or after employment of that person.

## C. *CHANGES THAT CLARIFY COVERAGE*

Under your new policy:

1. A definition of the term indemnitee has been added to clarify the scope of contractual liability coverage for a person or organization an insured assumes liability for.
2. The defined term damages has been clarified to include an organization.
3. The defined term loading or unloading has been clarified to specifically state that the handling of property ends when it has been removed from the vehicle to the point of final delivery.
4. The Insuring Agreements for Coverage L, Coverage 0, and Coverage P have been clarified that 'those' sums which an insured becomes legally obligated to pay as damages will be paid.
5. The medical expenses exclusion for athletic activities has been clarified to apply to any person participating in, instructing, or practicing for any athletic or sports activity that you sponsor.
6. The personal and advertising injury exclusion pertaining to intellectual property rights does not include the use of the advertising ideas of others in your advertisement.
7. The exclusion for personal and advertising injury arising out of electronic chat rooms now also applies to gripe sites, social networking sites, and blogs.
8. The supplemental payment concerning costs taxed against the insured in a suit has been clarified to apply to court costs. However, these costs do not include attorney's fees or expenses.
9. A provision has been added under Supplemental Payments concerning defense of an indemnitee.

**BP 0351 01 15 – Property Additional Coverage Endodrsement – Schedule Of Property Coverages And Limits (Replaces BP 0351 06 12)**
Endorsement revised to show a limit of $15,000 instead of $10,000 for Business Personal Property – Off Premises.

**BP0797 01 15 – Exclusion – Data Breach Liability – Personal And Advertising Injury (New Endorsement)**
Endorsement excludes personal and advertising injury only with respect to data breach liability exposures. The exclusion will also apply to any expenses incurred for credit monitoring, notification, forensic investigation, and legal research. This endorsement may be used in lieu of mandatory endorsement BP 0798.

**BP 0798 01 15 – Exclusion – Data Breach Liability (New Endorsement)**
Mandatory endorsement excludes bodily injury, property damage, and personal and advertising injury with respect to data breach and other data liability exposures. The exclusion will also apply to any expenses incurred for credit monitoring, notification, forensic investigation, and legal research. Data breach liability exposures were never contemplated to be covered under commercial liability coverages.

**BP 0816 01 15 – Policy Amendatory Endorsement (New Endorsement)**
Mandatory endorsement revises several sections of the BP 0100 and BP0200 as applicable. There are several changes. Complete review is required.

**BP 0844 01 15 – Coverage C – Loss Of Income – Without A Waiting Period (Replaces BP 0844 06 12)**
Endorsement revised to amend item a. of the Coverage Period provision under the Additional Loss of Income Coverage for Earnings From Dependent Locations to include "secondary dependent location" as defined.

**BP0848 01 15 – Additional Insured – Building Owner (New Endorsement)**
Endorsement can be used to add a building owner as an additional insured with respect to loss or damage to the described building, and any loss adjustment will be adjusted with the named insured and the building owner.

**BP 0010 01 15 – Businessowners Policy Declarations (Replaces BP0010 06 12)**
The sample Businessowners Policy Declarations was revised to provide fill-ins for a Wind Or Hail Percentage Deductible and Optional Higher Limits for Jewelry, Watches , Jewels, Pearls, Stones, Or Metals; Debris Removal Expense; and Business Personal Property – Portable Storage Units.

This endorsement changes the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT

The policy is amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

1. Under Common Policy Definitions, item 8. is deleted and replaced by the following:

   8. "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

      "Hardware" is limited to:

      a. mainframe and mid-range computers and servers;

      b. personal computers and workstations;

      c. laptops, hand-held computers, notebook PCs, and other portable computer devices and accessories, such as multimedia projectors; and

      d. peripheral data processing equipment, such as printers, keyboards, monitors, and modems.

2. Under Property Coverages, item 8. of Perils Excluded is deleted and replaced by the following:

   8. **Water** --

      a. "We" do not pay for loss or damage caused by:

         1) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;

         2) water that backs up through, overflows from, or is otherwise discharged from:

            a) a sewer or drain;
            b) a sump, sump pump, or related equipment; or
            c) any other type of system designed to remove subsurface water which is drained from the foundation area;

         3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

            a) basements, whether paved or not;
            b) doors, windows, or other openings;
            c) foundations, floors, walls, or paved surfaces; or
            d) swimming pools, septic tanks, or other structures; or

         4) material present in or carried or otherwise moved by water described in items 1) through 3) above.

         However, if fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

      b. This exclusion:

         1) applies regardless of the cause of the water or the material carried or moved by water described under items a.1) through a.4) above, whether or not such cause is an act of nature; and

SAMPLE

Copyright, American Association of Insurance Services, Inc., 2008

2) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

   a) overtops;
   b) escapes from;
   c) is released from; or
   d) is otherwise discharged from;

   a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

However, if this endorsement is attached to form BP 0200, this exclusion does not apply to "computers".



SAMPLE

Copyright, American Association of Insurance Services, Inc., 2008

This endorsement changes the Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# LEAD LIABILITY EXCLUSION

The Commercial Liability Coverages are amended as follows:

## COMMERCIAL LIABILITY COVERAGES

The following is added to the exclusions under Coverage L -- Bodily Injury Liability and Property Damage Liability, Coverage O -- Fire Legal Liability, and Coverage P -- Personal and Advertising Injury Liability:

"We" do not pay for:

1. actual or alleged "bodily injury" arising out of the ingestion, inhalation, or absorption of lead in any form;
2. actual or alleged "property damage" or "personal and advertising injury" arising out of any form of lead;
3. any loss, cost, or expense arising out of any request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead; or
4. any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of lead.



Copyright, American Association of Insurance Services, Inc., 2004

SAMPLE

This endorsement changes the Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# SILICA EXCLUSION

The Commercial Liability Coverages are amended as follows:

## ADDITIONAL DEFINITIONS

The following definition is added:

"Silica" means silicon dioxide ($SiO_2$) including:

1. crystalline silica, silica dust, industrial sand, silica sand, quartz, quartz dust, cristobalite, tridymite, tripoli, and silica mixed with other compounds;

2. amorphous silica and silica gel; and

3. silica dust mixed with other dust particles.

## COMMERCIAL LIABILITY COVERAGES

1. The following is added to the exclusions under Coverage L -- Bodily Injury Liability and Property Damage Liability:

   "We" do not pay for:

   a. "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of "silica";

   b. "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of "silica"; or

   c. any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "silica" by any "insured" or any other person or organization.

2. The following is added to the exclusions under Coverage P -- Personal and Advertising Injury Liability:

   "We" do not pay for:

   a. "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of "silica"; or

   b. any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "silica" by any "insured" or any other person or organization.



SAMPLE

Copyright, American Association of Insurance Services, Inc., 2005

This endorsement changes the Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# ASBESTOS EXCLUSION

The Commercial Liability Coverages are amended as follows:

## COMMERCIAL LIABILITY COVERAGES

1. The following is added to the exclusions under Coverage L -- Bodily Injury Liability and Property Damage Liability:

   "We" do not pay for:

   a. "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of asbestos, asbestos products, asbestos fibers, or asbestos dust;

   b. "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

   c. any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust by any "insured" or any other person or organization.

2. The following is added to the exclusions under Coverage P -- Personal and Advertising Injury Liability:

   "We" do not pay for:

   a. "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

   b. any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust by any "insured" or any other person or organization.



SAMPLE

Copyright, American Association of Insurance Services, Inc., 2005

This endorsement changes the policy
-- PLEASE READ THIS CAREFULLY --

# VIRUS OR BACTERIA EXCLUSION

The following provisions are added with respect to all property coverages provided by this policy. All other "terms" of the policy apply, except as amended by this endorsement.

1. When "fungus or related perils" is a defined "term", that definition is deleted and replaced by the following, but only with respect to the Property Coverages provided by this policy.

   "Fungus or related perils" means:

   a. a fungus, including but not limited to mildew and mold;

   b. a protist, including but not limited to algae and slime mold;

   c. wet rot;

   d. dry rot; or

   e. a chemical, matter, or compound produced or released by a fungus, a protist, wet rot, or dry rot, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2. The following exclusion is added under Perils Excluded. It applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

   **Virus or Bacteria** -- "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

   This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

   a. any contamination by any virus, bacterium, or other microorganism; or

   b. any denial of access to property because of any virus, bacterium, or other microorganism.

3. The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

4. The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.



SAMPLE

Copyright, American Association of Insurance Services, Inc., 2006

This endorsement changes the policy
-- PLEASE READ THIS CAREFULLY --

# NUCLEAR, BIOLOGICAL, AND CHEMICAL TERRORISM EXCLUSIONS

1. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

   "Terrorism" means activities against persons, organizations, or property of any nature:

   a. that involve the following or preparation for the following:

      1) use or threat of force or violence; or
      2) commission or threat of a dangerous act; or
      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. when one or both of the following applies:

      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
      2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

2. The following exclusion is added under the Property Coverages:

   **TERRORISM EXCLUSION**

   "We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

   This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

   a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

   b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

   c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

3. When the Terrorism Exclusion set forth under item 2. of this endorsement applies due to an incident of "terrorism" described above under items 2.a. or 2.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the policy to which this endorsement applies.

4. The following exclusion is added under the Commercial Liability Coverages:

   **TERRORISM EXCLUSION**

   "We" will not pay for injury or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

SAMPLE

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Commercial Liability Coverages of the policy to which this endorsement applies.

5. The following provisions are added.

   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the policy to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that policy under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

   b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the policy to which this endorsement applies under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.



SAMPLE

Case ID: 200401698

This endorsement changes the
Property Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# WATER BACKUP AND OVERFLOW COVERAGE

(The entries required to complete this Schedule will be shown below or on the "declarations".)

**Schedule**

| Prem. No. | Bldg. No. | Covered Property | Direct Physical Loss Limit per Occurrence | Optional Coverage for Loss Of Income Limit per Occurrence |
|---|---|---|---|---|

1. In return for "your" payment of the required premium, "we" provide the coverage described in this endorsement. This coverage is subject to the "terms" of this endorsement, the Common Policy Conditions, the Common Policy Definitions, and the "terms" applicable to Property Coverages, except as provided below.

2. **Coverage For Direct Physical Loss**

   "We" cover direct physical loss or damage to covered property shown in the Schedule above while at the premises shown, caused by water, or material present in or carried or otherwise moved by water, that backs up through, overflows from, or is otherwise discharged from:

   a. a sewer or drain;

   b. a sump, sump pump, or related equipment, even if the backup, overflow, or discharge is due to mechanical breakdown of such sump pump or related equipment.

      However, "we" do not cover the cost to repair or replace any sump pump or related equipment due to mechanical breakdown; or

   c. any other type of system designed to remove subsurface water which is drained from the foundation area.

   **Coverage Limit** -- Neither the Coverage A "limit" nor the Coverage B "limit" shown on the "declarations" applies to the coverage provided by this endorsement. The most "we" pay per occurrence under this endorsement for direct physical loss or damage to covered property is the "limit" shown in the Schedule above that applies to that property.

3. **Optional Coverage For Loss Of Income**

   When a "limit" is shown in the Schedule above for Optional Coverage For Loss Of Income and "your" business sustains a necessary "interruption" due to direct physical loss or damage to covered property shown in the Schedule above, as described in item 2. of this endorsement, "we" pay "your" loss of Earnings and Extra Expenses as described under Coverage C -- Loss Of Income during the "restoration period".

Copyright, American Association of Insurance Services, Inc., 2012

**Coverage Limit** -- The limit for Coverage C -- Loss Of Income, if shown on the "declarations", does not apply to the Optional Coverage For Loss Of Income that may be provided by this endorsement. The most "we" pay per occurrence under this endorsement for Earnings and Extra Expenses is the "limit" shown in the Schedule above for Optional Coverage For Loss Of Income.

4. With respect to the limited coverage provided by this endorsement, item 9. under Perils Excluded is deleted and replaced by the following:

   9. **Water** --

      a. "We" do not pay for loss or damage caused by:

         1) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;
         2) mudslide or mudflow;
         3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

            a) basements, whether paved or not;
            b) doors, windows, or other openings;
            c) foundations, floors, walls, or paved surfaces; or
            d) swimming pools, septic tanks, or other structures; or

         4) material present in or carried or otherwise moved by water described in items 1) through 3) above.

      However, if fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

      b. This exclusion:

         1) applies regardless of the cause of the water or the material carried or moved by water described under items a.1) through a.4) above, whether or not such cause is an act of nature; and
         2) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

            a) overtops;
            b) escapes from;
            c) is released from; or
            d) is otherwise discharged from;

         a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

      However, if this endorsement is attached to form BP 0200, this exclusion does not apply to "computers".

5. With respect to coverage provided by this endorsement, the following exclusions are added under Additional Exclusions:

   a. **Ordinary Maintenance** -- "We" do not pay for loss or damage caused by an "insured's" failure to perform the ordinary maintenance or repair necessary to keep a sewer or drain cleared of obstructions.

   b. **Proper Condition** -- "We" do not pay for loss or damage caused by an "insured's" failure to maintain in proper working condition a sump pump or related equipment or any other type of system designed to remove subsurface water which is drained from the foundation area.

Copyright, American Association of Insurance Services, Inc., 2012

c. **Loss Of Use** -- Except with respect to any Optional Coverage For Loss Of Income that may be provided as indicated by an entry on the Schedule above, "we" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market or for any expenses incurred to minimize or avoid such losses.



Copyright, American Association of Insurance Services, Inc., 2012

This endorsement changes the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## PENNSYLVANIA

1. Under Common Policy Definitions, item b. of the definition of "pollutants" is deleted and replaced by:

   b. electrical particles or fields, whether visible or invisible, and sound.

2. Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

   **Cancellation And Nonrenewal** --

   a. "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   b. "We" may cancel or not renew this policy by delivering or mailing written notice to "you" at the address shown on the "declarations". "Our" notice will state the specific reason for cancellation or nonrenewal. Proof of delivery or mailing is sufficient proof of notice.

   c. If this policy has been in effect for less than 60 days, "we" may cancel for any reason by giving "you" notice at least 30 days before the cancellation is effective.

   d. If this policy has been in effect for 60 days or more, or if it is a renewal of a policy issued by "us", "we" may cancel only if one or more of the following reasons apply:

      1) the premium has not been paid when due, whether the premium is payable directly to "us" or "our" agents or indirectly under a premium finance plan or extension of credit;
      2) an "insured" has made a material misrepresentation which affects the insurability of the risk;
      3) a condition, factor, or loss experience material to insurability has changed substantially, or a substantial condition, factor, or loss experience material to insurability has become known during the policy term;
      4) a loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease will, at the time of cancellation, be certified to the Insurance Commissioner as directly affecting in-force policies;
      5) the policy has been obtained through a fraudulent statement, omission, or concealment of fact material to the acceptance of the risk or hazard assumed by "us";
      6) there has been a material failure to comply with a policy "term" or a contractual duty; or
      7) any other reason that the Insurance Commissioner may approve.

   "We" may cancel for reasons 1) or 2) above by giving "you" notice at least 15 days before the cancellation is effective. "We" may cancel for reasons 3) through 7) above by giving "you" notice at least 60 days before the cancellation is effective.

   The policy may also be cancelled from inception upon discovery that it has been obtained through a fraudulent statement, omission, or concealment of fact material to the acceptance of the risk or to the hazard assumed by "us".

   e. If "we" do not renew this policy, "we" will give "you" notice at least 60 days before the nonrenewal is effective.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

f. The return premium, if any, will be calculated on a pro rata basis. If "you" cancel this policy, any unearned premium will be refunded to "you" not later than 30 days after the effective date of the cancellation. If "we" cancel this policy, any unearned premium will be refunded to "you" not later than 10 business days after the effective date of the cancellation. Payment or tender of the unearned premium is not a condition of cancellation.

3. Under Common Policy Conditions, the following is added:

   **Increased Renewal Premium** -- "We" may increase the renewal premium by delivering or mailing written notice to "you", at the address shown on the "declarations", at least 30 days before the renewal date. Proof of delivery or mailing is sufficient proof of notice.

4. Under Property Coverages, the following is added:

   Throughout this policy, the "term" actual cash value means the cost to repair or replace property using materials of like kind and quality, to the extent practical, less a deduction for depreciation, however caused.

5. Under Property Coverages, the following section is added:

   **INVESTIGATION OF CLAIMS**

   Unless "we" need more time to investigate "your" claim, "we" will give "you" notice of "our" intent to accept or deny "your" claim within 15 working days after receipt of a duly executed proof of loss.

   If "we" deny "your" claim, "we" give "you" written notice of "our" denial. "Our" notice will identify any provision of this policy on which the denial is based.

   If "we" need more time to investigate "your" claim, "we" will give "you" notice of "our" need for more time within 15 working days after receipt of a duly executed proof of loss. "Our" notice will state why more time is needed.

   If "our" investigation cannot be completed within 30 days of the date of "our" initial notice, "we" will give "you" written notice to state why more time is needed. "We" will give "you" such notice within 30 days of the date of "our" initial notice.

   "We" will continue to give "you" written notice every 45 days thereafter to state why more time is needed until "we" give "you" notice of "our" intent to accept or deny "your" claim.

   However, the requirements of this provision do not apply if there is a reasonable basis supported by specific information available for review by the insurance regulatory authority that "you" have fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, "we" will give notice of "our" intent to accept or deny "your" claim within a reasonable period of time after receipt of a duly executed proof of loss.

6. Under Property Coverages, Additional Conditions, Death Of An Individual Named Insured is amended to include the following:

   Subject to the payment of any premium due for the current policy period and any extension thereof, and all other "terms" of the policy, this policy will continue until:

   a. 180 days after the date on which "you" die; or

   b. the date on which the covered property is sold;

   whichever is earlier.



Copyright, American Association of Insurance Services, Inc., 2012

This endorsement changes the
Property Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# PROPERTY ADDITIONAL COVERAGE ENDORSEMENT
## SCHEDULE OF PROPERTY COVERAGES AND LIMITS

| Coverage | Limits |
|---|---|
| Accounts Receivable | |
| At the described premises | $ 20,000 |
| Away from the described premises | $ 5,000 |
| Business Personal Property - Off Premises | $ 15,000 |
| Employee Dishonesty | $ 10,000 |
| Forgery | $ 5,000 |
| Outdoor Signs | $ 10,000 |
| Personal Effects | $ 5,000 |
| Spoilage | $ 10,000 |
| Valuable Papers and Records | |
| At the described premises | $ 15,000 |
| Away from the described premises | $ 5,000 |

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described in this endorsement. This coverage is subject to the "terms" of this endorsement, the Common Policy Conditions, the Common Policy Definitions, and the "terms" applicable to Property Coverages, except as provided below.

The "terms" and "limits" of this endorsement apply separately to each premises described on the "declarations" and for which a "limit" for Building or Business Personal Property is shown on the "declarations".

## ADDITIONAL COVERAGES

1. Under Forgery, Coverage Limit is deleted and replaced by the following:

   **Coverage Limit** -- The most "we" pay under this coverage for any one loss, including legal expenses, is $5,000.

2. The following coverage is added:

   **Spoilage** --

   a. **ADDITIONAL DEFINITIONS**

      The following definition is added.

      "Perishable stock" means business personal property that is preserved and maintained under conditions that control temperature or humidity and that is susceptible to loss if the controlled conditions change.

   b. **PROPERTY COVERED**

      "We" cover loss to "your" "perishable stock" caused by a covered peril while at the premises shown in the "declarations". This includes "your" interest in similar property that belongs to others.

   c. **ADDITIONAL COVERAGES**

      With respect to the coverage provided by this endorsement, the Additional Coverage for Limited Fungus And Related Perils does not apply.

Copyright, American Association of Insurance Services, Inc., 2015

d. **PERILS COVERED**

"We" cover loss to covered "perishable stock" caused by a peril described below.

1) **Breakdown** -- This means a change in temperature or humidity resulting from:

a) mechanical breakdown;
b) malfunction; or
c) failure;

at the premises shown on the "declarations", of the system, equipment, or apparatus that controls refrigeration, cooling, or humidity.

However, breakdown does not mean a change in temperature or humidity resulting from complete or partial lack of electrical power, when such lack of electrical power occurs either on or off the premises shown in the "declarations".

2) **Contamination** -- This means contamination from the release of a refrigerant, including but not limited to ammonia, at the premises shown in the "declarations".

3) **Power Disruption** -- This means a change in temperature or humidity resulting from:

a) complete or partial lack of electrical power; or
b) fluctuation of electrical current;

either on or off the premises shown in the "declarations", due to conditions beyond "your" control.

e. **PERILS EXCLUDED**

1) Under Perils Excluded, only the following exclusions apply to this additional coverage:

a) Civil Authority;
b) Earth Movement;
c) Nuclear Hazard;
d) War and Military Action; and
e) Water.

2) The following additional exclusions are added with respect to this additional coverage.

a) **Disconnection Or Deactivation** -- "We" do not pay for loss caused by the disconnection of the system, equipment, or apparatus that controls refrigeration, cooling, or humidity from the source of power, or the deactivation of electrical power caused by turning off a switch or other device used to control the electrical current or power.

b) **Glass Breakage** -- "We" do not pay for loss caused by the breakage of any glass that is a permanent part of the system, equipment, or apparatus that controls refrigeration, cooling, or humidity.

c) **Inability To Provide Sufficient Power** -- "We" do not pay for loss caused by:

(1) the inability of an electrical utility company or other power source to provide sufficient power due to governmental order or lack of fuel; or
(2) the lack of generating capacity at the premises shown in the Schedule to meet demand.

d) **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

Copyright, American Association of Insurance Services, Inc., 2015

f. **VALUATION OF PROPERTY LOSSES**

The following provision is added with respect to this additional coverage.

**Perishable Stock** --

1) The value of "perishable stock" that "you" have sold but not delivered is based on its selling price, less all discounts and unincurred expenses.
2) The value of all other "perishable stock" is based on its actual cash value at the time of loss.

g. **HOW MUCH WE PAY**

The following deductible provision replaces any other deductible provision within the policy, with respect to this additional coverage.

**Deductible** -- "We" pay only that part of "your" loss in excess of the applicable deductible amount shown in the "declarations" in any one occurrence.

h. **ADDITIONAL CONDITIONS**

The following condition is added with respect to this additional coverage for loss caused by the perils of Breakdown or Contamination at the applicable premises.

**Refrigeration Maintenance Or Service Agreement** --

"We" do not cover losses occurring at the premises shown in the "declarations" if "you" do not notify "us" within 10 days of:

a. "your" voluntarily discontinuation or termination; or

b. "your" becoming aware of any suspension, termination, cancellation, or impairment,

of an applicable refrigeration maintenance or service agreement.

i. **COVERAGE LIMITS**

The most "we" pay under this coverage is $10,000 in any one occurrence.

## EXTENSIONS OF COVERAGE

1. Under Accounts Receivable, Coverage Limits is deleted and replaced by the following:

   **Coverage Limits** -- The most "we" pay under this coverage is:

   1) $20,000 in any one occurrence for loss to accounts receivable records at the described premises; and
   2) $5,000 in any one occurrence for loss to "your" accounts receivable records away from the described premises.

2. Under Business Personal Property - Off Premises, Coverage Limit is deleted and replaced by the following:

   **Coverage Limit** -- The most "we" pay under this coverage is $15,000.

3. Under Personal Effects, Coverage Limit is deleted and replaced by the following:

   **Coverage Limit** -- The most "we" pay under this coverage is $5,000.

4. Under Valuable Papers and Records, Coverage Limits is deleted and replaced by the following:

   **Coverage Limits** -- The most "we" pay under this coverage is:

   1) $15,000 in any one occurrence for loss to "valuable papers and records" records at the described premises; and
   2) $5,000 in any one occurrence for loss to "your" "valuable papers and records" away from the described premises.

Copyright, American Association of Insurance Services, Inc., 2015

## OPTIONAL COVERAGES

1. Coverage for Employee Dishonesty, as described under Optional Coverages, is added, subject to the following:

   **Coverage Limit** -- The most "we" pay in any one occurrence for Employee Dishonesty is $10,000.

2. Coverage for Outdoor Signs, as described under Optional Coverages, is added, subject to the following:

   **Coverage Limit** -- This optional coverage supersedes all limitations in this policy that apply to outdoor signs. The most "we" pay for loss in any one occurrence is $10,000.

**BP 0351 01 15**

Copyright, American Association of Insurance Services, Inc., 2015

This endorsement changes the
Property Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# EQUIPMENT BREAKDOWN

(Entries required to complete this Schedule will be shown below or on the "declarations".)

**Schedule**

The following deductible amount will apply to each loss after all other adjustments have been made:

**Deductible:** $______________

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described in this endorsement. This coverage is subject to the "terms" of this endorsement, the Common Policy Conditions, the Common Policy Definitions, and the "terms" applicable to Property Coverages, except as provided below.

## ADDITIONAL DEFINITIONS

1. With respect to the coverage provided by this endorsement, the definition of "restoration period" is deleted and replaced by the following:

   "Restoration period" means the time it should reasonably take to resume "your" normal business activities, starting from the date of loss at the described premises caused by an "accident" to "covered equipment" and ending on the date the property should be rebuilt, repaired, or replaced or the date business is resumed at a permanent location. This is not limited by the expiration date of the policy.

   **Restrictions** -- "Restoration period" does not include any increase in time due to the enforcement of any code, ordinance, law, or decree that regulates or requires:

   a. the construction, use, repair, or demolition of any property; or

   b. that "you" or anyone else test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants" or "fungus or related perils".

2. With respect to the coverage provided by this endorsement, the following definitions are added:

   a. "Accident" means a sudden and accidental:

      1) mechanical breakdown;
      2) rupturing or bursting of moving parts of machinery caused by centrifugal force;
      3) artificially generated electrical, electromagnetic, or magnetic energy, including electric arcing, that damages, disturbs, disrupts, or otherwise interferes with any electrical or electronic wiring, networks, systems, appliances, or devices;
      4) explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control;
      5) loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment; or

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

6) loss to hot water boilers or heaters caused by any occurrence or condition within such equipment.

b. Subject to the restrictions set forth below, and unless otherwise specified in the "declarations":

1) "Covered equipment" means property covered under Coverage A -- Buildings or Coverage B -- Business Personal Property:

a) that generates, transmits, or utilizes energy, including "computers"; or
b) which, during normal usage, operates under vacuum or pressure, other than weight of its contents.

2) However, with respect to the Utility Service Interruption provision under the Additional Coverage for Spoilage and the Utility Service Interruption provision under Coverage C -- Loss Of Income, both as provided by this endorsement, "covered equipment" means property:

a) that generates, transmits, or utilizes energy, including "computers"; or
b) which, during normal usage, operates under vacuum or pressure, other than weight of its contents.

3) **Restrictions** -- "Covered equipment" does not include any:

a) equipment manufactured by "you" for sale;
b) cabinets or compartments that cover or house "covered equipment";
c) buildings or structures, including air supported buildings or structures;
d) foundations that support "covered equipment";
e) sewer piping, buried piping or vessels, water piping, or sprinkler or fire suppression system piping.

However, "covered equipment" does include:

(1) boiler feedwater and condensate return piping; and
(2) water piping for heating, air conditioning, or refrigeration systems;

f) dragline, construction, or excavation equipment;
g) "vehicle" or any equipment mounted on a "vehicle";
h) insulating or refractory material; or
i) satellite, spacecraft, or any equipment mounted on a satellite or spacecraft.

c. "Perishable stock" means business personal property that is preserved and maintained under conditions that control temperature or humidity and that is susceptible to loss if the controlled conditions change.

d. "Vehicle" means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor, or harvester.

However, "vehicle" does not include any property that is stationary, permanently installed at a covered location, and that receives electrical power from an external power source.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

## ADDITIONAL PROPERTY EXCLUDED AND LIMITATIONS

When this endorsement is attached to form BP 0200, item 2. Boilers, does not apply with respect to the coverage provided by this endorsement.

## ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, the following are added. The "limit" for each additional coverage is a part of, and not in addition to, the "limit" for the covered property.

1. **Data Restoration** -- "We" pay for "your" reasonable and necessary cost to research, replace, and restore lost "data records", "programs and applications", and "proprietary programs" due to loss or damage caused by or resulting from an "accident" to "covered equipment".

   **Coverage Limit** -- The most "we" pay for loss or expense under this coverage, including Loss Of Income, is $25,000.

   This coverage is excess over any coverage for "software" provided by this policy.

2. **Expediting Expenses** -- "We" pay for the reasonable extra cost to expedite permanent repairs or permanent replacement and make temporary repairs to damaged covered property due to loss or damage caused by or resulting from an "accident" to "covered equipment".

   **Coverage Limit** -- The most "we" pay under this coverage is $25,000.

3. **Pollutants** -- "We" pay for the additional cost to repair or replace covered property because of contamination by "pollutants" due to loss or damage caused by or resulting from an "accident" to "covered equipment". This includes the additional expenses to clean up or dispose of contaminated property.

   Additional costs mean those in excess of what would have been required to repair or replace damage to covered property, had no "pollutants" been involved.

   **Restriction** -- This does not include contamination of "perishable stock" by a refrigerant, including, but not limited to, ammonia, which is addressed in Spoilage Coverage below.

   **Coverage Limit** -- The most "we" pay for loss or damage under this coverage, including Spoilage and Loss Of Income, is $25,000.

   This coverage is excess over any Spoilage Coverage provided by endorsement to this policy.

4. **Spoilage** --

   a. "We" pay for direct physical loss of or damage to "your" "perishable stock" caused by spoilage due to loss or damage caused by or resulting from an "accident" to "covered equipment". "We" also pay:

      1) for direct physical loss of or damage to "your" "perishable stock" caused by contamination from the release of a refrigerant, including, but not limited to, ammonia; and
      2) for any necessary expenses "you" incur to reduce the amount of loss under this coverage. "We" pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

b. **Utility Service Interruption** -- "We" also pay for loss of or damage to "your" "perishable stock" caused by an "accident" to "covered equipment" which is owned by a utility, a landlord, a landlord's utility, or another supplier who provides "you" with any of the following utility services:

1) electrical power, natural gas, or water;
2) internet access, telecommunications services, wide area networks, or data transmission;
3) waste disposal; or
4) air conditioning, refrigeration, heating, compressed air, or steam.

c. **Valuation** -- If "you" are able to replace the "perishable stock", the amount of "our" payment will be determined in accordance with the Valuation of Property Losses provision. If "you" are not able to replace the "perishable stock" before its anticipated sale, the amount of "our" payment will be determined on the basis of the selling price of the "perishable stock" at the time of the "accident", less discounts and expenses "you" otherwise would have had.

d. **Coverage Limit** -- The most "we" pay for loss or damage under this coverage is $25,000.

This coverage is excess over any Spoilage coverage otherwise provided by this policy.

5. **Environmental, Safety, And Efficiency Improvements** -- If "covered equipment" requires replacement due to an "accident" to that "covered equipment", "we" will pay "your" additional cost to replace with equipment that is better for the environment, safer, or more efficient than the equipment being replaced.

**Restriction** -- This coverage does not apply to any property to which Actual Cash Value valuation "terms" apply.

**Coverage Limit** -- The most "we" pay for replacement under this coverage is 150% of what the cost would have been to replace with like kind and quality.

## COVERAGE C -- LOSS OF INCOME

1. With respect to the coverage provided by this endorsement, the following exclusion is added under Exclusions and Limitations:

**Customer Agreement** -- "We" do not cover any increase in loss resulting from an agreement between "you" and "your" customer and suppliers. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges, and liquidated damages.

2. With respect to the coverage provided by this endorsement, the following is added under Loss Of Income Coverage Extensions:

**Utility Service Interruption** -- "We" extend "your" coverage to pay for "your" loss of earnings and the necessary extra expense "you" incur during the period of "interruption" when "your" normal business operations are interrupted as a result of an "accident" to "covered equipment" which is owned by a utility, a landlord, a landlord's utility, or another supplier who provides "you" with any of the following utility services:

a. electrical power, natural gas, or water;

b. internet access, telecommunications services, wide area networks, or data transmission;

c. waste disposal; or

d. air conditioning, refrigeration, heating, compressed air, or steam.

Copyright, American Association of Insurance Services, Inc., 2012

**Period Of Interruption** -- The period of "interruption" begins 24 hours after the direct physical loss of or damage to the property owned by the utility, landlord, landlord's utility, or other supplier and ends when the utility service has been fully restored to the described premises.

## PERILS COVERED

With respect to the coverage provided by this endorsement, Perils Covered is deleted and replaced by the following:

Unless otherwise stated, the Perils Covered apply to Coverage A -- Buildings, Coverage B -- Business Personal Property, and Coverage C -- Loss Of Income.

"We" cover direct physical loss of or damage to covered property caused by or resulting from an "accident" to "covered equipment" unless the loss or damage is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. With respect to the coverage provided by this endorsement, exclusion 2. is deleted and replaced by the following:

   2. **Earth Movement** -- "We" do not pay for loss or damage due to an "accident" to "covered equipment" caused by any "earth movement".

2. With respect to the coverage provided by this endorsement, exclusion 3. is deleted and replaced by the following:

   3. **Fungus Or Related Perils** -- "We" do not pay for loss or damage caused by or relating to the existence of or any activity of "fungus or related perils".

      However, this exclusion does not apply to spoilage of "perishable stock" to the extent that spoilage is covered under the Spoilage "terms" of this endorsement.

      "We" do pay for loss or damage that is caused by an "accident" to "covered equipment" that results from "fungus or related perils", unless the loss is limited or caused by another peril that is excluded under the Equipment Breakdown Coverage "terms".

3. With respect to the coverage provided by this endorsement, exclusion 9. is deleted and replaced by the following:

   9. **Water** --

      a. "We" do not pay for loss or damage caused by:

         1) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;
         2) mudslide or mudflow;
         3) water that backs up through, overflows from, or is otherwise discharged from:

            a) a sewer or drain;
            b) a sump, sump pump, or related equipment; or
            c) any other type of system designed to remove subsurface water which is drained from the foundation area.

         However, "we" do pay for the direct expenses to dry out electrical "covered equipment" required as a result of water described in items 1) through 3) above;

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

4) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

a) basements, whether paved or not;
b) doors, windows, or other openings;
c) foundations, floors, walls, or paved surfaces; or
d) swimming pools, septic tanks, or other structures; or

5) material present in or carried or otherwise moved by water described in items 1) through 4) above.

b. This exclusion:

1) applies regardless of the cause of the water or the material carried or moved by water described under items a.1) through a.5) above, whether or not such cause is an act of nature; and
2) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

a) overtops;
b) escapes from;
c) is released from; or
d) is otherwise discharged from;

a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

## ADDITIONAL EXCLUSIONS

1. The following exclusions, wherever they appear, do not apply with respect to the coverage provided by this endorsement:

a. Explosion or Boiler Explosion;

b. Electrical Currents; and

c. Mechanical Breakdown.

2. When this endorsement is attached to form BP 0200, the following exclusions are deleted and replaced with respect to the coverage provided by this endorsement:

a. **Animals** -- "We" do not pay for loss or damage caused by nesting or infestation, or discharge or release of waste products or secretions of animals, including birds or insects.

However, "we" do pay for any resulting loss or damage caused by an "accident" to "covered equipment".

b. **Contamination Or Deterioration** -- "We" do not pay for loss or damage caused by contamination or deterioration, including corrosion, rust, or any quality, fault, or weakness in property that causes it to damage or destroy itself.

However, "we" do pay for any resulting loss or damage caused by an "accident" to "covered equipment".

c. **Wear And Tear** -- "We" do not pay for loss or damage caused by wear and tear, marring, or scratching.

However, "we" do pay for any resulting loss or damage caused by an "accident" to "covered equipment".

d. **Data And Computer Errors** -- "We" do not pay for loss or damage caused by an error or omission in:

1) the programming, storing, or processing of "data records"; or
2) the design, specification, installation, repair, modification, or testing of "your" "computers".

However, "we" do pay for any resulting loss or damage caused by an "accident" to "covered equipment".

Copyright, American Association of Insurance Services, Inc., 2012

3. With respect to the coverage provided by this endorsement, the following exclusions are added:

   a. **Discharge Of Water** -- "We" do not pay for loss or damage caused by the discharge of water, or other extinguishing agent, to fight a fire.

   b. **Testing** -- "We" do not pay for any loss or damage caused by or resulting from the following tests:

      1) hydrostatic, pneumatic, or gas pressure test of any boiler or pressure vessel; or
      2) an insulation breakdown test of any type of electrical equipment.

   c. **Maintenance** -- "We" do not pay for any loss or damage caused by or resulting from misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

      However, "we" do pay for any resulting loss or damage caused by an "accident" to "covered equipment".

   d. **Other Perils** -- "We" do not pay for loss or damage caused by the perils covered under form BP 0100 or BP 0200.

## HOW MUCH WE PAY

The following deductible provision deletes and replaces any other deductible with respect to the coverage provided by this endorsement:

**Deductible** -- The deductible amount shown in the Schedule above will apply to each loss after all other adjustments have been made.

## ADDITIONAL CONDITIONS

With respect to the coverage provided by this endorsement, the following conditions are added:

1. **Jurisdictional Inspections** -- If any "covered equipment" requires inspection to comply with state or municipal boiler and pressure vessel regulations, "we" agree to perform such inspection on "your" behalf.

   "We" do not warrant that conditions are safe or healthful.

2. **Suspension** -- When any "covered equipment" is discovered to be in or exposed to a dangerous situation or condition, any representative of "ours" may immediately suspend the insurance coverage against loss from an "accident" to that "covered equipment".

   "We" can do this by mailing or delivering a written notice of suspension to "your" address as shown in the "declarations", or at the address where the "covered equipment" is located. Once so suspended, "your" insurance can be reinstated only by an endorsement for that "covered equipment". If "your" insurance is so suspended, "you" will get a pro rata premium refund. But the suspension is effective even if "we" have not yet offered or made a refund.



Copyright, American Association of Insurance Services, Inc., 2012

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# CERTIFIED TERRORISM LOSS

The Businessowners Policy is amended as follows:

1. The following definitions are added.

   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

      1) to be an act of terrorism;
      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
      3) to have resulted in damage:

         a) within the United States; or
         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

      4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and
      5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

   This exclusion does not apply to "certified terrorism loss".

3. The following provision is added.

   If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

4. Under Property Coverages, the following provisions are added.

   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Property Coverages section of this policy provide coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and

   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.



Copyright, American Association of Insurance Services, Inc., 2015

Case ID: 200401698

This endorsement changes the Commercial Liability Coverages provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

# EXCLUSION -- FUNGUS OR RELATED PERILS

The Commercial Liability Coverages are amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

## COMMON POLICY DEFINITIONS

The definition of "fungus or related perils" is deleted and replaced by the following, but only with respect to the Liability Coverages provided by this policy:

"Fungus or related perils" means:

a. a fungus, including but not limited to mildew and mold;

b. a protist, including but not limited to algae and slime mold;

c. wet rot;

d. dry rot;

e. a bacterium; or

f. a chemical, matter, or compound produced or released by a fungus, a protist, wet rot, dry rot, or a bacterium, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

## COMMERCIAL LIABILITY COVERAGES

1. The following is added to the exclusions under Coverage L -- Bodily Injury Liability and Property Damage Liability:

   a. "We" do not pay for actual or alleged "bodily injury" or "property damage" that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to "fungus or related perils".

      However, this exclusion does not apply to:

      1) "bodily injury" or "property damage" that results from a fungus cultivated or harvested for human consumption or a food-borne or beverage-borne bacterium that causes illness commonly known as food poisoning (Food-borne or beverage-borne bacteria that cause illness commonly known as food poisoning include but are not limited to Staphylococcus aureus, Salmonella, Clostridium perfringens, Campylobacter, Listeria monocytogenes, Vibro parahaemolyticus, Bacillus cereus, and Escherichia coli.);
      2) "bodily injury" suffered by an "employee" of an "insured" while performing duties in connection with the "insured's" farming operations, but only to the extent that "bodily injury" to an "insured's" "employees" is covered by this policy; or
      3) "bodily injury" or "property damage" that results from a slip, fall, or loss of footing attributable to a surface made slippery by the presence of or existence of "fungus or related perils".

   b. "We" do not pay for any loss, cost, or expense arising out of any request, demand, or order that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus or related perils".

Copyright, American Association of Insurance Services, Inc., 2012

Case ID: 200401698

c. "We" do not pay for any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "fungus or related perils".

2. The following is added to the exclusions under Coverage P -- Personal and Advertising Injury Liability:

a. "We" do not pay for actual or alleged "personal and advertising injury" that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to "fungus or related perils".

b. "We" do not pay for any loss, cost, or expense arising out of any request, demand, or order that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus or related perils".

c. "We" do not pay for any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "fungus or related perils".

BP 0676 06 12

Copyright, American Association of Insurance Services, Inc., 2012

EXHIBIT "B"

**Alliance Adjustment Group, Inc.**
435 N. Main Street,
Doylestown PA 18901

MICHAEL MESSINA
62 SHERLOCK BOULEVARD
UPPER DARBY PA 19082

Date of Est.: 8/ 8/19
Estimator: JAMES WAGNER
File Number: C18.1527
Date of Loss: 5/25/18
Type of Loss: APR

| | Description | Repairs |
|---|---|---|
| 01 | Demolition | $0.00 |
| 02 | Lumber and Millwork | $6,636.29 |
| 04 | Roofing | $108,899.00 |
| 05 | HVAC | $21,050.00 |
| 06 | Plumbing | $8,394.79 |
| 08 | Insulation | $4,536.02 |
| 09 | Dry Wall | $13,090.99 |
| 11 | Acoustical Ceiling | $11,419.66 |
| 12 | Resilient Floor Covering | $6,854.43 |
| 14 | Carpeting | $5,669.26 |
| 15 | Painting / Wallpapering | $9,764.39 |
| 16 | Electrical | $14,886.32 |
| 21 | Ceramic Tile | $9,897.27 |
| 27 | Appliances | $55,000.00 |
| 28 | Miscellaneous & Hardware | $2,628.33 |
| 99 | Building Cleaning | $1,217.18 |

| | |
|---|---|
| Sub Total: | $279,943.93 |
| Overhead : 10% | $27,994.39 |
| SubTotal: | $307,938.32 |
| Profit: 10% | $30,793.83 |
| SubTotal: | $338,732.16 |
| Ins Tax Permits: 3% | $10,161.96 |
| **Total:** | $348,894.12 |

CERTIFIED NARI®
JAMES WAGNER, CR
Registration No. 4218
REMODELER®

*** - not included in Overhead, Profit, and Ins Tax Permits calculations.**

Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD UPPER DARBY, PA 19082** 8/ 8/19 C18.1527

**DEMO & MISC.** (0' 0" X 0' 0" X 0' 0")
**Offset 1** (0' 0" X 0' 0" X 0' 0")
**Offset 2** (0' 0" X 0' 0" X 0' 0")

Linear Feet: 0 Wall Sf: 0 Ceiling SF: 0 Total SF: 0

| Description | Quantity | Price | Total | # |
|---|---|---|---|---|
| Emergency Services/Mitigation (Open) | 1 | $0.00 ea | $0.00 | 01 |
| | **Total Room Price:** | | $0.00 | |

**ROOF** (0' 0" X 0' 0" X 0' 0")
**Offset 1** (0' 0" X 0' 0" X 0' 0")
**Offset 2** (0' 0" X 0' 0" X 0' 0")

Linear Feet: 0 Wall Sf: 0 Ceiling SF: 0 Total SF: 0

| Description | Quantity | Price | Total | # |
|---|---|---|---|---|
| Replacement Of Roofing (See Spreadsheet) | 1 | $108,899.00 ls | $108,899.00 | 04 |
| | **Total Room Price:** | | $108,899.00 | |

**UNIT 60 MAIN ROOM** (46' 0" X 16' 7" X 7' 8")
**Offset 1** (7' 0" X 2' 11" X 7' 8")
**Offset 2** (0' 0" X 0' 0" X 0' 0")

Linear Feet: 145 Wall Sf: 1112 Ceiling SF: 783 Total SF: 1895

| Description | Quantity | Price | Total | # |
|---|---|---|---|---|
| Clean Wood Framing Members | 415 | $0.49 sf | $203.35 | 99 |
| Post Construction Cleaning (SF) | 783 | $0.23 sf | $180.09 | 99 |
| Vinyl Composition Floor Tile | 783 | $2.75 sf | $2,153.25 | 12 |
| Scrape & Prep Floors | 783 | $1.26 sf | $986.58 | 12 |
| Flash Patch Floor | 783 | $0.60 sf | $469.80 | 12 |
| Drywall Tape & Finish | 415 | $0.62 sf | $257.30 | 09 |
| Drywall 5/8" Walls | 415 | $2.42 sf | $1,004.30 | 09 |
| Remove Drywall | 415 | $0.37 sf | $153.55 | 09 |
| Suspended Ceiling (Fire Rated) | 783 | $3.73 sf | $2,920.59 | 11 |
| Remove Suspended Ceiling | 783 | $0.91 sf | $712.53 | 11 |
| Shoe Molding Pine | 145 | $2.35 lf | $340.75 | 02 |
| Molding Door Set Ranch | 5 | $56.38 st | $281.90 | 02 |
| Seal Walls | 1112 | $0.39 sf | $433.68 | 15 |
| Paint Walls | 1112 | $0.55 sf | $611.60 | 15 |
| Paint Base Trim | 145 | $0.93 lf | $134.85 | 15 |
| Paint Shoe Molding | 145 | $0.93 lf | $134.85 | 15 |
| Paint Doors Oneside | 4 | $22.52 un | $90.08 | 15 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of ou inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

MICHAEL MESSINA 62 SHERLOCK BOULEVARD UPPER DARBY, PA 19082 8/ 8/19
C18.1527

| | | | | |
|---|---|---|---|---|
| Paint Door Trim & Jamb 1 side | 5 | $18.98 un | $94.90 | 15 |
| Paint Windows Oneside | 5 | $29.43 un | $147.15 | 15 |
| Paint Window Trim Oneside | 5 | $18.40 un | $92.00 | 15 |
| R/Reset Contents & Protect | 5 | $37.53 ea | $187.65 | 28 |
| Remove & Reinstall Draperies | 1 | $63.45 ea | $63.45 | 28 |
| Remove & Reset Door | 3 | $42.05 ea | $126.15 | 02 |
| Remove & Reset Heater Vent | 4 | $8.10 ea | $32.40 | 28 |
| Remove & Reset Switch Plate | 15 | $3.00 ea | $45.00 | 16 |
| Remove & Reset Mirror | 1 | $61.63 ea | $61.63 | 28 |
| Switch Single Pole | 2 | $75.37 ea | $150.74 | 16 |
| Receptacles Duplex | 8 | $48.50 ea | $388.00 | 16 |
| Electrical Feeds 20' Romex | 10 | $48.50 ea | $485.00 | 16 |
| Remove & Reset Thermostat | 1 | $25.03 ea | $25.03 | 16 |
| Remove & Reset Smoke Detector | 2 | $23.46 ea | $46.92 | 16 |
| Fluorescent Fixture 4'-2 Lite) | 11 | $180.64 ea | $1,987.04 | 16 |
| Remove & Reset Alarm Fixture | 5 | $50.63 ea | $253.15 | 16 |
| Celotex Sheathing 1/2" | 415 | $1.89 sf | $784.35 | 02 |
| | **Total Room Price:** | | $16,039.61 | |

**UNIT 60 BATHROOM** (10' 0" X 5' 1" X 7' 6")
**Offset 1** (0' 0" X 0' 0" X 0' 0")
**Offset 2** (0' 0" X 0' 0" X 0' 0")

Linear Feet: 30 Wall Sf: 226 Ceiling SF: 51 Total SF: 277

| Description | Quantity | Price | Total | # |
|---|---|---|---|---|
| Post Construction Cleaning (SF) | 51 | $0.23 sf | $11.73 | 99 |
| Vinyl Composition Floor Tile | 51 | $2.75 sf | $140.25 | 12 |
| Scrape & Prep Floors | 51 | $1.26 sf | $64.26 | 12 |
| Flash Patch Floor | 51 | $0.60 sf | $30.60 | 12 |
| 4" Rubber Base Cove Molding | 30 | $3.31 lf | $99.30 | 02 |
| Suspended Ceiling (Fire Rated) | 51 | $3.73 sf | $190.23 | 11 |
| Remove Suspended Ceiling | 51 | $0.91 sf | $46.41 | 11 |
| Molding Door Set Ranch | 1 | $56.38 st | $56.38 | 02 |
| Seal Walls | 226 | $0.39 sf | $88.14 | 15 |
| Paint Walls | 226 | $0.55 sf | $124.30 | 15 |
| Paint Doors Oneside | 1 | $22.52 un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 1 | $18.98 un | $18.98 | 15 |
| R/Reset Contents & Protect | 1 | $37.53 ea | $37.53 | 28 |
| Remove & Reset Light Fixture | 2 | $33.43 ea | $66.86 | 16 |
| Remove & Reset Heater Vent | 3 | $8.10 ea | $24.30 | 28 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

| | | | | | |
|---|---|---|---|---|---|
| Remove & Reset Switch Plate | 3 | $3.00 | ea | $9.00 | 16 |
| Remove & Reset Bath Accessories | 5 | $42.17 | ea | $210.85 | 28 |
| Remove & Reset Mirror | 1 | $61.63 | ea | $61.63 | 28 |
| Remove & Reset Toilet | 1 | $150.63 | ea | $150.63 | 06 |
| | **Total Room Price:** | | | $1,453.90 | |

**UNIT 60 HEATER CLOSET** (3' 4" X 2' 7" X 6' 6" )
**Offset 1** (3' 2" X 2' 7" X 6' 6" )
**Offset 2** (0' 0" X 0' 0" X 0' 0" )

Linear Feet: 23 Wall Sf: 152 Ceiling SF: 17 Total SF: 168

| **Description** | **Quantity** | **Price** | | **Total** | **#** |
|---|---|---|---|---|---|
| Post Construction Cleaning (SF) | 17 | $0.23 | sf | $3.91 | 99 |
| Suspended Ceiling (Fire Rated) | 17 | $3.73 | sf | $63.41 | 11 |
| Remove Suspended Ceiling | 17 | $0.91 | sf | $15.47 | 11 |
| Seal Walls | 152 | $0.39 | sf | $59.28 | 15 |
| Paint Walls | 152 | $0.55 | sf | $83.60 | 15 |
| Paint Doors Oneside | 2 | $22.52 | un | $45.04 | 15 |
| Paint Floor | 17 | $0.69 | sf | $11.73 | 15 |
| Paint Shelf & Pin Rail | 2 | $44.23 | un | $88.46 | 15 |
| Gas Forced Air HVAC Unit (Open) | 1 | $5,600.00 | ls | $5,600.00 | 05 |
| Electric Water Heater - 40 Gallon | 1 | $1,883.20 | ea | $1,883.20 | 06 |
| | **Total Room Price:** | | | $7,854.10 | |

**UNIT62 MAIN** (43' 1" X 16' 10" X 8' 0" )
**Offset 1** (7' 11" X 3' 0" X 8' 0" )
**Offset 2** (3' 6" X 3' 1" X 8' 0" )

Linear Feet: 155 Wall Sf: 1239 Ceiling SF: 760 Total SF: 1998

| **Description** | **Quantity** | **Price** | | **Total** | **#** |
|---|---|---|---|---|---|
| Post Construction Cleaning (SF) | 760 | $0.23 | sf | $174.80 | 99 |
| Ceramic Wall Tile Mastic (Avg) | 321 | $13.65 | sf | $4,381.65 | 21 |
| Remove Tile | 321 | $5.41 | sf | $1,736.61 | 21 |
| Cement Backerboard 1/2" Flr | 321 | $3.13 | sf | $1,004.73 | 21 |
| Drywall Tape & Finish | 1239 | $0.62 | sf | $768.18 | 09 |
| Drywall 5/8" Walls | 1239 | $2.42 | sf | $2,998.38 | 09 |
| Remove Drywall | 1239 | $0.37 | sf | $458.43 | 09 |
| Fiberglass Insulation 8-1/2" | 760 | $1.23 | sf | $934.80 | 08 |
| Remove Insulation | 760 | $0.81 | sf | $615.60 | 08 |
| Suspended Ceiling (Fire Rated) | 760 | $3.73 | sf | $2,834.80 | 11 |
| Remove Suspended Ceiling | 760 | $0.91 | sf | $691.60 | 11 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

| | | | | | |
|---|---|---|---|---|---|
| 6" OG Style Base Trim (1 piece) | 155 | $4.02 | lf | $623.10 | 02 |
| Molding Door Set Ranch | 5 | $56.38 | st | $281.90 | 02 |
| Seal Walls | 1239 | $0.39 | sf | $483.21 | 15 |
| Paint Walls | 1239 | $0.55 | sf | $681.45 | 15 |
| Paint Base Trim | 155 | $0.93 | lf | $144.15 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 2 | $18.98 | un | $37.96 | 15 |
| Paint Windows Oneside | 5 | $29.43 | un | $147.15 | 15 |
| Paint Window Trim Oneside | 5 | $18.40 | un | $92.00 | 15 |
| Paint Lip or OG Molding | 155 | $0.93 | lf | $144.15 | 15 |
| Stain Door | 3 | $69.71 | ea | $209.13 | 15 |
| Stain Door Trim | 3 | $67.42 | ea | $202.26 | 15 |
| Paint Floor | 1 | $0.69 | sf | $0.69 | 15 |
| Door Exterior Cross Buck | 1 | $548.15 | ea | $548.15 | 02 |
| R/Reset Contents & Protect | 12 | $37.53 | ea | $450.36 | 28 |
| Remove & Reset Blinds | 1 | $22.95 | ea | $22.95 | 02 |
| Remove & Reset Door | 1 | $42.05 | ea | $42.05 | 02 |
| Remove & Reset Heater Vent | 3 | $8.10 | ea | $24.30 | 28 |
| Remove & Reset Switch Plate | 16 | $3.00 | ea | $48.00 | 16 |
| Switch Single Pole | 8 | $75.37 | ea | $602.96 | 16 |
| Receptacles Duplex | 14 | $48.50 | ea | $679.00 | 16 |
| Receptacle Ground Fault | 3 | $88.60 | ea | $265.80 | 16 |
| Electrical Feeds 20' Romex | 22 | $48.50 | ea | $1,067.00 | 16 |
| Thermostat W/Wire | 1 | $147.23 | ea | $147.23 | 16 |
| Smoke Detector | 1 | $87.04 | ea | $87.04 | 16 |
| Fluorescent Fixture 4'-2 Lite) | 8 | $180.64 | ea | $1,445.12 | 16 |
| Alarm Fixture | 3 | $200.70 | ea | $602.10 | 16 |
| Restaurant Equipment (Open) | 1 | $55,000.00 | ls | $55,000.00 | 27 |
| HVAC Ductwork (Open) | 1 | $4,250.00 | ls | $4,250.00 | 05 |
| | | **Total Room Price:** | | $84,951.31 | |

**UNIT 62 BATHROOM** (8' 6" X 7' 9" X 8' 0 ")
**Offset 1** (4' 11" X 2' 6" X 8' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 47 Wall Sf: 379 Ceiling SF: 78 Total SF: 457

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Post Construction Cleaning (SF) | 78 | $0.23 | sf | $17.94 | 99 |
| Drywall Tape & Finish | 96 | $0.62 | sf | $59.52 | 09 |
| Drywall 5/8" Walls | 96 | $2.42 | sf | $232.32 | 09 |



Alliance
ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19 C18.1527

| | | | | |
|---|---|---|---|---|
| Remove Drywall | 96 | $0.37 sf | $35.52 | 09 |
| Switch Single Pole | 2 | $75.37 ea | $150.74 | 16 |
| Receptacle Ground Fault | 1 | $88.60 ea | $88.60 | 16 |
| Residential Light Fixture Good | 2 | $130.50 ea | $261.00 | 16 |
| Exhaust Fan (Ceiling) | 1 | $189.35 ea | $189.35 | 16 |
| Note: This Room Was Under Construction At Time Of Loss. | 1 | $0.00 ea | $0.00 | 01 |
| | **Total Room Price:** | | $1,034.99 | |

**UNIT 62 HEAT CLOSET** (3' 5" X 2' 8" X 7' 0 ")
**Offset 1** (3' 1" X 2' 11" X 7' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 24 Wall Sf: 169 Ceiling SF: 18 Total SF: 187

| **Description** | **Quantity** | **Price** | **Total** | **#** |
|---|---|---|---|---|
| Clean Wood Framing Members | 18 | $0.49 sf | $8.82 | 99 |
| Post Construction Cleaning (SF) | 18 | $0.23 sf | $4.14 | 99 |
| Suspended Ceiling (Fire Rated) | 18 | $3.73 sf | $67.14 | 11 |
| Remove Suspended Ceiling | 18 | $0.91 sf | $16.38 | 11 |
| Stain Door | 2 | $69.71 ea | $139.42 | 15 |
| Spray Seal Joist | 18 | $0.74 sf | $13.32 | 15 |
| Remove Paneling (SF) | 84 | $1.17 sf | $98.28 | 02 |
| Paneling Good Grade Wood | 84 | $3.30 sf | $277.20 | 02 |
| Remove & Reset Light Fixture | 1 | $33.43 ea | $33.43 | 16 |
| Gas Forced Air HVAC Unit (Open) | 1 | $5,600.00 ls | $5,600.00 | 05 |
| Electric Water Heater - 40 Gallon | 1 | $1,883.20 ea | $1,883.20 | 06 |
| | **Total Room Price:** | | $8,141.33 | |

**UNIT 64 MAIN** (14' 6" X 13' 11" X 7' 10 ")
**Offset 1** (8' 3" X 4' 11" X 7' 10 ")
**Offset 2** (22' 8" X 12' 0" X 7' 10 ")

Linear Feet: 152 Wall Sf: 1195 Ceiling SF: 514 Total SF: 1709

| **Description** | **Quantity** | **Price** | **Total** | **#** |
|---|---|---|---|---|
| Post Construction Cleaning (SF) | 514 | $0.23 sf | $118.22 | 99 |
| Vinyl Composition Floor Tile | 514 | $2.75 sf | $1,413.50 | 12 |
| Scrape & Prep Floors | 514 | $1.26 sf | $647.64 | 12 |
| Flash Patch Floor | 514 | $0.60 sf | $308.40 | 12 |
| Fiberglass Insulation 8-1/2" | 514 | $1.23 sf | $632.22 | 08 |
| Sprayfoam Insulation | 514 | $4.40 sf | $2,261.60 | 08 |
| Suspended Ceiling (Fire Rated) | 514 | $3.73 sf | $1,917.22 | 11 |
| Remove Suspended Ceiling | 514 | $0.91 sf | $467.74 | 11 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

| | | | | | |
|---|---|---|---|---|---|
| Molding Door Set Colonial | 1 | $56.37 | st | $56.37 | 02 |
| Molding Window Set Colonial | 1 | $49.43 | st | $49.43 | 02 |
| Seal Walls | 915 | $0.39 | sf | $356.85 | 15 |
| Paint Walls | 915 | $0.55 | sf | $503.25 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 1 | $18.98 | un | $18.98 | 15 |
| Paint Windows Oneside | 5 | $29.43 | un | $147.15 | 15 |
| Paint Window Trim Oneside | 5 | $18.40 | un | $92.00 | 15 |
| R/Reset Contents & Protect | 8 | $37.53 | ea | $300.24 | 28 |
| Remove & Reinstall Draperies | 1 | $63.45 | ea | $63.45 | 28 |
| Remove & Reset Heater Vent | 4 | $8.10 | ea | $32.40 | 28 |
| Remove & Reset Laundry Tub | 1 | $97.62 | ea | $97.62 | 06 |
| R/Reset Sink Faucet & Drain | 3 | $159.73 | ea | $479.19 | 06 |
| Switch Single Pole | 6 | $75.37 | ea | $452.22 | 16 |
| Receptacle Ground Fault | 9 | $88.60 | ea | $797.40 | 16 |
| Electrical Feeds 20' Romex | 10 | $48.50 | ea | $485.00 | 16 |
| Residential Light Fixture Good | 4 | $130.50 | ea | $522.00 | 16 |
| Fluorescent Fixture 4'-2 Lite) | 4 | $180.64 | ea | $722.56 | 16 |
| Alarm Fixture | 1 | $200.70 | ea | $200.70 | 16 |
| Remove & Reset Alarm Fixture | 2 | $50.63 | ea | $101.26 | 16 |
| Phone Jack & Wire | 1 | $75.10 | ea | $75.10 | 16 |
| CATV Jack | 1 | $159.58 | ea | $159.58 | 16 |
| Remove & Reset Sink | 2 | $188.42 | ea | $376.84 | 06 |
| Check & Service Electric System | 1 | $209.08 | ea | $209.08 | 16 |
| | **Total Room Price:** | | | $14,087.73 | |

**UNIT 64 HALL** (8' 6" X 3' 5" X 7' 10 ")
**Offset 1** (0' 0" X 0' 0" X 0' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 24 Wall Sf: 187 Ceiling SF: 29 Total SF: 216

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Post Construction Cleaning (SF) | 29 | $0.23 | sf | $6.67 | 99 |
| Vinyl Composition Floor Tile | 29 | $2.75 | sf | $79.75 | 12 |
| Scrape & Prep Floors | 29 | $1.26 | sf | $36.54 | 12 |
| Flash Patch Floor | 29 | $0.60 | sf | $17.40 | 12 |
| Drywall Tape & Finish | 155 | $0.62 | sf | $96.10 | 09 |
| Drywall 5/8" Walls | 155 | $2.42 | sf | $375.10 | 09 |
| Remove Drywall | 155 | $0.37 | sf | $57.35 | 09 |
| Fiberglass Insulation 8-1/2" | 29 | $1.23 | sf | $35.67 | 08 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the Insured(s) or the Insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

| | | | | | |
|---|---|---|---|---|---|
| Remove Insulation | 29 | $0.81 | sf | $23.49 | 08 |
| Suspended Ceiling (Average) | 29 | $2.67 | sf | $77.43 | 11 |
| Remove Suspended Ceiling | 29 | $0.91 | sf | $26.39 | 11 |
| Molding Door Set Ranch | 2 | $56.38 | st | $112.76 | 02 |
| Seal Walls | 155 | $0.39 | sf | $60.45 | 15 |
| Paint Walls | 6 | $0.55 | sf | $3.30 | 15 |
| Stain Door | 2 | $69.71 | ea | $139.42 | 15 |
| Stain Door Trim | 2 | $67.42 | ea | $134.84 | 15 |
| Door Prehung Hollow (Birch) | 2 | $312.85 | ea | $625.70 | 02 |
| R/Reset Contents & Protect | 1 | $37.53 | ea | $37.53 | 28 |
| Remove & Reset Heater Vent | 1 | $8.10 | ea | $8.10 | 28 |
| Remove & Reset Alarm Fixture | 2 | $50.63 | ea | $101.26 | 16 |
| Remove & Reset Door Hardware | 2 | $21.20 | ea | $42.40 | 28 |
| | **Total Room Price:** | | | $2,097.65 | |

**UNIT 64 BATHROOM** (4' 0" X 3' 11" X 7' 10 ")
**Offset 1** (0' 0" X 0' 0" X 0' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 16 Wall Sf: 124 Ceiling SF: 16 Total SF: 140

| **Description** | **Quantity** | **Price** | | **Total** | **#** |
|---|---|---|---|---|---|
| Clean Wood Framing Members | 140 | $0.49 | sf | $68.60 | 99 |
| Post Construction Cleaning (SF) | 16 | $0.23 | sf | $3.68 | 99 |
| Marble Door Sill | 1 | $31.68 | ea | $31.68 | 21 |
| Ceramic Tile In Mastic (Avg) | 16 | $13.65 | sf | $218.40 | 21 |
| Remove Tile | 16 | $5.41 | sf | $86.56 | 21 |
| Drywall Tape & Finish | 124 | $0.62 | sf | $76.88 | 09 |
| Drywall 5/8" Walls | 124 | $2.42 | sf | $300.08 | 09 |
| Remove Drywall | 124 | $0.37 | sf | $45.88 | 09 |
| Fiberglass Insulation 8-1/2" | 16 | $1.23 | sf | $19.68 | 08 |
| Remove Insulation | 16 | $0.81 | sf | $12.96 | 08 |
| Colonial Base Oak (LF) | 16 | $3.36 | lf | $53.76 | 02 |
| Molding Door Set Colonial | 1 | $56.37 | st | $56.37 | 02 |
| Seal Walls | 124 | $0.39 | sf | $48.36 | 15 |
| Paint Walls | 124 | $0.55 | sf | $68.20 | 15 |
| Stain Baseboard Trim | 16 | $2.73 | lf | $43.68 | 15 |
| Stain Door | 1 | $69.71 | ea | $69.71 | 15 |
| Stain Door Trim | 1 | $67.42 | ea | $67.42 | 15 |
| Spray Seal Joist | 140 | $0.74 | sf | $103.60 | 15 |
| R/Reset Contents & Protect | 1 | $37.53 | ea | $37.53 | 28 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection. Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

| | | | | |
|---|---|---|---|---|
| Remove & Reset Bath Accessories | 1 | $42.17 ea | $42.17 | 28 |
| R/Reset Sink Faucet & Drain | 1 | $159.73 ea | $159.73 | 06 |
| Switch Single Pole | 3 | $75.37 ea | $226.11 | 16 |
| Receptacle Ground Fault | 2 | $88.60 ea | $177.20 | 16 |
| Electrical Feeds 20' Romex | 4 | $48.50 ea | $194.00 | 16 |
| Exhaust Fan (Ceiling) | 1 | $189.35 ea | $189.35 | 16 |
| Remove & Reset Toilet | 1 | $150.63 ea | $150.63 | 06 |
| Vanity Base 24" | 1 | $393.17 ea | $393.17 | 06 |
| Remove & Reset Vanity Top | 1 | $75.10 ea | $75.10 | 06 |
| | **Total Room Price:** | | $3,020.49 | |

**UNIT 64 HEATER CLOSET** (4' 1" X 2' 7" X 7' 0 ")
**Offset 1** (0' 0" X 0' 0" X 0' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 13 Wall Sf: 93 Ceiling SF: 11 Total SF: 104

| **Description** | **Quantity** | **Price** | **Total** | **#** |
|---|---|---|---|---|
| Post Construction Cleaning (SF) | 11 | $0.23 sf | $2.53 | 99 |
| Stain Door | 1 | $69.71 ea | $69.71 | 15 |
| Receptacles Duplex | 1 | $48.50 ea | $48.50 | 16 |
| Gas Forced Air HVAC Unit (Open) | 1 | $5,600.00 ls | $5,600.00 | 05 |
| Electric Water Heater (20 Gallon) | 1 | $903.21 ea | $903.21 | 06 |
| | **Total Room Price:** | | $6,623.95 | |

**UNIT 66 REAR DINING** (27' 3" X 9' 5" X 8' 0 ")
**Offset 1** (13' 1" X 8' 6" X 9' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 116 Wall Sf: 975 Ceiling SF: 368 Total SF: 1343

| **Description** | **Quantity** | **Price** | **Total** | **#** |
|---|---|---|---|---|
| Scrape & Prep Floors | 368 | $1.26 sf | $463.68 | 12 |
| Drywall Tape & Finish | 325 | $0.62 sf | $201.50 | 09 |
| Drywall 5/8" Walls | 325 | $2.42 sf | $786.50 | 09 |
| Remove Drywall | 325 | $0.37 sf | $120.25 | 09 |
| Suspended Ceiling Reveal Edge | 252 | $4.28 sf | $1,078.56 | 11 |
| Remove Suspended Ceiling | 252 | $0.91 sf | $229.32 | 11 |
| Molding Base Colonial | 90 | $2.90 lf | $261.00 | 02 |
| Seal Walls | 795 | $0.39 sf | $310.05 | 15 |
| Seal Ceiling | 114 | $0.39 sf | $44.46 | 15 |
| Seal Walls & Ceiling | 795 | $0.39 sf | $310.05 | 15 |
| Paint Walls | 114 | $0.55 sf | $62.70 | 15 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

MICHAEL MESSINA 62 SHERLOCK BOULEVARD UPPER DARBY, PA 19082 8/ 8/19 C18.1527

| | | | | | |
|---|---|---|---|---|---|
| Paint Base Trim | 90 | $0.93 | lf | $83.70 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 4 | $18.98 | un | $75.92 | 15 |
| Paint Chair Rail | 85 | $0.90 | lf | $76.50 | 15 |
| Carpet Tear Out | 46 | $3.68 | sy | $169.28 | 14 |
| Carpet Installation | 46 | $4.84 | sy | $222.64 | 14 |
| Carpet Commercial (28 OZ) | 46 | $38.01 | sy | $1,748.46 | 14 |
| R/Reset Contents & Protect | 6 | $37.53 | ea | $225.18 | 28 |
| Remove & Reset Door | 1 | $42.05 | ea | $42.05 | 02 |
| Remove & Reset Heater Vent | 1 | $8.10 | ea | $8.10 | 28 |
| Remove & Reset Switch Plate | 2 | $3.00 | ea | $6.00 | 16 |
| R & R Air Conditioner Window | 1 | $98.83 | ea | $98.83 | 16 |
| Remove & Reset Shelving | 3 | $42.04 | ea | $126.12 | 02 |
| Remove & Reset Speakers | 1 | $43.42 | ea | $43.42 | 28 |
| Remove & Reset Light Fixture | 5 | $33.43 | ea | $167.15 | 16 |
| Remove & Reset Chandelier | 1 | $38.54 | ea | $38.54 | 16 |
| Remove & Reset Alarm Fixture | 1 | $50.63 | ea | $50.63 | 16 |
| | **Total Room Price:** | | | $7,073.11 | |

**UNIT 66 MIDDLE DINING ROO** (12' 10" X 6' 7" X 6' 8")
**Offset 1** (4' 7" X 2' 3" X 6' 4")
**Offset 2** (0' 0" X 0' 0" X 0' 0")

Linear Feet: 52 Wall Sf: 345 Ceiling SF: 95 Total SF: 440

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Clean Wood Framing Members | 49 | $0.49 | sf | $24.01 | 99 |
| Post Construction Cleaning (SF) | 95 | $0.23 | sf | $21.85 | 99 |
| 4" Rubber Base Cove Molding | 26 | $3.31 | lf | $86.06 | 02 |
| Drywall Tape & Finish | 220 | $0.62 | sf | $136.40 | 09 |
| Drywall 5/8" Walls & Ceiling | 220 | $2.42 | sf | $532.40 | 09 |
| Remove Drywall | 220 | $0.37 | sf | $81.40 | 09 |
| Seal Walls & Ceiling | 220 | $0.39 | sf | $85.80 | 15 |
| Paint Walls & Ceiling | 220 | $0.55 | sf | $121.00 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 1 | $18.98 | un | $18.98 | 15 |
| Paint Shelf & Pin Rail | 1 | $44.23 | un | $44.23 | 15 |
| Carpet Tear Out | 11 | $3.68 | sy | $40.48 | 14 |
| Carpet Installation | 11 | $4.84 | sy | $53.24 | 14 |
| Carpet Padding (Good Grade) | 11 | $4.60 | sy | $50.60 | 14 |
| Carpet Commercial (28 OZ) | 12 | $38.01 | sy | $456.12 | 14 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the Insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

| | | | | | |
|---|---|---|---|---|---|
| Carpet Treads & Risers | 4 | $33.03 | sy | $132.12 | 14 |
| Remove & Reset Door | 1 | $42.05 | ea | $42.05 | 02 |
| Remove & Reset Light Fixture | 2 | $33.43 | ea | $66.86 | 16 |
| Celotex Sheathing 1/2" | 49 | $1.89 | sf | $92.61 | 02 |
| | **Total Room Price:** | | | $2,108.73 | |

**UNIT 66 FRONT DINING** (20' 8" X 18' 6" X 9' 0 " )
**Offset 1** (0' 0" X 0' 0" X 0' 0 " )
**Offset 2** (0' 0" X 0' 0" X 0' 0 " )

Linear Feet: 78 Wall Sf: 705 Ceiling SF: 382 Total SF: 1087

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Clean Wood Framing Members | 544 | $0.49 | sf | $266.56 | 99 |
| Post Construction Cleaning (SF) | 382 | $0.23 | sf | $87.86 | 99 |
| Drywall Tape & Finish | 1087 | $0.62 | sf | $673.94 | 09 |
| Drywall 5/8" Walls & Ceiling | 1087 | $2.42 | sf | $2,630.54 | 09 |
| Remove Drywall | 1087 | $0.37 | sf | $402.19 | 09 |
| 6" OG Style Base Trim (1 piece) | 78 | $4.02 | lf | $313.56 | 02 |
| Seal Walls | 705 | $0.39 | sf | $274.95 | 15 |
| Paint Walls | 705 | $0.55 | sf | $387.75 | 15 |
| Paint Base Trim | 78 | $0.93 | lf | $72.54 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 1 | $18.98 | un | $18.98 | 15 |
| Paint Windows Oneside | 3 | $29.43 | un | $88.29 | 15 |
| Paint Window Trim Oneside | 3 | $18.40 | un | $55.20 | 15 |
| Paint Chair Rail | 78 | $0.90 | lf | $70.20 | 15 |
| Paint Lip or OG Molding | 78 | $0.93 | lf | $72.54 | 15 |
| Molding Chair Rail 3-1/2" | 78 | $3.60 | lf | $280.80 | 02 |
| Carpet Tear Out | 42 | $3.68 | sy | $154.56 | 14 |
| Carpet Installation | 42 | $4.84 | sy | $203.28 | 14 |
| Carpet Padding (Good Grade) | 42 | $4.60 | sy | $193.20 | 14 |
| Carpet Commercial (28 OZ) | 48 | $38.01 | sy | $1,824.48 | 14 |
| R/Reset Contents & Protect | 8 | $37.53 | ea | $300.24 | 28 |
| Remove & Reinstall Draperies | 1 | $63.45 | ea | $63.45 | 28 |
| Remove & Reset Light Fixture | 7 | $33.43 | ea | $234.01 | 16 |
| Remove & Reset Heater Vent | 1 | $8.10 | ea | $8.10 | 28 |
| Remove & Reset Switch Plate | 5 | $3.00 | ea | $15.00 | 16 |
| R & R Air Conditioner Window | 1 | $98.83 | ea | $98.83 | 16 |
| Remove & Reset Alarm Fixture | 3 | $50.63 | ea | $151.89 | 16 |
| Celotex Sheathing 1/2" | 176 | $1.89 | sf | $332.64 | 02 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the Insured(s) or the Insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

**Total Room Price:** $9,298.10

**UNIT 66 HALL** (18' 1" X 3' 2" X 7' 0" )
**Offset 1** (0' 0" X 0' 0" X 0' 0" )
**Offset 2** (0' 0" X 0' 0" X 0' 0" )

Linear Feet: 42 Wall Sf: 298 Ceiling SF: 57 Total SF: 355

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Scrape & Prep Floors | 23 | $1.26 | sf | $28.98 | 12 |
| Flash Patch Floor | 23 | $0.60 | sf | $13.80 | 12 |
| Ceramic Tile In Mastic (Avg) | 23 | $13.65 | sf | $313.95 | 21 |
| Remove Tile | 23 | $5.41 | sf | $124.43 | 21 |
| Drywall Tape & Finish | 178 | $0.62 | sf | $110.36 | 09 |
| Drywall 5/8" Walls & Ceiling | 178 | $2.42 | sf | $430.76 | 09 |
| Remove Drywall | 178 | $0.37 | sf | $65.86 | 09 |
| Molding Base Colonial | 14 | $2.90 | lf | $40.60 | 02 |
| Seal Walls | 298 | $0.39 | sf | $116.22 | 15 |
| Seal Ceiling | 57 | $0.39 | sf | $22.23 | 15 |
| Paint Walls | 298 | $0.55 | sf | $163.90 | 15 |
| Paint Ceiling | 57 | $0.55 | sf | $31.35 | 15 |
| Paint Base Trim | 14 | $0.93 | lf | $13.02 | 15 |
| Paint Doors Oneside | 3 | $22.52 | un | $67.56 | 15 |
| Paint Door Trim & Jamb 1 side | 3 | $18.98 | un | $56.94 | 15 |
| Paint Chair Rail | 24 | $0.90 | lf | $21.60 | 15 |
| Remove Paneling (SF) | 64 | $1.17 | sf | $74.88 | 02 |
| Bead Board Paneling | 64 | $3.90 | sf | $249.60 | 02 |
| Carpet Tear Out | .5 | $3.68 | sy | $18.40 | 14 |
| Carpet Installation | 5 | $4.84 | sy | $24.20 | 14 |
| Carpet Padding (Good Grade) | 5 | $4.60 | sy | $23.00 | 14 |
| Carpet Commercial (28 OZ) | 5 | $38.01 | sy | $190.05 | 14 |
| Carpet Treads & Risers | 5 | $33.03 | sy | $165.15 | 14 |
| Remove & Reset Door | 3 | $42.05 | ea | $126.15 | 02 |
| Remove & Reset Light Fixture | 2 | $33.43 | ea | $66.86 | 16 |
| Remove & Reset Bannister | 6 | $5.22 | lf | $31.32 | 02 |
| Remove & Reset Door Hardware | 3 | $21.20 | ea | $63.60 | 28 |

**Total Room Price:** $2,654.77



Alliance
ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the Insured(s) or the Insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD** **UPPER DARBY, PA 19082** 8/ 8/19
C18.1527

**UNIT 66 MENS ROOM** (6' 10" X 5' 1" X 7' 0 ")
**Offset 1** (0' 0" X 0' 0" X 0' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 24 Wall Sf: 167 Ceiling SF: 35 Total SF: 202

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Post Construction Cleaning (SF) | 35 | $0.23 | sf | $8.05 | 99 |
| Suspended Ceiling (Average) | 18 | $2.67 | sf | $48.06 | 11 |
| Remove Suspended Ceiling | 18 | $0.91 | sf | $16.38 | 11 |
| Seal Walls | 167 | $0.39 | sf | $65.13 | 15 |
| Seal Ceiling | 18 | $0.39 | sf | $7.02 | 15 |
| Paint Walls | 167 | $0.55 | sf | $91.85 | 15 |
| Paint Ceiling | 18 | $0.55 | sf | $9.90 | 15 |
| Paint Base Trim | 12 | $0.93 | lf | $11.16 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 3 | $18.98 | un | $56.94 | 15 |
| R/Reset Contents & Protect | 1 | $37.53 | ea | $37.53 | 28 |
| Remove & Reset Light Fixture | 2 | $33.43 | ea | $66.86 | 16 |
| Remove & Reset Switch Plate | 1 | $3.00 | ea | $3.00 | 16 |
| Remove & Reset Mirror | 1 | $61.63 | ea | $61.63 | 28 |
| R/Reset Sink Faucet & Drain | 1 | $159.73 | ea | $159.73 | 06 |
| Remove & Reset Toilet | 1 | $150.63 | ea | $150.63 | 06 |
| Remove & Reset Sink Basin | 1 | $101.03 | ea | $101.03 | 06 |
| Vanity Base 48" | 1 | $577.15 | ea | $577.15 | 06 |
| Remove & Reset Vanity Top | 1 | $75.10 | ea | $75.10 | 06 |
| | **Total Room Price:** | | | $1,569.67 | |

**UNIT66 WOMENS ROOM** (5' 5" X 3' 6" X 7' 0 ")
**Offset 1** (0' 0" X 0' 0" X 0' 0 ")
**Offset 2** (0' 0" X 0' 0" X 0' 0 ")

Linear Feet: 18 Wall Sf: 125 Ceiling SF: 19 Total SF: 144

| Description | Quantity | Price | | Total | # |
|---|---|---|---|---|---|
| Post Construction Cleaning (SF) | 19 | $0.23 | sf | $4.37 | 99 |
| Ceramic Wall Tile Mastic (Avg) | 62 | $13.65 | sf | $846.30 | 21 |
| Ceramic Tile In Mastic (Avg) | 19 | $13.65 | sf | $259.35 | 21 |
| Remove Tile | 81 | $5.41 | sf | $438.21 | 21 |
| Ceramic Inlaid Border (LF) | 15 | $30.36 | lf | $455.40 | 21 |
| Seal Walls | 62 | $0.39 | sf | $24.18 | 15 |
| Seal Ceiling | 19 | $0.39 | sf | $7.41 | 15 |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

**MICHAEL MESSINA** **62 SHERLOCK BOULEVARD UPPER DARBY, PA 19082** 8/ 8/19 C18.1527

| | | | | | |
|---|---|---|---|---|---|
| Paint Walls | 62 | $0.55 | sf | $34.10 | 15 |
| Paint Ceiling | 19 | $0.55 | sf | $10.45 | 15 |
| Paint Doors Oneside | 1 | $22.52 | un | $22.52 | 15 |
| Paint Door Trim & Jamb 1 side | 1 | $18.98 | un | $18.98 | 15 |
| R/Reset Contents & Protect | 1 | $37.53 | ea | $37.53 | 28 |
| Remove & Reset Light Fixture | 1 | $33.43 | ea | $33.43 | 16 |
| Remove & Reset Switch Plate | 1 | $3.00 | ea | $3.00 | 16 |
| Remove & Reset Mirror | 1 | $61.63 | ea | $61.63 | 28 |
| R/Reset Sink Faucet & Drain | 1 | $159.73 | ea | $159.73 | 06 |
| Remove & Reset Toilet | 1 | $150.63 | ea | $150.63 | 06 |
| Vanity Base 24" | 1 | $393.17 | ea | $393.17 | 06 |
| Remove & Reset Vanity Top | 1 | $75.10 | ea | $75.10 | 06 |
| | **Total Room Price:** | | | $3,035.49 | |
| | **Total Estimate Price:** | | | $279,943.93 | |



Alliance ADJUSTMENT GROUP

This estimate is based upon representations made directly to Alliance Adjustment Group by the insured(s) or the insured(s) representative as to the location and date of origin of physical damage to the subject property. Further, this estimate, at the time of its preparation, represents the opinion of Alliance Adjustment Group as to the scope and cost of repairs to restore the property to its pre-loss condition, to the extent possible. This estimate contains the replacement cost value of the loss and, unless noted, does not consider or specify the presence or absence of pre-existing damage such as wear and tear, prior loss, or any other adverse condition in those areas included in our estimate. While it is possible that such adverse conditions existed at the time of our inspection, Alliance Adjustment Group considers this an issue of depreciation to be addressed with the insurer. Alliance Adjustment Group reserves the right to revise this estimate at any time upon receipt or discovery of new or additional information. The estimate may be based on preliminary review and subject to corrections, revisions, additions and deletions. The estimate may be compiled by the use of computer or other electronically generated means. Any errors or omissions, either by virtue of misprint or by incorrect entries by a data processor, should be considered a typographical error. We attempt to proof read all estimate entries, however the information contained in the estimate has not been subject to scrupulous auditing and review.

Case ID: 200401698

# EXHIBIT "C"

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit | Fair Rental | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 | Oct-18 | Nov-18 | Dec-18 | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 |
| 60 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,500 | $1,500 | $1,500 | $1,500 |
| 62 | $1,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 64 | $900 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 66 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $0 | $0 | $0 | $0 | $0 | $0 | $1,100 | $1,100 | $1,100 | $1,100 |
| Total | $5,400 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $1,500 | $0 | $0 | $0 | $0 | $0 | $0 | $2,600 | $2,600 | $2,600 | $2,600 |
| 16 mos | $86,400 | | | | | | | | | | | | | | | | |
| Rent | $26,900 | | | | | | | | | | | | | | | | $26,900 |
| LOR | $59,500 | | | | | | | | | | | | | | | | |

# EXHIBIT "D"

BARRY ISETT & associates INC
MULTI-DISCIPLINE ENGINEERS AND CONSULTANTS
85 South Route 100, Allentown, PA 18106
610.398.0904 610.481.9098
barryisett.com

**Date:** June 01, 2018
**Project #:** 1041118.000
**Service Task:** 00OBS00

**To:** Mr. Michael Clark, AIC, Paladin Adjustment Group, LLC
**From:** Mr. Todd L. Gerhart, P.E., S.E.
**Copy to:** Mr. Jeffrey N. Gentile, P. E., Director, Dept. of Licenses & Inspection, Upper Darby Township; Mr. Michael Messina, Owner; file

**RE: MESSINA ROOF CLAIM – STRUCTURAL ASSESSMENT**
62 Sherbrook Boulevard, Upper Darby, PA 19082
Claim #WACL-2018-230 /File #PC180754
Date of Loss: May 25, 2018

*Sent via email to mclark@paladinadjustment.com*

On June 01, 2018, Barry Isett & Associates, Inc. performed a site visit at the subject location. Mr. Todd Gerhart, P.E., S.E, from our office performed the visit. The purpose of the visit was to assess reported structural damage and failure to the roof framing of the one-story commercial structure. The purpose of this memorandum is to provide Paladin Adjustment Group, LLC and the insured with expedited Initial Findings and Recommendations for Immediate Action regarding safety in advance of a formal report.

**Initial Findings:**

1. The structure is a one-story, multi-unit commercial building without a basement. The subject unit is the second tenant-unit from the left end of the four-unit building.

2. The roof framing of the subject unit is wood framing spanning left to right and supported by masonry party walls between the units. The roof framing of each unit is independent of the adjacent units and separated by a masonry party wall.

3. The roof framing of the subject unit has partially collapsed and was found to be unsafe due to failure of the roof joists. The collapsed portion of the roof includes approximately 35 feet of roof framing. The roofing system has remained partially intact and ponded water is collected in the collapse area.

4. The roof framing of the unit immediately to the right of the subject unit did not exhibit damage or movement. The roof framing of the unit to the left of the subject unit was not accessible.

5. Ponded water was observed on the roof of both adjacent units.

***Initial Findings & Safety Memorandum***



Photo #1 – Damaged and collapsed roof framing



Photo #2 – Ponded water on collapsed roof of subject unit



Photo #3 – Ponded water on roof of unit to the right of the subject unit



Photo #4 – Ponded water on roof of unit to the left of the subject unit

# EXHIBIT "E"

WESTMINSTER AMERICAN
INSURANCE COMPANY

August 22, 2018

Leo Yeager IV
Yeager Public Adjusting LLC
38 W. Woodland Avenue
Cap May Court House, NJ 08210

| | | |
|---|---|---|
| RE: | Policy: | BOP591002303 |
| | Claim: | WACL-2018-230 |
| | Type of Loss: | Water |
| | Date of Loss: | 05/25/2018 |
| | Loss Location: | 62 Sherbrook Blvd, Upper Danby, PA |

Dear Mr. Yeager:

This letter is in response to your request for Westminster American Insurance to review the claim presented by our insured, Michael Messina, for further consideration of coverage. In addition, we received the invoice from C. Costello for silver coating which occurred on November 20, 2017.

After reviewing the invoice from C. Costello I note that the invoice does not specify which roof was silver coated on November 20, 2017. I left a message for C. Costello asking for clarification and have yet to receive a return call.

With regards to the expert report prepared by Barry Isett & Associates, our engineer concluded that the roof experienced structural failure due to long term collection of water, improper design of roof drainage and partially blocked roof drains. The engineer further described an interrupted roof joist that was unsupported and a header to adjacent joists was not observed. This improper design further contributed to the damaged roof system. Your assertion that the interior of the building showed "ZERO" evidence, I spoke with our site adjuster and viewed his photographs of the roof decking which shows heavy black staining and would indicate water penetration over a long period of time. The photographs in the engineering report exhibit the same black staining

Further, upon review of Google Maps and Google Earth, the roof at 62 Sherbrook Blvd exhibits maintenance issues prior to May, 2016. A progression of Google Earth photographs indicate that as early as May, 2017 the only roof that was not silver coated is the roof located at 62 Sherbrook Blvd. Clearly, these photographs show that this roof was not being maintained. Google Earth photographs show water pooling on the roof. I have enclosed these images for your review.

The insured's policy is specific to exclude any defect in design or specification in construction and or maintenance related issues which occur over a period of time.

8890 McDonogh Road, Suite 310
Owings Mills, Maryland 21117

Main 443.291.4040
www.westminsteramerican.com

As the damage sustained falls within our exclusionary language, we regret we can make no payment for the roof or interior as a result of this loss. Should you have any further questions, please do not hesitate to contact us.

Sincerely,

Kristin Ellis

Kristin Ellis
Property Claims Examiner
kellis@westminsteramerican.com
Direct: 443-291-4049

Enclosures (3)

cc: Yoos Agency, Inc.

WARNING: Insureds and Claimants in Pennsylvania

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

EXHIBIT "F"

WESTMINSTER AMERICAN INSURANCE COMPANY

November 28, 2018

18.1527
DEC 04 2018

Derek Pacchione
Alliance Adjustment Group
435 N. Main Street
Doylestown, PA 18901

| | | |
|---|---|---|
| RE: | Policy: | BOP591002303 |
| | Claim: | WACL-2018-230 |
| | Type of Loss: | Water |
| | Date of Loss: | 05/25/2018 |
| | Loss Location: | 62 Sherbrook Blvd, Upper Darby, PA |

Dear Mr. Pacchione:

This letter is in response to your request for Westminster American Insurance to review the claim presented by our insured, Michael Messina, for further consideration of coverage. I received a release from the prior public adjuster, Yeager Public Adjusting. In addition, we received the invoice from C. Costello for silver coating which occurred on November 20, 2017.

After reviewing the invoice from C. Costello I note that the invoice does not specify which roof was silver coated on November 20, 2017. I left a message for C. Costello asking for clarification and have yet to receive a return call.

With regards to the expert report prepared by Barry Isett & Associates, our engineer concluded that the roof experienced structural failure due to long term collections of water, improper design of roof drainage and partially blocked roof drains. The engineer further described an interrupted roof joist that was unsupported and a header to adjacent joists was not observed. This improper design further contributed to the damaged roof system. I spoke with our site adjuster and viewed his photographs of the roof decking which shows heavy black staining and would indicate water penetration over a long period of time. The photographs in the engineering report exhibit the same black staining

Further, upon review of Google Maps and Google Earth, the roof at 62 Sherbrook Blvd exhibits maintenance issues prior to May, 2016. A progression of Google Earth photographs indicate that as early as May, 2017 the only roof that was not silver coated is the roof located at 62 Sherbrook Blvd. Clearly, these photographs show that this roof was not being maintained. Google Earth photographs show water pooling on the roof.

The insured's policy is specific to exclude any defect in design or specification in construction and or maintenance related issues which occur over a period of time.

As the damage sustained falls within our exclusionary language, we regret to inform you that we can make no payment for the roof or interior as a result of this loss. Should you have any further questions, please do not hesitate to contact our office, 443-291-4041.

Sincerely,

Kristin Ellis

Kristin Ellis
Property Claims Examiner
kellis@westminsteramerican.com

**WARNING: Insureds and Claimants in Pennsylvania**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

EXHIBIT "G"

**Christine Foresman**

**From:** Michael Pacchione
**Sent:** Wednesday, April 24, 2019 2:00 PM
**To:** kellis@westminsteramerican.com
**Cc:** Christine Foresman
**Subject:** RE: Messina, Claim# WACL-2018-230

Ms. Ellis,

I called this afternoon and left a voice message. We await your written response to the below message.

Thanks,

Michael Pacchione, MBA, CPCU
Vice President
Alliance Adjustment Group, Inc.
435 North Main Street
Doylestown, PA 18901
p: 267.880.3000 f: 267.880.3003
"Your Partner in Property Damage Claims"
www.allianceadjustment.com

---

**From:** Michael Pacchione
**Sent:** Thursday, March 14, 2019 1:19 PM
**To:** kellis@westminsteramerican.com
**Cc:** Michael Pacchione; James Wagner
**Subject:** Messina, Claim# WACL-2018-230

Ms. Ellis,

I called your office this morning and left a message with the staff. I would like to discuss your company's coverage determination. I need to clarify the specific exclusions which your company is citing and whether coverage was evaluated under the Additional Coverage 2. Collapse.

The engineering report states that the roof framing "...has partially collapsed..." and that the building "is not safe for occupancy." Further, the report cites ponded water in the collapsed area of the roof. Your letter of November 28, 2018 attributes the structural failure to long-term collections of water, improper design or roof drainage and partially blocked drains. The letter also describes improper design of the framing as a causal and/or contributing factor to the structural failure.

Based on my review of the policy, there is no exclusion for long-term collection of water or partially blocked drains. Surprisingly, I did not see any exclusion for improper design, workmanship or related terms anywhere in the policy or the endorsements. There is an exclusion for collapse that applies; however, the Additional Coverage for Collapse would also apply. Based on the engineer's description, the definition of collapse is met and it occurred after construction was complete from the weight of rain that collected on the roof (and possibly one of the "specified perils"

which I could not locate). The Additional Coverage also contains an exception for defective materials, methods in construction, remodeling or renovation that contribute to the collapse.

Please call me at your earliest opportunity to discuss (267) 880-3000.

Michael Pacchione, MBA, CPCU
Vice President
Alliance Adjustment Group, Inc.
435 North Main Street
Doylestown, PA 18901
p: 267.880.3000 f: 267.880.3003
"Your Partner in Property Damage Claims"
www.allianceadjustment.com

EXHIBIT “H”

www.allianceadjustment.com

**From:** admin@britecore.com <admin@britecore.com>
**Sent:** Thursday, May 09, 2019 10:05 AM
**To:** Michael Pacchione <MPacchione@allianceadjustment.com>; kellis@westminsteramerican.com
**Subject:** Claim #WACL-2018-230 - Messina

Mr. Pacchione,

We have received your request to re-open the claim listed above and review our coverage determination. We have our attorney reviewing the facts and policy on this claim and will advise you of our findings.

Nancy Sindall Claims Manager

Kristin Ellis Property Claims Examiner

Westminster American Insurance Company 8890 McDonogh Road Suite 310 Owings Mills, Maryland 21117

Main: 443.291.4040 Direct: 443.291.4049

EXHIBIT “I”

**Francesca Bonanni**

**From:** Michael Pacchione
**Sent:** Monday, June 10, 2019 4:28 PM
**To:** Francesca Bonanni
**Subject:** FW: Claim #WACL-2018-230 - Messina

Messina 18.1527

Frankie – please print for file and schedule Activity for Response on Friday of this week.

**From:** Michael Pacchione <MPacchione@allianceadjustment.com>
**Sent:** Monday, June 10, 2019 3:52 PM
**To:** Kristin Ellis <kellis@westminsteramerican.com>
**Cc:** Nancy Sindall <nsindall@westminsteramerican.com>; Michael Pacchione <MPacchione@allianceadjustment.com>
**Subject:** RE: Claim #WACL-2018-230 - Messina

Ms. Ellis,

We will comply with your request for a second engineering inspection; however, significant repairs have been performed including replacement of the roof.

Michael Pacchione, MBA, CPCU
Vice President
Alliance Adjustment Group, Inc.
435 North Main Street
Doylestown, PA 18901
p: 267.880.3000 f: 267.880.3003
"Your Partner in Property Damage Claims"
www.allianceadjustment.com

**From:** Kristin Ellis <kellis@westminsteramerican.com>
**Sent:** Monday, June 10, 2019 3:47 PM
**To:** Michael Pacchione <MPacchione@allianceadjustment.com>
**Cc:** Nancy Sindall <nsindall@westminsteramerican.com>
**Subject:** RE: Claim #WACL-2018-230 - Messina

Mr. Pacchione:

Our attorney has requested a second inspection by another Structural Engineer before a final coverage decision can be made.

We are making every effort to review the claim and are willing to hire another engineer for a 2nd opinion. We will expeditiously arrange for a structural engineer from S-E-A to contact you for an appointment.

Regards,

Kristin Ellis
Property Claims Examiner

Westminster American Insurance Company
8890 McDonogh Road
Suite 310
Owings Mills, Maryland 21117

Main: 443.291.4040
Direct: 443.291.4049

**WARNING: Insureds and Claimants in Delaware**
Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.
**WARNING: Insureds and Claimants in West Virginia**
Any person who knowingly presents a false, or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.
**WARNING: Insureds and Claimants in Virginia**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.
**WARNING: Insureds and Claimants in New Jersey**
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.
**WARNING: Insureds and Claimants in Maryland and Washington, DC**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.
**WARNING: Insureds and Claimants in North Carolina, South Carolina, Georgia, and Pennsylvania**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects that person to criminal and civil penalties

**From:** Michael Pacchione <MPacchione@allianceadjustment.com>
**Sent:** Monday, June 10, 2019 1:12 PM
**To:** Nancy Sindall <nsindall@westminsteramerican.com>; Kristin Ellis <kellis@westminsteramerican.com>
**Cc:** Michael Pacchione <MPacchione@allianceadjustment.com>
**Subject:** RE: Claim #WACL-2018-230 - Messina

Ms. Ellis,

Please advise if a decision has been reached. The insureds are growing very impatient with the unjustified delay.

We look forward to your prompt response.

Michael Pacchione, MBA, CPCU
Vice President
Alliance Adjustment Group, Inc.
435 North Main Street
Doylestown, PA 18901
p: 267.880.3000 f: 267.880.3003
"Your Partner in Property Damage Claims"
www.allianceadjustment.com

# EXHIBIT "J"

Swartz Campbell LLC

Swartz Campbell LLC
One Liberty Place – 38th Floor
1650 Market Street
Philadelphia, PA 19103

JUL 26 2019

**William T. Salzer**
*Attorneys at Law*

Main number: 215-564-5190
Direct: 215-299-4346
facsimile (215) 299-4301
wsalzer@swartzcampbell.com
www.swartzcampbell.com

July 24, 2019

Michael Pacchione, MBA, CPCU
Vice President
Alliance Adjustment Group, Inc.
435 North Main Street
Doylestown, PA 18901

**Re: Claim of Michael Messina**
**Claim No. WACL 2018-230**
**D/L: May 25, 2018**

Dear Mr. Pacchione:

As you are aware, we are engaged as insurance coverage counsel for Westminster American Insurance Company ("Westminster") in connection with your representation of policyholder Michael Messina. Based on information which you have supplied and further input from our retained engineer, Westminster rescinds the November 28, 2018 coverage declination for this claim.

On behalf of our client, we request that you furnish all proofs of loss and supporting documentation for claimed property damage under the policy for evaluation by Westminster. You may direct such information to the attention of Kristin Ellis, Property Claims Examiner. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

SWARTZ CAMPBELL LLC

William T. Salzer

WTS/emf

cc: Kristin Ellis, Property Claims Examiner